2012-1170

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

SUPREMA, INC. AND MENTALIX, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor*.

On Appeal from the United States International Trade Commission in Investigation No. 337-TA-720

# BRIEF OF *AMICUS CURIAE* GOOGLE INC. IN SUPPORT OF NEITHER PARTY

Daryl Joseffer
Adam Conrad
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: (202) 737-0500
Fax: (202) 626-3737
djoseffer@kslaw.com

*Attorneys for* Amicus Curiae *Google Inc.*

# CERTIFICATE OF INTEREST

Counsel for *Amicus* certifies the following:

1. The full name of every party represented by me is Google Inc.

2. The name of the real party in interest represented by me is Google Inc.

3. No parent corporations or publicly held companies own 10 percent or more of the stock of Google Inc.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this Court are:

King & Spalding LLP: Daryl L. Joseffer; Adam M. Conrad

This 14th day of May, 2012.

Daryl Joseffer w/permission A.L.

Daryl L. Joseffer

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

STATEMENT OF INTEREST .......... 1

SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 6

I. AN ACCUSED INFRINGER IS WILLFULLY BLIND ONLY IF IT ENGAGED IN DELIBERATE ACTIONS DESIGNED TO SHIELD ITSELF FROM ACQUIRING ACTUAL KNOWLEDGE, AND THUS SHOWED THAT IT EFFECTIVELY KNEW THE FACT ALREADY. .......... 6

A. Willful Blindness Requires Both Subjective Belief Of A High Probability That A Fact Exists And Deliberate Actions To Avoid Learning That Fact. .......... 7

B. The Facts Of *Global-Tech* Illustrate The Stringent Standard For Willful Blindness. .......... 12

II. THE COMMISSION'S STANDARD WOULD EVISCERATE THE ACTUAL KNOWLEDGE REQUIREMENT. .......... 14

A. The Commission Erroneously Equated Failure To Investigate A Patent Application Incorporated By Reference In Another (Non-Infringed) Patent With Actual Knowledge. .......... 14

B. The Commission Effectively Imposed A Duty To Obtain An Opinion Of Counsel. .......... 15

III. AN EXPANSIVE WILLFUL BLINDNESS DOCTRINE WOULD UPSET THE BALANCE STRUCK BY *GLOBAL-TECH*. .......... 17

A. Patent Defendants Face Tremendous Difficulty In Attempting To Find All Potentially Relevant Patents. .......... 18

B. It May Be Unclear Whether A Defendant's Customers Or Users Are Infringing Any Valid Patents. .......... 20

CONCLUSION .......... 22

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) .......... 22

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) .......... 22

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008) .......... 16

*Centricut, LLC v. ESAB Grp., Inc.*,
390 F.3d 1361 (Fed. Cir. 2004) .......... 21

*Chaney v. Dreyfus Service Corp.*,
595 F.3d 219 (5th Cir. 2010) .......... 11

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006) (en banc) .......... 3, 6, 7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011) .......... passim

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) (en banc) .......... 16

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) (en banc) .......... 16

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 22

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .......... 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......... 21

*Schumer v. Lab. Computer Sys. Inc.*,
308 F.3d 1304 (Fed. Cir. 2002) .......... 21

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) .......... 17

*United States v. Alston-Graves*,
435 F.3d 331 (D.C. Cir. 2006) .......... 10, 12

*United States v. Carrillo*,
435 F.3d 767 (7th Cir. 2006) .......... 12

*United States v. Freeman*,
434 F.3d 369 (5th Cir. 2005) .......... 11, 13

*United States v. Giovannetti*,
919 F.2d 1223 (7th Cir. 1990) .......... 8, 9, 10, 13

*United States v. Heredia*,
483 F.3d 913 (9th Cir. 2007) (en banc) .......... 9

*United States v. Hopkins*,
53 F.3d 533 (2d Cir. 1995) .......... 7

*United States v. Jewell*,
532 F.2d 697 (9th Cir. 1976) (en banc) .......... 3, 8, 9, 12

*United States v. L.E. Myers Co.*,
562 F.3d 845 (7th Cir. 2009) .......... 7, 8

*United States v. Lara-Velasquez*,
919 F.2d 946 (5th Cir. 1990) .......... 9

*United States v. Nguyen*,
493 F.3d 613 (5th Cir. 2007) .......... 8, 11, 13

*United States v. Pabey*,
664 F.3d 1084 (7th Cir. 2011) .......... 9, 12

*United States v. Ramsey*,
785 F.2d 184 (7th Cir. 1986) .......... 8

**Statutes**

35 U.S.C. § 112 .......... 20

America Invents Act, Pub. L. 112-29 (2011) .......... 17

**Other Authorities**

ALI, Model Penal Code § 2.02 (1985) .......... 3, 10

BLACK'S LAW DICTIONARY (8th ed. 2004) .......... 9

Christopher A. Cotropia & Mark A. Lemley, *Copying in Patent Law*,
87 N.C. L. Rev. 1421 (2009) .......... 20

David G. Barker, *Culpable Mental States in Intellectual Property Cases*,
4 Landslide 14 (March/April 2012) .......... 16

GLANVILLE WILLIAMS, CRIMINAL LAW: THE GENERAL PART § 57 (2d ed. 1961) .......... 7, 10

James Bessen & Michael J. Meurer, *Patent Failure: How Judges, Bureaucrats, and Lawyers Put Innovators at Risk* (2008), *available at*, http://www.researchoninnovation.org/dopatentswork/dopat9.pdf. .......... 19

John R. Allison et al., *Valuable Patents*, 92 Geo. L. J. 435 (2004) .......... 20

Kimberly A. Moore, *Judges, Juries, and Patent Cases—An Empirical Peek Inside the Black Box*, 99 Mich. L. Rev. 365 (2000) .......... 21

Lee Petherbridge, *On the Decline of the Doctrine of Equivalents*, 31 Cardozo L. Rev. 1371 (2010) .......... 21

Marshall Leaffer, *Patent Misuse and Innovation*, 10 J. High Tech. L. 142 (2010) .......... 18

Michael A. Heller & Rebecca S. Eisenberg, *Can Patents Deter Innovation? The Anticommons in Biomedical Research*, 280 Science 698 (1998) .......... 18

PTO, *Performance and Accountability Report* (2009), *available at*, http://www.uspto.gov/about/stratplan/ar/2009/2009annualreport.pdf .......... 19

World Intellectual Property Organization, *World Patent Report: A Statistical Review* (2008), *available at*, http://www.wipo.int/export/sites/www/ipstats/en/statistics/patents/pdf/wipo_pub_931.pdf .......... 19

## STATEMENT OF INTEREST[1]

*Amicus* Google Inc. is an innovative technology company focused on organizing the world's information and making it universally accessible and useful. Headquartered in Mountain View, California, with offices around the globe, Google operates a popular Internet search engine that handles hundreds of millions of search queries every day. In addition, Google develops and distributes a wide range of products and services including online advertising, commerce, collaboration, social networking, and mobile access used daily by millions of people.

Having obtained a number of patents based on its own extensive research and development efforts, and having also been unfairly accused of infringing others' patented technology, Google supports a strong patent system that rewards rather than impedes innovation. That includes a sensible, balanced approach to secondary liability. Google's products and services incorporate large numbers of components that can and do attract wrongful claims of patent infringement, including allegations that Google induces others to infringe. Inducement allegations pose unique dangers to innovators—especially those with the breadth and variety of products and services offered by Google—because it is very difficult

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity, other than *amicus* and their counsel, made a monetary contribution intended to fund the preparation or submission of this brief.

to determine in advance whether *other* diverse parties would infringe any valid and enforceable patents in the course of using the many features in Google's products and services.

The Court's decision in this case may have far-reaching implications for Google and innovators generally because it concerns the scope of the knowledge requirement for indirect infringement, including the recently adopted "willful blindness" doctrine. The Supreme Court intended that doctrine to be narrow, but the International Trade Commission broadened it significantly in the decision below.

Appellants Suprema, Inc. and Mentalix, Inc. consent to the filing of this brief. The Commission and Intervenor Cross Match Technologies, Inc. take no position. Google has submitted a motion for leave to file this brief pursuant to Federal Rule of Appellate Procedure 29(b).

## SUMMARY OF ARGUMENT

The Commission's reasons for finding willful blindness in this investigation turn the Supreme Court's recent decision in *Global-Tech* on its head. That decision established an actual knowledge standard for inducement, and held that "willful blindness" can be tantamount to actual knowledge. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 2069 (2011). In doing so, the Court explicitly rejected the lesser "knew or should have known" standard

previously applied in inducement cases. *See, e.g.*, *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (en banc). The Commission's decision effectively negates the actual knowledge requirement by equating willful blindness with the rejected "should have known" standard from *DSU*—*i.e.*, by expanding the exception to devour the rule.

In contrast, the Supreme Court emphasized that willful blindness is a narrow doctrine with deep roots in criminal law. Willful blindness is tantamount to actual knowledge: "[P]ersons who know enough to blind themselves to direct proof of critical facts *in effect have actual knowledge* of those facts." *Global-Tech*, at 131 S. Ct. at 2069 (citing *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc)) (emphasis added). It requires more than recklessness, which is "mere[] know[ledge] of a substantial and unjustified risk of . . . wrongdoing"; it also requires that a defendant engage in "deliberate actions" akin to sticking one's head in the sand deliberately to avoid learning a specific fact that likely exists. *Id.* at 2070-71 (citing ALI, Model Penal Code § 2.02(2)(c) (1985)).

That standard is a high bar that courts carefully enforce to avoid capturing merely negligent, reckless, or even deliberately indifferent behavior. Generally there must be evidence of an overt act taken to avoid learning a likely fact. In the absence of such an act, courts have found willful blindness only in a small number of criminal cases where the underlying activity was so inherently suspicious or

obviously wrongful that the defendants must have known or willfully blinded themselves to the fact in question. Those facts rarely exist even in criminal cases—and they are even more rare in the patent context because designing and marketing products are not inherently suspicious acts.

In finding that the respondents had willfully blinded themselves to knowledge of infringement, however, the Commission did not identify or rely on (at least in the public portions of its opinion) *any* deliberate act intended to avoid knowledge or *any* obviously wrongful behavior. Instead, the Commission relied on two things the respondents did not do: They did not investigate a cross-referenced patent application incorporated by reference into a patent that they did *not* infringe; and they did not seek an opinion of counsel on the cross-referenced application. Without some additional, deliberate act to avoid knowledge, it is far from clear that such conduct is even negligent; it is not even close to being willfully blind.

That conclusion is further confirmed by the nature of the commonplace conduct (or lack of conduct) at issue here—designing and marketing commercial products, doing a patent search, and not seeking an opinion of counsel. This is, quite simply, a run-of-the-mill case that apparently involves no intentional copying, no withholding of information from a patent attorney (or anyone else, for

that matter), and nothing else that could demonstrate that the respondents must have known that they were inducing infringement.

The limited scope of the willful blindness doctrine is especially important in patent law because, unlike many types of criminal behavior, designing and marketing products and services without acquiring actual knowledge of indirect infringement is not inherently suspicious activity, and thus does not give rise to any inference of what amounts to criminal intent. Indeed, this Court's *Seagate* decision confirms that, without more, such conduct is not willful.

In addition, it can be very difficult for a company to know whether its customers are infringing any patents, as that would require locating all patents that are potentially implicated by a customer's use of a product, determining whether the various relevant uses would infringe a patent, and determining whether any such patents are valid and enforceable. Nonetheless, the Commission's opinion effectively imposes an unjustified and unrealistic duty on innovators and manufacturers to undertake those onerous actions, contrary to *Global-Tech* and *Seagate*.

## ARGUMENT

### I. AN ACCUSED INFRINGER IS WILLFULLY BLIND ONLY IF IT ENGAGED IN DELIBERATE ACTIONS DESIGNED TO SHIELD ITSELF FROM ACQUIRING ACTUAL KNOWLEDGE, AND THUS SHOWED THAT IT EFFECTIVELY KNEW THE FACT ALREADY.

An accused infringer is liable for inducement only if, among other things, it had knowledge of the patent and also had "knowledge that the induced acts constitute patent infringement." *Global-Tech*, 131 S. Ct. at 2068. The Supreme Court's adoption of this actual knowledge requirement superseded the lesser "knew or should have known" standard previously applied in inducement cases. *See, e.g., DSU,* 471 F.3d at 1304-06.

In *Global Tech,* the Supreme Court also held that willfully blinding oneself to a fact is tantamount to actually knowing it, and therefore sufficient to satisfy the actual knowledge requirement for inducement liability. Although that willful blindness test is new to patent law, the Supreme Court drew on the doctrine's "long history" in criminal law. 131 S. Ct. at 2069. In doing so, *Global-Tech* made clear that the willful blindness doctrine is a limited one that does not simply resurrect the "should have known" standard that the Court rejected. Quite simply, willful blindness is not an open invitation to finders of fact to impose liability based on mere knowledge and inaction that demonstrate at most negligence, recklessness, or even deliberate indifference. *See id.* at 2070-71.

But that is exactly what the Commission did here, contrary to both *Global-Tech* and the criminal law cases that *Global-Tech* relied on. The Commission expressly stated that "[t]he intent element can be satisfied by the patentee showing that the 'infringer's actions induced infringing acts and that he knew or *should have known* his actions would induce actual infringements.'" A214 (quoting *DSU*, 471 F.3d at 1306) (emphasis added). That is the very standard the Supreme Court rejected and replaced with the criminal-law doctrine of willful blindness. *See Global-Tech*, 131 S. Ct. at 2064-65, 2071.

### A. Willful Blindness Requires Both Subjective Belief Of A High Probability That A Fact Exists And Deliberate Actions To Avoid Learning That Fact.

Before *Global-Tech*, the regional courts of appeals had adopted varying formulations of the willful-blindness doctrine in criminal cases, sometimes referring to it as "conscious-avoidance," *United States v. Hopkins*, 53 F.3d 533, 541-42 (2d Cir. 1995), or "ostrich," *United States v. L.E. Myers Co.*, 562 F.3d 845, 854 (7th Cir. 2009). The doctrine is a "strictly limited exception" to actual knowledge. GLANVILLE WILLIAMS, CRIMINAL LAW: THE GENERAL PART § 57, at 157 (2d ed. 1961). The circumstances must show that "it can almost be said that the defendant actually knew" of a critical fact necessary to establish guilt. *Id.* § 57, at 159. The Supreme Court in *Global-Tech* emphasized that very justification for the doctrine: "[P]ersons who know enough to blind themselves to direct proof of

critical facts *in effect have actual knowledge* of those facts." 131 S. Ct. at 2069 (citing *Jewell*, 532 F.2d at 700) (emphasis added).

In keeping with the doctrine's limited scope, the Supreme Court articulated "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 2070. It is therefore an unconditional requisite that the defendant must *subjectively* be aware of the high probability of illegal activity and purposely avoid learning of it. *See United States v. Nguyen*, 493 F.3d 613, 619 (5th Cir. 2007). A hint of suspicion will not do; the circumstances must show a "fairly large amount of knowledge to prompt further investigation." *United States v. Ramsey*, 785 F.2d 184, 190 (7th Cir. 1986). In other words, the defendant must have maintained a strong suspicion of wrongdoing—"knowing or strongly suspecting that he is involved in shady dealings, [and] tak[ing] steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings." *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990). That a defendant reasonably *should have* suspected illegality is not enough. *See L.E. Myers Co.*, 562 F.3d at 854.

Critically, the Supreme Court agreed with established circuit law that mere subjective awareness of unlawful activity does not establish willful blindness. *See*

*Global-Tech*, 131 S. Ct. at 2071. The defendant must also manifest an intent to affirmatively shield itself from knowledge through a deliberate action, one that is "[i]ntentional; premeditated; fully considered." *United States v. Heredia*, 483 F.3d 913, 920 (9th Cir. 2007) (en banc) (quoting BLACK'S LAW DICTIONARY 459 (8th ed. 2004) (alteration in original)); *see also United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990). Overt physical acts designed to avoid knowledge satisfy this standard. *See United States v. Pabey*, 664 F.3d 1084, 1092 (7th Cir. 2011). For example, a landlord that leases property to a known illegal gambler is willfully blind if he changes his usual commute to avoid driving past the leased house and observing its use as a haven for illegal gambling. *See Giovannetti*, 919 F.2d at 1228.

In the absence of such an overt physical act, the willful blindness doctrine must be applied very carefully because the defendant could have engaged in at most "purely psychological avoidance"—that is, cutting off "normal curiosity" with one's will. *Pabey*, 664 F.3d at 1092. Allowing finders of fact too much leeway in imposing liability in such circumstances could turn willful blindness into a gaping loophole that would devour the general rule. Even before *Global Tech*, courts expressed concern that willful blindness must be used carefully, lest "judges [be] apt to forget its very limited scope," *Jewell*, 532 F.2d at 700 n.7 (quoting

GLANVILLE, *supra*, § 57 at 159), by improperly allowing juries effectively to substitute negligence for actual knowledge, *see Giovannetti*, 919 F.2d at 1228.

In *Global-Tech*, the Supreme Court addressed that concern by emphasizing the narrow scope of the willful blindness doctrine. The Court contrasted willful blindness with lesser forms of intent, explaining that "a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing," *Global-Tech*, 131 S. Ct. at 2071 (citing ALI, Model Penal Code § 2.02(2)(c) (1985)), and "a negligent defendant is one who should have known of a similar risk but, in fact, did not . . .," *id.* (citing ALI, Model Penal Code § 2.02(2)(d) )). The Court even rejected a deliberate indifference standard as insufficiently stringent because it would permit a finding of liability "when there is merely a 'known risk' that the induced acts are infringing," without "requir[ing] active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Id.* Thus, mere knowledge of a risk rising to the level of recklessness or deliberate indifference is not enough; a deliberate act to shield oneself from knowledge of specific facts is also required.

Courts therefore enforce rigorous safeguards to avoid ensnaring negligent, reckless, or even deliberately indifferent behavior. Under those safeguards, willful blindness should rarely be found. *See United States v. Alston-Graves*, 435 F.3d 331, 340-41 (D.C. Cir. 2006).

The Fifth Circuit, for example, has explained that the likelihood of criminal wrongdoing must be "high" and the circumstances surrounding the defendant's activities "extremely" or "overwhelmingly" suspicious. *United States v. Freeman*, 434 F.3d 369, 378 (5th Cir. 2005); *Nguyen*, 493 F.3d at 621. Courts therefore deny willful blindness instructions even in suspicious circumstances. In *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219 (5th Cir. 2010), for example, receivers of insurance companies sought to impose civil RICO and tort liability—which requires that the defendant "knew of and agreed to the overall objective of the RICO offense," *id.* at 239—on a broker-dealer for failing to uncover a complex fraud scheme. The court rejected an inference of willful blindness, *id.* at 242, even though: (1) the broker-dealer never investigated the legitimacy of the transactions, *id.* at 227-28; (2) the broker-dealer did not train its service personnel and the structure and speed of the transactions would have raised many red flags to trained personnel, *id.* ; and (3) the broker-dealer's management knew that its policies of requiring minimal information for account openings, taking no steps to verify information, segregating personnel, randomly assigning clients, and refusing to train personnel to identify suspicious account behavior all created a high probability that its mutual funds would be used for money laundering, *id.* at 241. The court held that, at worst, such actions rose to recklessness. *Id.* at 242.

As another example, in drug trafficking cases where defendants claim not to have known that they were carrying drugs, courts have required proof that they had strong suspicions or "red flags" that they were in fact carrying drugs, such as knowledge of a secret compartment in a vehicle or bag, *see Jewell*, 532 F.2d at 698-99, or dealings with known drug associates, *see, e.g.*, *United States v. Carrillo*, 435 F.3d 767, 783 (7th Cir. 2006). Although the courts have sometimes found willful blindness where evidence reflects behavior so suspicious the defendant must have known it was criminal, they have also emphasized that willful blindness requires actual knowledge of such compelling red flags, not just a lack of curiosity. *See Pabey*, 664 F.3d at 1092-93; *Alston-Graves*, 435 F.3d at 340. In *Jewell*, 532 F.2d at 698-99 & nn. 1, 2, for example, the defendant claimed to have searched the glove compartment and trunk of a car to ensure the absence of drugs, but pointedly avoided looking in a secret compartment. As explained below, the commonplace commercial conduct at issue here rises nowhere near that level.

### B. The Facts Of *Global-Tech* Illustrate The Stringent Standard For Willful Blindness.

The extreme facts of *Global-Tech* further confirm that the Court meant what it said when it required proof of a deliberate act designed to shield an accused infringer from knowledge. The defendant there directly copied "all but the cosmetic features of" a competitor's product. *Global-Tech*, 131 S. Ct. at 2071. To avoid learning of any patents covering the product it had copied, the inducer

purchased the product overseas—knowing that the foreign version would not be marked with any United States patents. *Id.* The defendant then obtained an opinion of counsel but did not disclose to counsel either the existence or the copying of its competitor's product. *Id.* The Supreme Court could not "fathom what motive [the infringer] could have had for withholding this information other than to manufacture a claim of plausible deniability in the event that his company was later accused of patent infringement." *Id.*

These facts illustrate the deliberate act requirement. The infringer went out of its way to obtain a foreign, unmarked version of the competitor's product—not unlike the landlord who takes an alternate driving route to avoid observing illegal gambling at the leased house. *See Giovannetti*, 919 F.2d at 1228. In addition, securing a rigged opinion of counsel by disclosing some information while withholding the most important information from counsel demonstrates the kind of guilty knowledge typical of willful blindness cases.

And the very act of direct copying sets *Global-Tech* apart from most cases. That presents the kind of "high" likelihood of wrongdoing or "extremely" or "overwhelmingly" suspicious activity indicative of willful blindness. *Freeman*, 434 F.3d at 378; *Nguyen*, 493 F.3d at 621. If technology is protected by a patent, deliberately copying it goes a long way toward showing infringement, knowledge, and intent.

## II. THE COMMISSION'S STANDARD WOULD EVISCERATE THE ACTUAL KNOWLEDGE REQUIREMENT.

Although willful blindness is a narrow doctrine, and courts must remain vigilant to protect against overexpansive use of the doctrine, the Commission's opinion (at least the public version) never identifies any "deliberate actions" or "active efforts" that could support a finding of willful blindness. Nor does it identify any highly suspicious behavior. The Commission does not even appear to see *Global-Tech* as a change in the law. Instead, it follows pre-*Global-Tech* case law and cites the "knew or should have known" standard that the Supreme Court rejected. *See* A214, A223.

### A. The Commission Erroneously Equated Failure To Investigate A Patent Application Incorporated By Reference In Another (Non-Infringed) Patent With Actual Knowledge.

The Commission rested its willful blindness finding with respect to U.S. Patent No. 7,203,344 ("'344 patent") primarily on Suprema's knowledge of a different patent, U.S. Patent No. 7,277,562 ("'562 patent"), which Suprema was held *not* to infringe, *see* A210. The Commission reasoned that the '562 patent incorporates by reference the patent application that eventually resulted in the '344 patent. *See* A221-22. And the two patents "also have overlapping inventors and share the same assignee," meaning that "a word search likely would have identified both patents." A222. The Commission concluded that these facts were sufficient to show that Suprema willfully blinded itself to the '344 patent. *See* A224.

That reasoning eviscerates the actual knowledge standard of *Global-Tech*. The touchstone for willful blindness is "deliberate actions" or "active efforts" to avoid learning of wrongdoing. *See* pp. 8-10, *supra*. Yet the Commission did not identify any such acts. *Not* performing a word search is hardly an overt act. At most, it might be relevant—though not necessarily sufficient—evidence of negligence or recklessness in some circumstances. But in most circumstances, the decision not to seek out every potentially relevant patent is not only reasonable but perhaps even the only feasible choice. *See* pp. 18-20, *infra*. It is certainly not akin to deliberately sticking one's head in the sand to shield oneself from knowledge.

That conclusion is confirmed by the absence of any uniquely suspicious circumstances or inherently wrongful conduct showing that the respondents must have known that their customers would infringe the patent at issue. In sharp contrast with *Global-Tech*, the Commission cited no evidence of direct copying or similarly questionable conduct. And the Commission found that Suprema does not even infringe the '562 patent, the only patent of which it was actually aware.

### B. The Commission Effectively Imposed A Duty To Obtain An Opinion Of Counsel.

The Commission also found that "Suprema's deliberate avoidance of acquiring knowledge of the '344 patent is further shown by its *failure* to obtain the opinion of counsel." A223 (emphasis added). Again, an *omission* is not the

deliberate *commission* required by *Global-Tech*, especially in circumstances that were not inherently suspicious.

The Commission again cited pre-*Global-Tech* case law, including *Broadcom Corp. v. Qualcomm Inc.*, which treated the defendant's failure to obtain the advice of counsel as one relevant factor for purposes of inducement. *See* 543 F.3d 683, 698-700 (Fed. Cir. 2008). *Broadcom* adopted that approach under a "knew or should have known" standard, however. *See id.* As discussed above, that standard—and therefore *Broadcom*'s reasoning—did not survive *Global-Tech*. *See* David G. Barker, *Culpable Mental States in Intellectual Property Cases*, 4 Landslide 14, 18 (March/April 2012).

In *Broadcom*, moreover, the accused infringer was aware of the patents *and* the patentee's infringement contentions, and failure to obtain advice of counsel was just one factor the court considered in the totality of the circumstances. *See* 543 F.3d at 700. By contrast, the Commission appears to have imposed an absolute duty to obtain the advice of counsel.

This Court already rejected that position by holding that not obtaining an opinion of counsel does *not* establish that infringement was willful. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc). The same reasoning applies here—not obtaining an

opinion is no more willful for purposes of willful blindness than for willful infringement. The Commission gave no basis for distinguishing between the two, and there is none. Indeed, Congress recently confirmed that the same standard should apply in both contexts: "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, . . ., may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." America Invents Act, Pub. L. 112-29, § 17 (2011) (to be codified at 35 U.S.C. § 298).

## III. AN EXPANSIVE WILLFUL BLINDNESS DOCTRINE WOULD UPSET THE BALANCE STRUCK BY *GLOBAL-TECH*.

Like all secondary liability doctrines, inducement principles turn on "identifying the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984). *Global-Tech*'s actual knowledge requirement sets an appropriate balance: ensuring that patent owners may hold truly culpable actors accountable while also protecting the rights of unknowing actors who do not themselves infringe. The Commission's expansive view of willful blindness would upset that balance. It would open a gaping loophole in the actual knowledge requirement, imposing tremendous costs on businesses and deterring innovation.

And it would do so in the context of behavior that is not suspicious, and thus should not give rise to any inference of actual knowledge of infringement. As discussed above, courts are loath to find willful blindness even when there is evidence of suspicious criminal activity. *See* pp. 11-12, *supra*. Drug trafficking cases, for example, often test the boundaries of the willful blindness doctrine, making evidence of red flags—and the defendant's knowledge of those red flags—absolutely essential. *See* p. 12, *supra*. But merely designing and marketing products and services does not give rise to such red flags, and thus does not come close to the line. Ordinary business activity does not deserve to be treated the same as highly suspicious criminal wrongdoing.

### A. Patent Defendants Face Tremendous Difficulty In Attempting To Find All Potentially Relevant Patents.

At the outset, not being aware that a patent or patent application exists within the modern-day "patent thicket" is hardly unusual, especially for high-technology companies whose products include many features, any of which may be alleged to infringe any number of patents. *See, e.g.*, Marshall Leaffer, *Patent Misuse and Innovation*, 10 J. High Tech. L. 142 (2010); Michael A. Heller & Rebecca S. Eisenberg, *Can Patents Deter Innovation? The Anticommons in Biomedical Research*, 280 Science 698 (1998). It is an understatement to say that the patent thicket hampers companies' efforts to locate all patents that are potentially relevant to new products.

At present, there are over 1.8 million United States patents in force. *See* World Intellectual Property Organization, *World Patent Report: A Statistical Review*, 1, 8 (2008), *available at*, http://www.wipo.int/export/sites/www/ipstats/en/statistics/patents/pdf/wipo_pub_931.pdf. And the pace of new patent applications has been increasing at a dramatic rate. *See* PTO, *Performance and Accountability Report* Tables 1-3 (2009), *available at*, http://www.uspto.gov/about/stratplan/ar/2009/2009annualreport.pdf. That large volume makes ascertaining all potentially relevant patents extremely difficult.

These burdens fall disproportionately on technology companies. Thousands of patents are potentially pertinent to a given technology. *See* James Bessen & Michael J. Meurer, *Patent Failure: How Judges, Bureaucrats, and Lawyers Put Innovators at Risk*, 9:15-16 (2008), *available at*, http://www.researchoninnovation.org/dopatentswork/dopat9.pdf. For small companies, the cost may be prohibitive. For large companies with a large number of products, searching may not be feasible.

Nonetheless, under a simple negligence standard as applied by the Commission (contrary to *Global-Tech*), businesses would be forced to conduct patent searches and secure opinions of counsel under a myriad of circumstances not contemplated under the law today. In effect, the Commission's reasoning would charge defendants with knowledge not only of patents of which they are

aware but also of all related patents. This "duty" would be highly disruptive, indeed completely unworkable, for manufacturers of most technology products. Imposing it would therefore result in significant harm to companies, consumers, and society.

### B. It May Be Unclear Whether A Defendant's Customers Or Users Are Infringing Any Valid Patents.

Even if a company learns of a potentially relevant patent, it is normally a complex and uncertain matter to determine whether a product or service infringes the patent. Deliberate copying and willful infringement are rare. *See* Christopher A. Cotropia & Mark A. Lemley, *Copying in Patent Law*, 87 N.C. L. Rev. 1421, 1424, 1453-54 (2009). Indeed, the fact that the defendant in *Global-Tech* copied a direct competitor's product sets that case apart from this one and most others. *See Global-Tech*, 131 S. Ct. 2071. Deliberately copying patented technology undermines any argument that there was no infringement. And a defendant's active efforts to shield itself from learning about any patents covering the copied technology leave no doubt as to culpability.

In the ordinary case, however, determining infringement is an unpredictable business. The average patent contains over a dozen claims that could apply to any number of products. *See* 35 U.S.C. § 112; John R. Allison et al., *Valuable Patents*, 92 Geo. L. J. 435, 451 (2004). Infringement turns in part on interpretation of the claims, which are often vague and can only be definitely fixed after costly mini-

trials in the form of *Markman* hearings that follow extensive briefing. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-19 (Fed. Cir. 2005) (en banc). Those disputes are often appealed, and this Court reverses claim construction rulings between 30% and 50% of the time. *See* Lee Petherbridge, *On the Decline of the Doctrine of Equivalents*, 31 Cardozo L. Rev. 1371, 1377 n.32 (2010). Thus, only after a claim construction proceeding, and appeal from a final judgment, do the litigants know the scope of the claims.

Even with settled claim constructions, infringement often turns on complex questions of fact. Patent trials frequently involve complicated technologies in the hard sciences, such as engineering and biochemistry. Because of the scientific complexity, expert testimony is often required, and infringement often boils down to a battle of those experts. *See Centricut, LLC v. ESAB Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) (quoting *Schumer v. Lab. Computer Sys. Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002)). Jury trials on infringement are common in cases that do not settle. *See* Kimberly A. Moore, *Judges, Juries, and Patent Cases—An Empirical Peek Inside the Black Box*, 99 Mich. L. Rev. 365, 366 (2000).

Determining whether a patent is valid and enforceable is also a difficult undertaking. For example, whether an invention is sufficiently novel and inventive to be patentable often turns on complex factual inquiries into prior art references,

the background knowledge and creativity of a person skilled in the art, and other considerations. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). Whether many inventions fall within the scope of patentable subject matter can also pose difficult, case-by-case legal questions, especially in light of the rise of business-method patents. *See, e.g.*, *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). The adequacy of a patent's disclosure also depends in part on how a person of ordinary skill in the art would understand it, in light of the background knowledge of such a person. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). As with infringement and novelty, that analysis generally turns on expert testimony and findings of fact. *See id.* at 1354-58.

For all of these reasons, determining whether someone else's use of a product infringes a valid and enforceable patent is an expensive and uncertain affair. There is no justification for reducing the doctrine of willful blindness to a form of negligence and thereby imposing a duty on companies to undertake such efforts.

## CONCLUSION

This Court should reject the Commission's expansive interpretation of the doctrine of willful blindness. Instead, the Court should look to, and apply, the background principles of criminal law the Supreme Court relied on and articulated in *Global-Tech*.

Respectfully submitted on this 14th day of May 2012.

Daryl Joseffer w/permission D.Y.

Daryl Joseffer
Adam Conrad
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-0500

*Attorneys for* Amicus Curiae *Google Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 4,970 words and therefore complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i).

Daryl Joseffer w/permission G. S.

Daryl Joseffer

May 14, 2012

**DECLARATION OF AUTHORITY**

I, Gary E. Lazar, hereby attest that (1) Daryl L. Joseffer is unavailable to sign the Brief of *Amicus Curiae* Google Inc. in Support of Neither Party and (2) I have actual authority to sign said Brief of *Amicus Curiae* Google Inc. in Support of Neither Party on behalf of Daryl L. Joseffer.

I declare under penalty of perjury that this declaration is true and correct.

This 14th day of May 2012

Gary E. Lazar
Paralegal

## PROOF OF SERVICE

This is to certify that I have this day served the foregoing "Brief of *Amicus Curiae* Google Inc. In Support Of Neither Party" upon counsel for the parties by depositing two copies of the brief with UPS for delivery as follows:

Clint A. Gerdine
Andrea C. Casson
James M. Lyons
U.S. International Trade Commission
500 E Street SW,
Suite 707
Washington, DC 20436
(202) 708-2310

*Attorneys for Appellee U.S. International Trade Commission*

Maximilian A. Grant
Latham & Watkins LLP
555 11th Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorney for Intervenor Cross Match Technologies*

Darryl M. Woo
Bryan A. Kohm
David Michael Lacy Kusters
Ilana Rubel
Jae Won Song
Fenwick & West, LLP
555 California Street
12th Floor
San Francisco, CA 94101
(415) 875-2300

*Attorneys for Appellant Mentalix, Inc. and Suprema Inc*

Clement J. Naples
Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, NY 10022
(212) 906-1331

*Attorney for Intervenor Cross Match Technologies*

This 14th day of May 2012.

Gary E. Lazar