# 2012-1170

# United States Court of Appeals
*for the*
# Federal Circuit

SUPREMA, INC. And MENTALIX, INC.,
*Appellants,*

*v.*

INTERNATIONAL TRADE COMMISSION,
*Appellee,*

*and*

CROSS MATCH TECHNOLOGIES, INC.,
*Intervenor.*

*On Appeal from the United States International Trade Commission in Investigation No. 337-TA-720.*

# BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC. IN SUPPORT OF APPELLEE'S AND INTERVENOR'S COMBINED PETITIONS FOR PANEL REHEARING AND REHEARING *EN BANC*

John D. Haynes
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
(404) 881-7000

*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

March 7, 2014

# CERTIFICATE OF INTEREST

Counsel for *amici curiae* Nokia Corporation and Nokia USA Inc. certifies the following:

**1. The full name of every party or amicus represented by me is:**

Nokia Corporation and Nokia USA Inc.

**2. The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Nokia Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.

Nokia USA Inc.'s parent corporation is Nokia Corporation. Nokia Corporation owns 100 percent of the stock in Nokia USA Inc.

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:**

Alston & Bird LLP: John D. Haynes

Dated: March 7, 2014

/s/John D. Haynes_____
John D. Haynes

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE* ........ 1

SOURCE OF AUTHORITY TO FILE ........ 2

SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 3

I. The Majority's Holding Is Contrary to the Statutory Text, Legislative History, and Long-Standing Commission Precedent ........ 3

II. The Majority's Ruling Casts Doubt on The Commission's Authority To Prevent Certain Unfair Trade Practices ........ 4

III. If the Court Maintains the Majority's Central Holding, Rehearing is Necessary To Clarify the Scope of that Holding ........ 6

A. The Majority Opinion Does Not Impact Violations Based on Contributory Infringement ........ 7

B. Extending the Majority's Holding to Contributory Infringement Has Dangerous Ramifications for the Reach of Section 337 ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES**

*Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Producing Same*, Inv. No. 337-TA-833, ID, 2013 WL 3167893 (ITC May 6, 2013) ...................... 6

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028 (Fed. Cir. 2009) ...................... 9

*Spansion v. ITC*, 629 F.3d 1331 (Fed. Cir. 2010) ...................... 6

*The Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305 (Fed. Cir. 1983) ...................... 4

**RULES**

Fed. R. App. P. 29(c)(5) ...................... 1

Federal Rule of Appellate Procedure 32(a)(5) ...................... 12

Federal Rule of Appellate Procedure 32(a)(6) ...................... 12

Federal Rule of Appellate Procedure 32(a)(7)(B) ...................... 12

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ...................... 12

Federal Circuit Rule 35(g) ...................... 12

**STATUTES**

19 U.S.C. § 1337 ...................... 1, 5

19 U.S.C. § 1337(a)(1)(B)(i) ...................... 4

35 U.S.C. § 271 ...................... 4

35 U.S.C. § 271(c) ...................... 5, 6, 8, 9

**OTHER AUTHORITIES**

Submission of Non-Party Google Inc. in Response to Commission's Request for Public Comments, *Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Making the Same*, Inv. No. 337-TA-833 (ITC Feb. 3, 2014) ............ 7

Sokal & Craig, *Federal Circuit Discards the "Nexus" Test for Infringement at the ITC, Potentially Narrowing the Scope and Effectiveness of § 337*, 41 AIPLA Q.J. 637 (2013) ............ 4, 5

Case: 12-1170 Document: 99 Page: 6 Filed: 03/10/2014

## STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*

Nokia is a leader in the telecommunications equipment and services industry.[1] Nokia has cumulatively invested over $50 billion in research and development relating to mobile communications. As a result of this substantial commitment, Nokia currently owns more than 10,000 patent families.

Nokia has recently been involved in numerous investigations before the U.S. International Trade Commission, both as a complainant and respondent. Nokia is thus a significant patent owner that might seek an exclusion order and/or cease and desist order based on a violation of 19 U.S.C. § 1337 to protect its patent rights, and a manufacturer in an industry in which patent owners have routinely issued threats of exclusion based on violations of 19 U.S.C. § 1337.

Nokia's interest in this case is to advocate for an interpretation of Section 337 that is in accord with the statutory text, legislative history, and long-standing Commission and Federal Circuit precedent and that provides effective relief against unfair trade practices. Nokia therefore supports the Appellee International Trade Commission's ("the Commission") and Intervenor Cross Match Technologies, Inc.'s ("Cross Match") requests for rehearing or rehearing *en banc*

[1] No counsel for any of the parties authored any portion of this brief. No entity other than *amici curiae* Nokia Corporation and Nokia USA Inc. monetarily contributed to the preparation or submission of this brief. *See* Fed. R. App. P. 29(c)(5).

of the panel opinion, which unduly and incorrectly constrains the International Trade Commission's authority to remedy certain unfair trade practices.

## SOURCE OF AUTHORITY TO FILE

*Amici* have attached this brief to a motion for leave of the Court to file as *amici*.

## SUMMARY OF ARGUMENT

The majority's ruling is contrary to the text and history of Section 337, as well as long-standing Commission precedent, which has been previously affirmed by this Court. Those authorities dictate that a violation of Section 337 may be based on inducement of infringement, even if direct infringement does not occur until after importation. The majority's ruling changing that long-standing precedent may severely undermine the Commission's ability to remedy certain unfair trade practices.

Moreover, if the Court were to agree with the majority's central holding, rehearing is necessary to clarify the appropriate narrow scope of that holding. Already, litigants have attempted to twist the majority's reasoning to strip the Commission of all authority to find violations based on contributory infringement and method claims. That position not only incorrectly interprets the majority's opinion, but also would narrow even further and in a significant way the reach of Section 337. For example, if the majority opinion is interpreted as broadly as some

suggest, infringers could attempt to avoid a Section 337 violation by importing hardware separate from the software necessary for infringement. Although the majority opinion suggests that Section 337 would still apply under principles of contributory infringement, that may not be the case if the article being imported is proven to have substantial non-infringing uses. This result potentially opens the door for all accused infringers to try to avoid any ITC remedy by simply importing an invention in parts rather than as a whole. That cannot be what Congress intended. Rehearing is necessary to restore the Commission's full, intended authority to remedy unfair trade practices, or, at the least, to properly narrow the scope of the majority holding.

## ARGUMENT

### I. THE MAJORITY'S HOLDING IS CONTRARY TO THE STATUTORY TEXT, LEGISLATIVE HISTORY, AND LONG-STANDING COMMISSION PRECEDENT

The majority held that there can be no violation of section 337(a)(1)(B)(i) based on induced infringement where the underlying act of direct infringement does not occur until after importation. Maj. Op. at 4, 20-21. Nokia agrees with the Commission and Cross Match that the majority's ruling is contrary to the statutory text and legislative history, as well as long-standing Commission precedent, which has been previously affirmed by this Court.

Section 337 declares unlawful the importation, the sale for importation, or the sale within the United States after importation of articles that infringe a valid and enforceable U.S. patent. 19 U.S.C. § 1337(a)(1)(B)(i). The Commission has long recognized that all three types of infringement under 35 U.S.C. § 271, including inducement of infringement under § 271(b), *see* Dis. Op. at 5 & n.2, are proper bases for establishing a violation of Section 337. This Court has affirmed that practice. *See, e.g.*, *The Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1310, 1317 (Fed. Cir. 1983). And Congress, despite amending Section 337 many times, has never upset that understanding. The majority's ruling is thus contrary to established law.

## II. THE MAJORITY'S RULING CASTS DOUBT ON THE COMMISSION'S AUTHORITY TO PREVENT CERTAIN UNFAIR TRADE PRACTICES

The dissent and some commentators, scholars, and accused infringers have interpreted the majority's holding as creating a serious gap in the Commission's authority to prevent unfair trade practices. *See* Dis. Op. at 4-5 ("In the end, the majority has created a fissure in the dam of the U.S. border through which circumvention of Section 337 will ensue, thereby harming holders of U.S. patents."); Sokal & Craig, *Federal Circuit Discards the "Nexus" Test for Infringement at the ITC, Potentially Narrowing the Scope and Effectiveness of § 337*, 41 AIPLA Q.J. 637, 639 (2013) (arguing that the decision "drastically

Case: 12-1170 Document: 99 Page: 10 Filed: 03/10/2014

curtail[s] the reach of 19 U.S.C. § 1337."). Under this interpretation, a party can import an article and specifically instruct customers to use the article in performing a patented method or to assemble it into a patented apparatus, but as long as that use or assembly occurs after importation, the Commission is powerless to stop that importation. Dis. Op. at 11-13; Sokal & Craig, *supra*, at 655.

The majority opinion acknowledges that such "mischief" may occur, but suggests that § 271(a) or § 271(c) can address "virtually all" of those concerns. Maj. Op. at 21 n.4.[2] That assurance is, however, cold comfort to patent holders. Unless the ruling is overturned, there will undoubtedly be a gap that § 271(c) cannot fill because, unlike inducement, contributory infringement under § 271(c) requires that the article "be especially made or especially adapted for use in an infringement" and "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). For example, an accused infringer could attempt to avoid contributory infringement by separating a single claimed component from an infringing apparatus (such as removing a critical

[2] The majority states that §271(b) remains viable if direct infringement occurs before importation. Maj. Op. at 21, n4. It is unclear, however, under what circumstances such infringement would occur and further clarification is warranted.

Case: 12-1170 Document: 99 Page: 11 Filed: 03/10/2014

software feature) and importing the apparatus and the component separately. If the apparatus had proven substantial non-infringing uses, § 271(c) may not apply.[3]

## III. IF THE COURT MAINTAINS THE MAJORITY'S CENTRAL HOLDING, REHEARING IS NECESSARY TO CLARIFY THE SCOPE OF THAT HOLDING

Even if the Court ultimately affirms the majority's holding, rehearing is necessary to clarify the scope of that holding to prevent litigants from gutting the reach of Section 337. If it stands, the majority opinion is properly read as limited to violations based on claims of induced infringement when direct infringement only occurs post importation. Maj. Op. at 21 n.4 ("Our holding is far narrower than the dissent asserts; as we explain, virtually all of the mischief the dissent fears can be addressed by the ITC via resort to § 271(a) or § 271(c) . . . ."). And this Court has previously affirmed the Commission's authority with regard to contributory infringement. *See Spansion v. ITC*, 629 F.3d 1331, 1353-54 (Fed. Cir. 2010) (affirming Section 337 violation based on contributory infringement where direct infringement occurred after importation).

[3] In this circumstance, § 271(c) could still apply to the software component, but even that remedy has been recently challenged by parties before the Commission. *Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Producing Same*, Inv. No. 337-TA-833, ID, 2013 WL 3167893, at *499, 503-04 (ITC May 6, 2013) (declining to recommend an exclusion order against electronic transmissions, but recommending cease and desist order against those transmissions).

Nonetheless, certain commentators and other parties have seized on certain language in the opinion in an attempt to argue that contributory infringement is no longer a valid basis for violations of Section 337. *See, e.g,* Submission of Non-Party Google Inc. in Response to Commission's Request for Public Comments, *Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Making the Same*, Inv. No. 337-TA-833, at 10-12 (ITC Feb. 3, 2014) ("Specifically, the reasoning, *i.e.*, that Section 337 does not extend to indirect infringement based on the alleged intent of the importer, applies equally to allegations of contributory infringement."). Allowing expansion of the majority's erroneous opinion, even if it stands, would further severely damage patent holders and prevent Section 337 from reaching the very conduct it was enacted to prevent.

### A. The Majority Opinion Does Not Impact Violations Based on Contributory Infringement

The panel answered a narrow question: "whether a § 337(a)(1)(B)(i) violation may be predicated on a claim of induced infringement where the attendant direct infringement of the claimed method does not occur until post-importation." Maj. Op. at 13. To decide that issue, the majority turned to the statutory phrase "articles that . . . infringe," and then looked to patent law to determine whether an imported good is an article that infringes. Maj. Op. at 16-18. The majority then differentiated between inducement of infringement, explaining

that "Section 271(b) makes unlawful certain conduct (inducing infringement) that becomes tied to an article only through the underlying direct infringement," and Section 271(a) and 271(c), which "essentially define articles that infringe." Maj. Op. at 20-21. Although the majority's conclusion regarding Section 271(b) unduly and inappropriately restricts its application, the logic used to reach that conclusion cannot be applied to 271(c) as well. For contributory infringement, the "article that infringes" is the article being imported because that article has no substantial non-infringing use at the time of importation. Thus, § 271(c) remains a viable basis for Section 337 violations, regardless of whether direct infringement occurs after importation. Maj. Op. at 21 n.4.

Despite the majority's clear distinction between inducement and contributory infringement, some commentators and other parties have seized on the majority's statement that there "is not a completed inducement under § 271(b) until there has been a direct infringement," Maj. Op. at 20, to argue that the majority's reasoning applies equally to contributory infringement because there can be no contributory infringement without underlying direct infringement, s*ee, e.g.*, Submission of Non-Party Google Inc. at 11 ("As with inducement, contributory infringement requires an underlying act of direct infringement, which does not occur until the method is used in the United States after importation."). That argument ignores the express language of Section 271(c).

Case: 12-1170 Document: 99 Page: 14 Filed: 03/10/2014

The "article" in Section 271(c) is the "component or a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process" and the act of infringement is the sale or importation of that article. 35 U.S.C. § 271(c). Thus, while there is no contributory infringement in the absence of direct infringement, *ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1037 (Fed. Cir. 2009), the timing of direct infringement is immaterial for defining an article that infringes under § 271(c).

### B. Extending the Majority's Holding to Contributory Infringement Has Dangerous Ramifications for the Reach of Section 337

As described above, *see supra* Section II, commentators, scholars, and accused infringers have interpreted the majority opinion as seriously constraining the Commission's authority to remedy unfair trade practices by immunizing acts of inducement as long as direct infringement does not occur until after importation. If that reasoning were extended to contributory infringement as well, the rights of patent holders would be further severely impaired because the importation of articles with no substantial non-infringing uses would fall outside of Section 337. That cannot be what Congress intended.

Apparatus claims would fare little better under such reasoning. As long as an imported article did not directly infringe before or at the time of importation, it would risk falling beyond the Commission's authority. Thus, importers could

attempt to circumvent Section 337 by importing a disassembled product. Even if the imported articles had no substantial non-infringing uses and the final assembly steps were completely trivial, the importer could still attempt to skirt Section 337 if the patented invention were not assembled until after importation.

The reading of the majority opinion urged by certain parties creates gaps so wide in the Commission's authority as to render Section 337 meaningless. Accordingly, even if the Court determines to adopt the majority's central narrow holding, the Court should clarify the appropriate scope of its ruling to preclude such arguments intended to broaden that holding in a manner harmful to the legitimate enforcement of patent rights.

## CONCLUSION

For these reasons, and those stated in Appellee's and Intervenor's petitions, the Court should grant the petition for panel rehearing and rehearing *en banc*, reverse the majority opinion, and reinstate long-standing precedent establishing that a violation of Section 337 can be predicated on indirect infringement of a method claim where direct infringement occurs after importation. Alternatively, the Court should grant rehearing *en banc* and clarify that the majority opinion does not extend to contributory infringement under § 271(c).

Case: 12-1170 Document: 99 Page: 16 Filed: 03/10/2014

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 35(g). This brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),does not exceed 10 pages.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Dated: March 7, 2014

By: /s/John D. Haynes
John D. Haynes
ALSTON & BIRD LLP
*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
*Suprema, Inc. v. International Trade Commission*, 2012-1170

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on March 7, 2014, the foregoing BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC. IN SUPPORT OF APPELLEE'S AND INTERVENOR'S COMBINED PETITIONS FOR PANEL REHEARING AND REHEARING *EN BANC* was filed using the Court's CM/ECF system, which will send notification to the following:

On behalf of CROSS MATCH TECHNOLOGIES, INC.:

Maximilian A. Grant, Esq.
LATHAM & WATKINS LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
max.grant@lw.com

On behalf of SUPREMA, INC. and MENTALIX INC.:

Darryl M. Woo, Esq.
FENWICK & WEST, LLP
555 California Street, 12th Floor
San Francisco, CA 94104
dwoo@fenwick.com

On behalf of INTERNATIONAL TRADE COMMISSION:

Clark S. Cheney
Office of General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
clark.cheney@usitc.gov

[signature on next page]

Case: 12-1170 Document: 99 Page: 18 Filed: 03/10/2014

By: /s/John D. Haynes______
John D. Haynes
ALSTON & BIRD LLP
*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*