2012 – 1170

**United States Court of Appeals for the Federal Circuit**

Suprema, Inc. and Mentalix, Inc.,

*Appellants,*

v.

International Trade Commission,

*Appellee,*

and

Cross Match Technologies, Inc.

*Intervenor.*

---

On appeal from the United States International Trade Commission
Investigation No. 337-TA-720.

---

BRIEF OF AMICUS CURIAE
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
IN SUPPORT OF NEITHER PARTY

---

Wayne P. Sobon
*President*
American Intellectual Property
Law Association
241 18th Street South, Suite 700
Arlington, Virginia 22202
(703) 415-0780

James B. Altman
*Counsel of Record*
F. David Foster
Foster, Murphy, Altman & Nickel, PC
1899 L Street, N.W., Suite 1150
Washington, DC 20036
(202) 822-4100

August 18, 2014

**CERTIFICATE OF INTEREST**

Counsel for amicus curiae, American Intellectual Property Law Association, certifies the following:

1. The full name of every party represented by me is:

   **American Intellectual Property Law Association.**

2. The name of the real party in interest represented by me is: **Not applicable.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are: **None.**

4. The names of all law firms and the partners or associates that appeared for the party now represented by me and that are expected to appear in this court are:

   FOSTER, MURPHY, ALTMAN & NICKEL, PC:
   James B. Altman
   F. David Foster

   AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION:
   Wayne P. Sobon

Date: August 18, 2014

*/s/* James B. Altman
James B. Altman
Foster, Murphy, Altman & Nickel, PC
1899 L St., N.W., Suite 1150
Washington, D.C. 20036
*Principal Attorney for Amicus Curiae American Intellectual Property Law Association*

Case: 12-1170 Document: 129 Page: 3 Filed: 08/18/2014

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... v

STATEMENT OF INTEREST OF AMICUS CURIAE .......... 1

SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. THE PANEL DECISION MISUNDERSTANDS THE RELATIONSHIP BETWEEN THE PATENT ACT AND THE TARIFF ACT OF 1930, DISREGARDING CONGRESS'S INTENT TO PROVIDE BROAD PROTECTION AGAINST UNFAIR ACTS OF IMPORTATION, INCLUDING INDUCEMENT OF PATENT INFRINGEMEN .......... 4

A. Section 337 Is a Trade Statute, Broadly Covering Unfair Acts in Trade .......... 4

B. Section 337 Continued Congressional Intent to Broadly Cover Unfair Acts in Trade .......... 7

C. Section 337 Is More Than A Patent Law Surrogate for Imports .......... 9

D. As Amended in 1974, Section 337 Continued Congressional Intent to Broadly Cover Unfair Acts in Trade .......... 10

E. The 1988 Amendments Continued Congressional Intent to Broadly Cover Unfair Acts in Trade, Making IP Actions Easier by Eliminating the Injury Requirement .......... 12

F. The Separate Provisions for Statutory Intellectual Property Rights Were Meant to Remove the Injury Requirement, Not to Change the Scope of Section 377 .......... 14

III. THE COMMISSION HAS ADEQUATE AUTHORITY TO AVOID ANY POTENTIAL ABUSE FROM ALLEGATIONS OF INDUCED INFRINGEMENT .......... 22

IV. THE PANEL DECISION WILL SIGNIFICANTLY UNDERCUT THE PROTECTION OF U.S. INTELLECTUAL PROPERTY RIGHTS .......... 26

CERTIFICATE OF COMPLIANCE ........................................................... 30

CERTIFICATE OF SERVICE................................................................. 31

Case: 12-1170 Document: 129 Page: 5 Filed: 08/18/2014

# TABLE OF AUTHORITIES

**Cases**

*Amgen v. ITC*, 902 F.2d 1532 (Fed. Cir. 1990) ........................................................10

*Certain Electronic Devices, Including Wireless Communication Devices, Portable Music And Data Processing Devices, And Tablet Computers*, Investigation No. 337-TA-794 ........................................................................................................24

*Certain Erasable Programmable Read-Only Memories*, Inv. No. 337-TA-276, Pub. No. 2196, 1989 WL 1716252, *88 (U.S.I.T.C. May 1989) (EPROMs .................25

*Certain Mobile Communications and Computer Devices and Components Thereof*, Inv. No. 337-TA-704 (Complaint, Jan. 15, 2010, ¶¶ 15, 53) ................................28

*Certain Prods. Having Laminated Packaging, Laminated Packaging, and Components Thereof*, Inv. No. 337-TA-874, Comm'n Op. (Sept. 3, 2013) ..........23

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 (1984).........................................................................................................................22

*Corning Glass Works v. Int'l Trade Comm'n*, 799 F.2d 1559, 1565 (Fed. Cir. 1986) ........................................................................................................................22

*Enercon GmbH v. ITC*, 151 F.3d 1376, 1383 (Fed. Cir. 1998) ................................16

*Frischer Co. v. Bakelite Corp.*, 39 F.2d 247, 250 (C.C.P.A. 1930) ......................7, 16

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2066-67 (2011).............7

*Henry v. A.B. Dick Co.*, 224 U.S. 1, 33-48 (1912) .....................................................7

*In re Northern Pigment Co.*, 71 F.2d 447 (C.C.P.A. 1934)........................................7

*In re Northern Pigment Co.*, 71 F.2d 447, 22 C.C.P.A ..............................................8

*In re Von Clemm*, 229 F.2d 441, 443-44 (C.C.P.A. 1955) ..........................................8

*Kinik Co.v. ITC*, 362 F.3d 1359, 1363 (Fed. Cir. 2004) ................................... 12, 22

Case: 12-1170 Document: 129 Page: 6 Filed: 08/18/2014

*Minoxidil Powder, Salts & Compositions for Use in Hair Treatment*, Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988) ....................27

*Navigation Products, Including GPS Devices, Navigation and Display Systems, Radar Systems, Navigational Aids, Mapping Systems and Related Software*, Inv. No. 337-TA-900 (Complaint, Sept. 23, 2013, ¶ 65)....................27

*Sealed Air Corp. v. Int'l Trade Comm'n*, 645 F.2d 976 (C.C.P.A. 1981)....................6

*Tandon Corp. v. U.S. Intern. Trade Comm'n*, 831 F.2d 1017 (Fed. Cir. 1987)........12

*The Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983)....................16

*United States v. Utah Constr. & Mining Co*., 384 U.S. 394 (1966)....................12

**Statutes**

19 C.F.R. § 210.18....................23

19 U.S.C. § 1337.................... passim

35 U.S.C. §271(b) .................... 3, 20, 22

*Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361 (2013)....................23

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. ___, 131 S. Ct. 2060 (2011 ....23

Uruguay Agreements Act, Pub. L. No. 103-465, §§ 532(a)(1), 533(a)(1)-(4), 108 Sta. 4809 (Dec. 8, 1994)....................14

**Legislation**

1988 Process Patent Amendment Act....................12

62 Cong. Rec. 5874 (1922)....................6

H.R. Rep. No. 100-40 at 156 (Ways & Means, 1987).................... 13, 21

H.R. Rep. No. 1781, 76th Cong., 3d Sess. 1 (1940)....................10

H.R. Report No. 100-576 at 633 (Apr. 20, 1988)....................15

Omnibus Trade and Competitiveness Act of 1988.................... 13, 15

Case: 12-1170 Document: 129 Page: 7 Filed: 08/18/2014

S. Rep. 595, 67th Cong., 2d Sess. at 3 (1922) ....................................................6, 8

Senate Finance Comm. Rep., No. 93-1298, *supra* at 196 .........................................18

Senate Finance Comm. Report, No. 93-1298 at 35 (1974) ......................................11

**ITC Decisions**

*Apparatus for the Continuous Production of Copper Rod*, USITC Pub. No. 1017 (Nov. 23, 1979) (Comm'n Op.)..........................................................................16

*Certain Asian-style Kamaboko Fish Cakes*, Inv. 337-TA-378, USITC Pub. 2998 (1996) (Comm. Op. on Remedy, the Public Interest and Bonding at 3)................25

*Certain Cigarettes and Packaging Thereof*, Inv. No. 337-TA-424, USITC Pub. 3366 (Commission Opinion at 5) ...........................................................................25

*Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, including Cellular Telephone Handsets*, Inv. No. 337-TA-543, ITC Pub. 4258 (Oct. 2011) ...........................................................................24

*In re Certain Audio Processing Integrated Circuits and Products Containing Same*, Inv. No. 337-TA-538, USITC Pub. 3991, Comm'n Op. 10, (May 2008), 2008 ITC LEXIS 814..............................................................................................26

*Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, ITC Pub. 4331 (June 2012) ..................................................24

**Other Authorities**

Ninth Annual Report of the United States Tariff Commission at 90-115 (Dec. 10, 1925)...................................................................................................6

*Revolvers*, Section 316, Docket No. 1 ...................................................................6

U.S. Tariff Commission, *Information Concerning Dumping and Unfair Foreign Competition in the United States and Canada's Antidumping Law* (1919) .............5

Case: 12-1170 Document: 129 Page: 8 Filed: 08/18/2014

## STATEMENT OF INTEREST OF AMICUS CURIAE

The American Intellectual Property Law Association ("AIPLA") is a national bar association of approximately 15,000 members engaged in private or corporate practice, in government service, and in the academic community. AIPLA members represent a wide and diverse spectrum of individuals, companies, and institutions involved directly or indirectly in the practice of patent, trademark, copyright, and unfair competition law, as well as other fields of law affecting intellectual property. Our members represent both owners and users of intellectual property.

AIPLA has no stake in any of the parties to this litigation or in the result of this case.[1] AIPLA's only interest is in seeking correct and consistent interpretation of the law as it relates to intellectual property issues.[2]

---

[1] The Association states that this brief was not authored in whole or in part by counsel to a party, and that no monetary contribution to the preparation or submission of this brief was made by any person or entity other than the Association and its counsel. Specifically, after reasonable investigation, AIPLA believes that (i) no member of its Board or Amicus Committee who voted to file this brief, or any attorney in the law firm or corporation of such a member, represents a party to this litigation in this matter; (ii) no representative of any party to this litigation participated in the authorship of this brief; and (iii) no one other than AIPLA, or its members who authored this brief and their law firms or employers, made a monetary contribution to the preparation or submission of this brief.

[2] This brief is filed upon the invitation of the court for amicus briefs as stated in the June 11, 2014 en banc briefing order.

Case: 12-1170 Document: 129 Page: 9 Filed: 08/18/2014

## SUMMARY OF ARGUMENT

AIPLA takes no position on which party should prevail in the underlying investigation or on appeal as to the merits. AIPLA addresses only the question of whether the International Trade Commission has authority to find a violation of 19 U.S.C. § 1337 ("Section 337") premised upon induced infringement where the acts of underlying direct infringement occur post-importation. AIPLA respectfully submits that the Commission has such authority, and that its exercise of such authority in appropriate investigations is consistent with, indeed compelled by, Congressional intent and public policy. These considerations demonstrate not only the Commission's substantial authority to investigate and redress violations of intellectual property rights, but also its ability to do so without interfering with legitimate commerce by tailoring the relief for such violations as appropriate.

The panel in this case held that the U.S. International Trade Commission may not protect the owner of a method patent from the importation of scanners used in the United States to infringe that method patent.

Under the facts of the case, Mentalix, a Texas company, imports fingerprint scanners made by Suprema, a Korean company, and integrates its own software into the scanners after they are received in the United States. An Administrative

Law Judge found these to be "unlawful acts" under 19 U.S.C. § 1337(a)(1)(B)(i), based on the direct infringement that occurs when the Suprema scanners are used with Mentalix's software. The Commission affirmed, clarifying that Suprema had induced the infringement of the method claims under 35 U.S.C. §271(b), and that this inducement formed the basis for the Section 337 violation.

The reviewing panel of the Federal Circuit reversed, holding that the Commission lacks authority to issue an exclusion order based on inducement of patent infringement where the acts of underlying direct infringement occur after the subject articles are imported. AIPLA respectfully submits that this decision both misunderstands the relationship between the Patent Act and Section 337 of the Tariff Act of 1930, and frustrates Congress's intent that the Commission provide the owners of intellectual property rights with broad protections against a wide range of unfair acts of importation, including inducement of infringement.

# ARGUMENT

## I. THE PANEL DECISION MISUNDERSTANDS THE RELATIONSHIP BETWEEN THE PATENT ACT AND THE TARIFF ACT OF 1930, DISREGARDING CONGRESS'S INTENT TO PROVIDE BROAD PROTECTION AGAINST UNFAIR ACTS OF IMPORTATION, INCLUDING INDUCEMENT OF PATENT INFRINGEMENT

The decision by the panel majority in this case overlooks the long, uninterrupted history of U.S. protection against unfair trade practices provided by Section 337. That history leaves no doubt as to the broad range of unfair acts covered, and no refining or clarifying legislation enacted over the years has ever indicated any desire by Congress to contract the scope of protection provided.

### A. Section 337 Is a Trade Statute, Broadly Covering Unfair Acts in Trade

Congress intended Section 337 to provide broad relief against all forms of unfair trade practices in international trade, other than unfair dumping and subsidies. From the very beginning, those unfair practices encompassed by the protections of Section 337 included inducement of patent infringement.

Section 337 has its origins as a trade statute – Section 316 of the 1922 Trade Act – and remains a trade statute. In 1919, at Congress' request, the U.S. Tariff Commission submitted a report to the House Ways and Means Committee evaluating the obstacles preventing domestic manufacturers from obtaining legal remedies for unfair competition from abroad. U.S. Tariff Commission, *Information*

Case: 12-1170 Document: 129 Page: 12 Filed: 08/18/2014

*Concerning Dumping and Unfair Foreign Competition in the United States and Canada's Antidumping Law* (1919). Congress had enacted an Antidumping Act in 1916; the U.S. countervailing duty law dates to the Tariff Acts of 1890 and 1894 concerning sugar and more generally to the Tariff Act of 1897. But Congress was concerned in those early days that there might be yet other forms of unfair practices in international trade that were not adequately addressed under the antidumping and countervailing duty laws, a concern reinforced by the Tariff Commission Report.

Accordingly, Congress adopted Section 316 in the 1922 Trade Act, to cover any other possible unfair trade practices. Section 316 provided that:

> unfair methods of competition and unfair acts in the importation of articles … are hereby declared unlawful … if the unfair act would destroy or substantially injure an efficiently and economically operated U.S. industry or restrain or monopolize commerce in the United States. … and when found by the President to exist shall be dealt with, in addition to any other provision of law, as hereinafter provided.

Section 316 was introduced in the Senate version of the bill that ultimately became the 1922 Trade Act, and was accepted by the House without particular discussion in the Conference Report. The Senate Finance Committee Report explained that:

> The Provision relating to unfair methods of competition in the importation of goods is broad enough to prevent *every type and form of unfair practice* and is, therefore, a more adequate protection to American industry than any antidumping statute the country has ever had.

Case: 12-1170 Document: 129 Page: 13 Filed: 08/18/2014

S. Rep. 595, 67th Cong., 2d Sess. at 3 (1922) (emphasis added). The Chairman of the Finance Committee explained to the Senate that the new bill was intended to extend existing protection against unfair imports "to meet the new conditions which today confront us." 62 Cong. Rec. 5874 (1922). He went on to say that the bill was intended to address dumping and "other unfair methods of competition." *Id.* at 5879. Thus, the provision would "reach *all forms of unfair competition* in importation," including "bribery, espionage, misrepresentation of goods, full-line forcing, and other similar practices frequently more injurious to trade than price cutting." *Id.* (emphasis added).[3]

Section 316 was applied to the infringement of intellectual property rights from the very beginning. For example, the first exclusion order issued under Section 316, in 1924 by President Coolidge, was in a case filed by Smith & Wesson, accusing the respondent of importing copies of revolvers Smith & Wesson was manufacturing in the United States. *Revolvers*, Section 316, Docket No. 1, *discussed in* Ninth Annual Report of the United States Tariff Commission at 90-115 (Dec. 10, 1925). And in 1926, the President issued an exclusion order barring

[3] In order to ensure the broad reach of the provision, Section 316 provided for *in rem* jurisdiction over imports. Section 271 of the Patent Act provides relief only against parties over which the district courts have personal jurisdiction; it does not authorize district courts to issue exclusion orders to keep infringing imports out of the country. In contrast, while the ITC must have personal jurisdiction to issue a Cease & Desist Order against a party under Section 337(g), it does not require personal jurisdiction to issue an Exclusion Order, which it issues "against goods, not parties." *Sealed Air Corp. v. Int'l Trade Comm'n*, 645 F.2d 976, 985 (C.C.P.A. 1981).

Case: 12-1170 Document: 129 Page: 14 Filed: 08/18/2014

importation of a product based in part on allegations of induced patent infringement. *See Frischer Co. v. Bakelite Corp.*, 39 F.2d 247, 260 (C.C.P.A. 1930) (importation and sale of patented goods constituted unfair methods of competition); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2066-67 (2011) (explaining that *Henry v. A.B. Dick Co*., 224 U.S. 1, 33-48 (1912), on which *Frischer* relied, was based on what is today the modern doctrine of induced infringement).

**B. Section 337 Continued Congressional Intent to Broadly Cover Unfair Acts in Trade**

Section 337 of the Trade Act of 1930 is the successor to Section 316, and the two provisions were held to be basically the same in *In re Orion Co*., 71 F.2d 458 (C.C.P.A. 1934) and *In re Northern Pigment Co*., 71 F.2d 447 (C.C.P.A. 1934). As with Section 316, Section 337 was likewise intended to cover broadly all unfair methods of competition and unfair acts in the importation of articles (other than unfair dumping and subsidies).

Shortly after Section 337's enactment, the Court of Customs and Patent Appeals (this Court's predecessor) addressed the provision's scope in the *In re Orion Co*. case. Citing relevant Supreme Court authority under the Federal Trade Commission Act, as well as *Frischer*, the court held that the provision has broad

coverage and authorizes action whenever unfair competition or unfair acts occur. As the court explained:

> Up until the time when [imported articles] are released from customs custody into the commerce of this country, no opportunity is presented to the manufacturer of the United States to protect himself against unfair methods of competition or unfair acts. After the goods have been so released into the commerce of the country, the American manufacturer may assert his rights against anyone who has possession of, or sells, the goods. However, this method of control must be, and is, ineffective, because of the multiplicity of suits which must necessarily be instituted to enforce the rights of the domestic manufacturer. This phase of the matter obviously was in the minds of the Congress at the time of the preparation of said section 337 (19 USCA § 1337).

*Id*. at 465-467. The court also noted the language quoted above from the legislative history of Section 316, referencing coverage "broad enough to prevent *every type and form of unfair practice*" S. Rep. 595, 67th Cong., 2d Sess. at 3 (1922) (emphasis added).

Likewise, the court in *In re Von Clemm*, 229 F.2d 441, 443-44 (C.C.P.A. 1955), explained that Section 337

> provides broadly for action by the Tariff Commission in cases involving "unfair methods of competition and unfair acts in the importation of articles" but does not define those terms nor set up a definite standard. As was noted in our decision in *In re Northern Pigment Co*., 71 F.2d 447, 22 C.C.P.A., Customs, 166, T.D. 47124, the quoted language is broad and inclusive and should not be held to be limited to acts coming within the technical definition of unfair methods of competition as applied in some decisions.

Case: 12-1170 Document: 129 Page: 16 Filed: 08/18/2014

### C. Section 337 Is More Than A Patent Law Surrogate for Imports

As is evident from its legislative history and its express adoption as a trade statute, Section 337 is more than a mere surrogate for the application of U.S. patent laws to infringing imports. It is instead trade protection that is informed by U.S. patent law. *See* Section 337(a)(1) ("the following are unlawful, and when found by the Commission to exist shall be dealt with, *in addition to any other provision of law*. …" (emphasis added)).

In 1940, Congress further made clear that it intended Section 337, as a trade statute, to be different from and broader in reach, in appropriate circumstances, than the patent law alone. This view begins with the CCPA's decisions in *Frischer* and *Northern Pigment* upholding the Tariff Commission's authority under Section 337 to exclude products produced overseas using processes patented in the United States. At the time, such products did not infringe U.S. patent law before, during, or after importation. Then, in *In re Amtorg Trading*, 75 F.2d 826 (C.C.P.A. 1935), the court reversed itself, overruling *Frischer* and *Northern Pigment* and holding that Section 337 did not reach further than the U.S. patent law.

Congress expressly disagreed and overturned *Amtorg Trading* by enacting 19 U.S.C. §1337a to cover the importation of products made by a patented process.[4] Critically, Congress refused to accept the CCPA's analysis in *Amtorg Trading*,

[4] July 2, 1940, ch. 515, 54 Stat. 724; repealed Aug. 23, 1988, Pub. L. 100-418, with substance incorporated into Section 337(a)(1)(B)(ii).

Case: 12-1170 Document: 129 Page: 17 Filed: 08/18/2014

rejecting it and restoring the broad understanding of Section 337 set out in the *Northern Pigment* case. In so doing, Congress confirmed that Section 337's scope was not limited by Section 271 of the Patent Act, at least with respect to when or where the infringing acts occurred. The Congressional committees of jurisdiction explained as follows:

> This bill is designed to correct the present problem which was created when the Court of Customs and Patent Appeals in the case *In re Amtorg Trading Corporation* reversed its former decisions and held that the importation of products made abroad in accordance with a United States process patent without consent of patentee was not regarded as an unfair method of competition.

H.R. Rep. No. 1781, 76th Cong., 3d Sess. 1 (1940); see also S.Rep. No. 1903, 76th Cong., 3d Sess. 1 (1940). This legislative history is discussed in *Amgen v. ITC*, 902 F.2d 1532 (Fed. Cir. 1990).

### D. As Amended in 1974, Section 337 Continued Congressional Intent to Broadly Cover Unfair Acts in Trade

In 1974, Congress significantly revamped Section 337 essentially into its modern form. The amended provisions authorized the newly created International Trade Commission to impose remedies, whereas the prior version had only authorized the Tariff Commission to make recommendations to the President. Much like its predecessors, the substantive provision of Section 337 as adopted in 1974 simply stated that:

Case: 12-1170 Document: 129 Page: 18 Filed: 08/18/2014

> Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

Section 337(a), Pub. Law 93-617.

Despite not specifically mentioning patent infringement in the statute, Congress made it clear that it intended the provision to continue to apply very broadly to patent infringement. The Senate Finance Committee further explained the breadth of the provision it proposed:

> Section 341 of the House bill would amend Section 337 of the Tariff Act of 1930 to authorize the Commission itself [rather than the President, under the existing provision], to order the exclusion of articles involved in unfair methods and acts based upon United States patents.
>
> The Committee bill, on the other hand, would authorize the Commission to order the exclusion of articles in all cases under section 337, patent and nonpatent.

Senate Finance Comm. Report, No. 93-1298 at 35 (1974). The Committee further noted the following:

> The relief provided for violations of section 337 is 'in addition to' that granted in 'any other provisions of law'. The criteria of section 337 differ in a number of respects from other statutory provisions for relief against unfair trade practices. For example, in patent-based cases, the Commission considers, *for its own purposes under section 337*, the status of imports with respect to the claims of U.S. patents.

Case: 12-1170 Document: 129 Page: 19 Filed: 08/18/2014

*Id.* at 196 (emphasis added).[5]

### E. The 1988 Amendments Continued Congressional Intent to Broadly Cover Unfair Acts in Trade, Making IP Actions Easier by Eliminating the Injury Requirement

In the 1988 Process Patent Amendment Act, Congress further amended Section 337 by listing specific statutory rights in intellectual property, including patent rights, which could be enforced in the ITC without requiring proof of injury which was required for other ITC subject matter.[6] Prior to the amendment, relief

---

[5] The difference between Section 337 and the Patent Act is also central to the holding in *Tandon Corp. v. U.S. Intern. Trade Comm'n*, 831 F.2d 1017 (Fed. Cir. 1987). If Section 337 determinations are, in fact, Section 271 determinations, they would be findings made in a judicial capacity by an administrative agency and would be binding on the courts. *See, e.g., United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966). In *Tandon*, however, the Court held that patent-based determinations by the ITC are not binding on the courts since "the Commission's primary responsibility is to administer the trade laws, not the patent laws." *Id.* at 1019.

A similar conclusion can be found in *Kinik Co.v. ITC*, 362 F.3d 1359, 1363 (Fed. Cir. 2004). In that case this Court refused to limit the Commission's jurisdiction by applying the exceptions to 35 U.S.C. § 271(g) relief against imported products made abroad by patented processes where the product "becomes a trivial and nonessential component of another product" or is "materially changed by subsequent processes." The Court explained that Section 337(a)(1)(B) is broader than the patent laws, such that "the defenses established in § 271(g) are not available in § 1337(a)(1)(B)(ii) actions." *Id.* The Court noted that the Commission's determination "to hold otherwise would deprive the patent owner of a remedy available under the Tariff Act," further noting that "the existing scope of § 337 actions would not be diminished" by § 271(g) of the Patent Act. *Id.* at 1362.

[6] Incorporated into the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, §§ 9001-9007, 102 Stat. 1212.

Case: 12-1170 Document: 129 Page: 20 Filed: 08/18/2014

under Section 337 was available only if the unfair act had the "effect or tendency of . . . to destroy or substantially injure an industry," or "prevent the establishment of such an industry." Congress concluded that such a requirement was not needed for the listed subject matter because the importation of articles that infringe statutory IP rights necessarily "derogates from the statutory right, diminishes the value of intellectual property, and thus indirectly harms the public interest. Under such circumstances, the Committee believes that requiring proof of injury, beyond that shown by proof of the infringement of a valid intellectual property right, should not be necessary." H.R. Rep. No. 100-40 at 156 (Ways & Means, 1987). In so doing, it did not intend to narrow Section 337's coverage. *See* Omnibus Trade and Competitiveness Act of 1988, *supra*, § 1341(b) ("The purpose of this part is to amend section 337 of the Tariff Act of 1930 to make it a more effective remedy for the protection of United States intellectual property rights.").[7]

In eliminating the injury requirement, the Ways and Means Committee noted that: "The purpose of the Commission is to adjudicate trade disputes between U.S. industries and those who seek to import goods from abroad." H.R. Rep. No. 100-40 at 157 (Ways & Means, 1987). The Committee further explained that: "Any sale in

---

[7] In addition to eliminating the injury requirement, Congress made a number of other changes in 1988 to strengthen the effectiveness and broaden applicability of the statute as a tool for intellectual property enforcement. Among others, it expanded the definition of "domestic industry" and clarified the ITC's authority to issue Cease & Desist Orders.

Case: 12-1170 Document: 129 Page: 21 Filed: 08/18/2014

the United States of an infringing product is a sale that rightfully belongs only to the holder or licensee" of the intellectual property. It expressed the concern that some holders of U.S. intellectual property rights were "denied access to Section 337 relief" as a result of the injury requirement and it sought to ensure that all such rights holders could obtain relief. *Id*. at 156.

Congress also used the 1988 amendments to catch up with Section 337 and the result in the *Amtorg Trading* case, creating Section 271(g) of the Patent Act which for the first time made it an act of infringement to import a product made by a patented process. Again in 1994, Congress recognized the importance of infringement at the time of importation, by amending Section 271 (effective in 1996) to add "import into the United States" to various subsections of the Patent Act, including § 271(a).[8]

Thus, for the entire period prior to 1996, Section 337 was not limited to acts that infringe under Section 271. That clearly was Congress's intent, and any other interpretation would be completely unsupported.

### F. The Separate Provisions for Statutory Intellectual Property Rights Were Meant to Remove the Injury Requirement, Not to Change the Scope of Section 377

[8] Uruguay Agreements Act, Pub. L. No. 103-465, §§ 532(a)(1), 533(a)(1)-(4), 108 Sta. 4809 (Dec. 8, 1994).

Case: 12-1170 Document: 129 Page: 22 Filed: 08/18/2014

To accomplish the elimination of the injury requirement, Congress created separate subparagraphs under Section 337(a) for each of the categories of unfair acts for which the injury requirement was no longer required, including subsection 337(a)(1)(B) to explicitly cover patent infringement without including an injury requirement.

In so doing, and particularly in using the language "articles that – infringe " in Section 337(a)(1)(B), Congress in no way intended to otherwise limit Section 337 relief against unfair acts as applied to patent infringement. The purpose of separating out the statutory intellectual property rights into distinct subsections addressing patents, copyrights, trademarks, mask works, and hull designs, was to expressly delineate the statutory rights for which an injury showing was no longer required. It was not intended to limit the scope of Section 337 as it had previously been applied to them.

The Conference Report to the Omnibus Trade and Competitiveness Act of 1988 expressly declared that the purpose of the amendment was to remove the requirement to prove injury but only with regard to cases involving patents, copyrights, registered trademarks, and mask works. H.R. Report No. 100-576 at 633 (Apr. 20, 1988). That Report makes clear that the amendment was not intended to make a substantive change:

> In changing the wording with respect to importation or sale, *the conferees do not intend to change the interpretation or implementation of current law* as it

Case: 12-1170 Document: 129 Page: 23 Filed: 08/18/2014

> applies to the importation or sale of articles that infringe certain U.S. intellectual property rights.

*Id.* (emphasis added); *see also Enercon GmbH v. ITC*, 151 F.3d 1376, 1383 (Fed. Cir. 1998) ("in passing the 1988 amendments to section 337, Congress did not intend to weaken the ability of the ITC to prevent unfair acts.").

The "current law" that Congress intended to preserve plainly encompassed Section 337 relief for induced patent infringement, and that law has been preserved and applied in the Commission investigations cited in the opinion of Judge Reyna, dissenting from the majority panel decision in this case.[9] A number of these investigations predated the 1988 amendments, including *Apparatus for the Continuous Production of Copper Rod*, USITC Pub. No. 1017 (Nov. 23, 1979) (Comm'n Op.), *Frischer* (affirming Section 337 violation based on induced infringement), and *The Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983) (affirming violation in Inv. No. 337-TA-99 based on contributory and induced infringement of process patents).[10] Moreover, although Congress has amended Section 337 several times since the 1988 amendments (extensively in 1994, for

---

[9] *See* slip op., Judge Reyna's dissenting opinion at 5, n2.

[10] While the ITC did not expressly address its statutory authority to remedy induced infringement in these investigations, it should be presumed to have considered the issue and implicitly upheld its authority since an agency should always limit its actions to those it understands to be authorized. AIPLA submits that respondents in these investigations did not challenge the ITC's authority, and the ITC did not analyze it, because both the ITC and the parties viewed the authority as clear.

Case: 12-1170 Document: 129 Page: 24 Filed: 08/18/2014

example), it never indicated dissatisfaction with the application of the statute to induced infringement.

In sum, Congress intended Section 337 to remain a broad trade statute that would cover all unfair trading practices, other than unfair dumping and subsidies. That coverage was intended as part of the 1922 Act, the 1930 Act, and the 1974 Act, to extend to all aspects of patent infringement, and was consistently so understood. The addition of the 1988 language eliminating the injury requirement demonstrates Congress's continuing intent to further broaden Section 337 to cover all unfair practices, not to restrict it.

The *Suprema* panel decision would frustrate that intent. It would eliminate coverage by Section 337 for an important class of unfair trade practices – imports of products that are used in inducement of patent infringement – for which Section 337 is often the most practical remedy and which Congress intended to cover.

## II. SECTION 337 DOES NOT CONTAIN A TEMPORAL LIMITATION ON ITS FACE; THE ITC'S REASONABLE INTERPRETATION OF THE RESULTING AMBIGUITY MUST BE GIVEN DEFERENCE

The panel decision in this case reads into the meaning of a Section 337 "unfair act" based on patent infringement a requirement that Section 271 infringement must occur before importation. This requirement finds no support in the language of the 1922 version of Section 316, the 1930 version of Section 337, or the 1974 version of Section 337. Those statutes required only that the unfair act was

Case: 12-1170 Document: 129 Page: 25 Filed: 08/18/2014

related to articles that were imported. Moreover, Congress in 1940 specifically rejected a "where or when" limitation to patent-related unfair acts for finding a Section 337 violation.[11]

The Commission considered patent infringement "for its own purposes under Section 337."[12] Indeed, the statute covered acts that would never have constituted infringement at the time, *e.g.*, practice of a method claim outside the United States and importation of a resulting article before 1988, or indeed even importation alone of an article reading on a U.S. patent. Congress has consistently and historically expected that Section 337 would apply broadly to unfair trade in imports and that the statute, while informed by Section 271, is not necessarily limited by the terms of Section 271, at least as to time or location of infringement.

The *Suprema* panel, however, mistakenly based its decision on an assumption that Section 337 is strictly limited by the scope of Section 271 of the Patent Act, stating in particular that Section 271 is "the basis for the unfair trade practice regulated in" Section 337. *See* slip op. at 18. It extended this proposition to the issue of where or when an infringement occurs, mistakenly assuming that Section 337 is limited by Section 271, as the CCPA did in *Amtorg*, only to be reversed by Congress.

---

[11] *See* discussion *supra* of Congress's rejection of the rationale in the *Amtorg Trading* case.

[12] Senate Finance Comm. Rep., No. 93-1298, *supra* at 196.

As to the "where" question, the panel held that a Section 337 action based on Section 271(b) patent inducement requires that infringement be consummated outside the U.S. border. However, this would give the border much greater significance for a claim based on Section 271(b) than it gets for claims based on direct and contributory infringement under Sections 271(a) and (c). Although both Patent Act provisions require the infringing acts to occur "within the United States," this border-related requirement makes no sense for policing unfair acts of importation where the "infringing acts" necessarily occur "outside the United States." For policing unfair acts of importation, the border should have no more significance for induced infringement than it has for direct and contributory infringement.

As to the "when" question, the discussion above demonstrates that, while Section 337 is informed by Section 271, it is not temporally limited by Section 271. The 1988 Act imposed no temporal limitation as to when the act of infringement is completed. There is no express limitation as to time in the text that was added, and the legislative history is clear that the only change intended was the removal of the injury requirement for proving an unfair act with respect to imports and specified intellectual property rights. This should make one severely skeptical of the panel majority's apparent holding that Section 337(a)(1)(B) as amended in 1988, for the first time added a new temporal requirement, by using the phrase "articles that

Case: 12-1170 Document: 129 Page: 27 Filed: 08/18/2014

infringe."[13] By its express terms, the language of Section 337 neither excludes induced infringement nor imposes a temporal limitation as to when the infringement must occur in order to find an unfair act of importation.

Further, the Court should resist the suggestion of the *Suprema* panel majority that Section 271(b) includes a temporal limitation that should be read into Section 337 (slip op. at 19-20). The reasoning behind this suggestion is premised on the opinion's description of Section 271(a) and (c) (direct and contributory infringement respectfully) as addressing conduct that is tied to an article, and its description of Section 271(b) on induced infringement as addressing conduct that is untied to an article. The implication appears to be that only conduct tied to an article is contemplated by the unlawful acts that may be policed by the ITC.

This position is unsupportable. There is no reason that Section 337 should be informed by 35 U.S.C. §§ 271(a) and (c), but not by 35 U.S.C. § 271(b). While Section 271 recites three different types of infringement, the statute makes no specific mention of the time of infringement and only addresses who can be held liable as an infringer. In addition, all three types of infringement ultimately deal with both product (or process) and conduct. In each instance, there must be something which infringes, and there must be at least one actor that causes the infringement. The panel majority's attempt to overlay the different types of

[13] *See* slip op. at 16 ("The focus [of Section 337] is on the infringing nature of the articles at the time of importation.")

Case: 12-1170 Document: 129 Page: 28 Filed: 08/18/2014

infringement found in Section 271 and extrapolate limitations on Section 337 based on those distinctions runs against that statute's long history as a guard against unfair imports related to patent infringement.

The legislative history to the 1988 revisions details particular types of cases that are <u>not</u> covered by the new subsections of Section 337 addressing patent, copyright, and trademark infringement. H.R. Rep. No. 100-40 at 154 (Ways & Means, 1987). While the House Report identifies specific actions that are not covered, such as trade secrets, false advertising, and common law trademark, it makes no mention of induced patent infringement. This lends support to the position that this type of patent infringement was intended to be covered by subsection 337(a)(1)(B).

In reading a temporal limitation into the statute, the panel majority effectively adds to the statutory language, taking "articles that infringe" and adding the language "at the time of importation." But that language is not there. To the contrary, the language actually used suggests that Section 337 encompasses articles that infringe when sold for importation (which by definition occur before importation), articles that infringe when sold in the United States after importation, or articles that infringe at the time of importation. Thus, an exclusion order could issue based on conduct before importation or after importation if the conduct related to the article would constitute infringement either before or after importation. This

is an inquiry the Commission undertakes for purposes of determining a Section 337 violation, not for determining a violation of the Patent Act.[14]

On its face, therefore, Section 337(a)(1)(B) does not impose a temporal limitation. As it did with respect to the defenses to Section 271(g), the Commission here made its own interpretation of the Patent Act to determine the scope of its authority with respect to induced infringement. In *Kinik*, this Court deferred to the Commission's determination on Section 271(g), writing the following: "To the extent that there is any uncertainty or ambiguity in the interpretation of §337(a) and its successor §1337(a)(1)(B)(ii), deference must be given to the view of the agency that is charged with its administration. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 (1984)." *See also Corning Glass Works v. Int'l Trade Comm'n*, 799 F.2d 1559, 1565 (Fed. Cir. 1986). As in *Kinik*, the Commission's interpretation of its statute is supported by the text of the statutes, by the legislative history, and by precedent. The same result should obtain in this case.

## III. THE COMMISSION HAS ADEQUATE AUTHORITY TO AVOID ANY POTENTIAL ABUSE FROM ALLEGATIONS OF INDUCED INFRINGEMENT

Some of the objections to permitting Section 337(a)(1)(B) to apply to induced infringement stem not from the terms of the law itself, or its history, but from policy

[14] Under section 337, of course, the conduct must still relate to the entities called out by the statute and the actions specified with respect to the article as imported.

Case: 12-1170 Document: 129 Page: 30 Filed: 08/18/2014

and administrative concerns. The objections appear to fall into two categories: (1) potential abuse of respondents by complainants with a weak inducement case, and (2) difficulties in properly issuing and enforcing exclusion orders issued against products that induce infringement but do not directly or contributorily infringe.

AIPLA submits that those concerns can be adequately addressed under the provisions of current law.

The Commission has followed and will continue to follow the law on inducement as it relates to notice and intent, which is quite restrictive. *See, e.g.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. ___, 131 S. Ct. 2060 (2011); *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361 (2013). Findings of induced infringement are likely to be uncommon in light of this recent precedent.

This precedent should make it possible, in appropriate circumstances, for respondents to eliminate inducement allegations early in the investigation. Among the tools for such early elimination are motions to strike, motions for summary determination (*see* 19 C.F.R. § 210.18), and requests for consideration under the Commission's 100-day protocol for early resolution of issues (*see Certain Prods. Having Laminated Packaging, Laminated Packaging, and Components Thereof*, Inv. No. 337-TA-874, Comm'n Op. (Sept. 3, 2013)).

Moreover, the Commission has significant authority, indeed an obligation, to consider the implications of relief for induced infringement as part of its obligation

to consider the public interest before issuing a remedial order. Section 337(d)(1) directs that the Commission is not required to exclude articles if

> after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry.

The Commission has exercised its authority under this provision to deny relief entirely or to limit relief where it found that such consideration so recommended.[15]

The Commission has also exercised its discretion to limit the scope of relief in investigations involving respondents' downstream products. In such cases, the Commission applies a nine-factor test to determine whether to exclude products that incorporate an infringing component after finding a violation of Section 337. *See*

---

[15] *See, e.g., Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, including Cellular Telephone Handsets*, Inv. No. 337-TA-543, ITC Pub. 4258 (Oct. 2011) (remedy limited to apply only to new models and except previously imported models); *Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, ITC Pub. 4331 (June 2012) (exclusion order did not become effective until four months after issuance, and respondent could import refurbished phones replacements under warranty or an insurance contract for some two years). Also, recently, the U.S. Trade Representative (USTR) disapproved the ITC's decision to issue an exclusion order in *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music And Data Processing Devices, And Tablet Computers*, Investigation No. 337-TA-794. Letter from Michael Froman, Office of the U.S. Trade Representative, to Irving Williamson, Chairman of the U.S. International Trade Commission (August 3, 2013).This disapproval was in the context of a potential exclusion order involving patents that the USTR found to be subject to FRAND obligations. The USTR letter specifically instructs the ITC to consider in future cases involving such obligations whether the public interest would militate against issuing a remedy. This letter further suggests ITC has authority to consider such factors prior to granting relief.

Case: 12-1170 Document: 129 Page: 32 Filed: 08/18/2014

*Certain Erasable Programmable Read-Only Memories*, Inv. No. 337-TA-276, Pub. No. 2196, 1989 WL 1716252, *88 (U.S.I.T.C. May 1989) (EPROMs).

Further, the Commission has exercised its discretion to limit or deny General Exclusion Orders to avoid an undue burden on legitimate commerce. See *Certain Cigarettes and Packaging Thereof*, Inv. No. 337-TA-424, USITC Pub. 3366 (Commission Opinion at 5) (because of a general exclusion order's "considerable impact on international trade, potentially extending beyond the parties and articles involved in the investigation, more than just the interest of the parties is involved. Therefore, the Commission exercises caution in issuing general exclusion orders ….”); *Certain Asian-style Kamaboko Fish Cakes*, Inv. 337-TA-378, USITC Pub. 2998 (1996) (Comm. Op. on Remedy, the Public Interest and Bonding at 3) (“the Commission balances the complainant’s interest in obtaining complete relief against the public interest in avoiding the disruption of legitimate trade that a general exclusion order might cause”). The Commission can likewise limit or tailor relief granted as to induced infringement if needed to avoid disruption of legitimate trade.

Fourth, the Commission and also Customs and Border Protection have additional authority to craft mechanisms for Customs’ enforcement of exclusion orders to avoid undue burden on legitimate commerce. Thus, for example, should the Commission find that only certain products induce infringement or that inducement occurs only in certain uses or by certain importers, the Commission can

Case: 12-1170 Document: 129 Page: 33 Filed: 08/18/2014

permit CBP to accept a simple certification, submitted as part of the required entry papers, that the particular importation does not fall within those categories. The use of such certifications is a common practice. *See, e.g., In re Certain Audio Processing Integrated Circuits and Products Containing Same*, Inv. No. 337-TA-538, USITC Pub. 3991, Comm'n Op. 10, (May 2008), 2008 ITC LEXIS 814, at *15 ("We believe that the burdens on third parties and Customs will be minimized by the certification provision we have included in the limited exclusion order.").

Additionally, AIPLA submits that such concerns should be addressed on a case-by-case basis. Each case presents different considerations and calls for different approaches. AIPLA submits that such case-by-case ITC review will clarify the complex boundaries of induced infringement jurisdiction without jettisoning decades of practice and violating Congress' intent to allow the Commission in appropriate cases to exclude products that induce infringement.

## IV. THE PANEL DECISION WILL SIGNIFICANTLY UNDERCUT THE PROTECTION OF U.S. INTELLECTUAL PROPERTY RIGHTS

AIPLA believes that the effective enforcement of intellectual property rights is of critical importance to the U.S. economy, and Section 337 is an important part of such enforcement. With all due respect to the panel majority, AIPLA submits that the *Suprema* panel decision will, in some circumstances, enable foreign companies to circumvent Section 337 and evade effective IP enforcement. *Cf.* slip

Case: 12-1170 Document: 129 Page: 34 Filed: 08/18/2014

op. at 21 n.4 ("We do not agree with the dissent that today's holding will materially impact the ITC's ability to carry out its mandate.")

Section 337 has for many years been an important tool in enforcing U.S. intellectual property rights where imports are concerned. There are a number of reasons why complainants utilize Section 337, including its national in rem jurisdiction and venue, its speed, the effectiveness of its relief, and its panel of experienced ALJs. Notably, in some instances involving induced infringement, litigation at the district court is not practical in cases involving unfair imports, and Section 337 is the only effective remedy available to U.S. IP owners.

The concern about the effect of the panel decision is not an idle one. It is squarely present in in cases where a claimed method is only performed by the end-user. See, e.g., *Minoxidil Powder, Salts & Compositions for Use in Hair Treatment*, Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988) (only unnamed end-users actually directly infringed). In other instances, the product does not directly infringe until actual operation, after importation. *See, e.g., Navigation Products, Including GPS Devices, Navigation and Display Systems, Radar Systems, Navigational Aids, Mapping Systems and Related Software*, Inv. No. 337-TA-900 (Complaint, Sept. 23, 2013, ¶ 65) (alleging that "Respondents actively induce others to infringe . . . [by selling products into the United States] together with Respondent-created training seminars, videos, user manuals, operating instructions and other materials").

Case: 12-1170 Document: 129 Page: 35 Filed: 08/18/2014

Similarly, in a number of cases, one of the essential elements of one or more of the asserted claim(s) relates to a software component or application that is or could be readily added after importation. *See, e.g., Certain Mobile Communications and Computer Devices and Components Thereof*, Inv. No. 337-TA-704 (Complaint, Jan. 15, 2010, ¶¶ 15, 53) (induced infringement based in part on software "designed for use on, and intended to be loaded onto, such devices").

Perhaps the most problematic implication of the panel's decision, however, is that it would allow many respondents to readily evade previously issued ITC exclusion orders with impunity. Consider a not unusual situation in which, following a full investigation, the Commission issues an exclusion order against a product for which direct infringement was found based, in part, on the inclusion at the time of importation of a particular feature in the product that can instead be added after importation – for example, a software-based feature. Following issuance of the exclusion order, a respondent subject to the order need only modify the product to remove that feature and invite the end-user to download it when the product is first started after importation, perhaps simply by pushing a button or clicking on an icon. The product will no longer directly infringe at the time of importation, and can no longer be excluded under the panel's holding.

In such an instance, only the end-users would be subject to action in district court, which as noted may not be practical or economically feasible. The panel

decision is thus an open invitation to attempt to end-run around exclusion orders in this fashion, even though induced infringement would generally be clear in the circumstances (since the respondent would be fully aware of the exclusion order). This defect in Section 337 coverage resulting from the panel decision will become increasingly harmful to the protection of U.S. patents over time as more and more products contain software-based features.

Date: August 18, 2014

Respectfully submitted,

Wayne P. Sobon
*President*
American Intellectual Property
Law Association
241 18th Street South, Suite 700
Arlington, Virginia 22202

/s/ James B. Altman
James B. Altman
*Counsel of Record*
F. David Foster
Foster, Murphy, Altman & Nickel, PC
1899 L Street, N.W., Suite 1150
Washington, D.C. 20036

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains _6816_ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: August 18, 2014

*/s/* James B. Altman
James B. Altman
Foster, Murphy, Altman & Nickel, PC
1899 L St., N.W., Suite 1150
Washington, D.C. 20036
*Principal Attorney for Amicus Curiae American Intellectual Property Law Association*
(202) 822-4100

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2014, a true and correct copy of the foregoing **BRIEF OF AMICUS CURIAE AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF THE PETITION FOR PANEL REHEARING AND/OR REHEARING EN BANC** was timely filed with the Clerk of the Court using the appellate CM//ECF system, which will send notification to all counsel registered to receive electronic notices.

Dated: August 18, 2014

*/s/* James B. Altman
James B. Altman
Foster, Murphy, Altman & Nickel, PC
1899 L St., N.W., Suite 1150
Washington, D.C. 20036
*Principal Attorney for Amicus Curiae American Intellectual Property Law Association*