**2012-1170**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SUPREMA, INC. AND MENTALIX INCORPORATED,

*Appellants,*

*v.*

INTERNATIONAL TRADE COMMISSION,

*Appellee.*

*and*

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor.*

*Appeal from the United States International Trade Commission in Investigation No. 337-TA-720*

## BRIEF OF INTELLECTUAL PROPERTY OWNERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

PHILIP S. JOHNSON, *President*
KEVIN H. RHODES, *Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
1501 M Street, N.W.
Suite 1150
Washington, DC 20005
(202) 507-4500

J. MICHAEL JAKES
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Ave., NW
Washington, DC 20001
(202) 408-4045

*Counsel for Amicus Curiae Intellectual Property Owners Association*

August 18, 2014

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

SUPREMA, INC. V. ITC

No. 2012-1170

## CERTIFICATE OF INTEREST

Counsel for the Amicus Curiae, Intellectual Property Owners Association certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

Intellectual Property Owners Association

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Philip S. Johnson, Kevin H. Rhodes, and Herbert C. Wamsley,
Intellectual Property Owners Association

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner L.L.P.

August 18, 2014
Date

/s/ Herbert C. Wamsley
Herbert C. Wamsley

Case: 12-1170 Document: 139 Page: 3 Filed: 08/18/2014

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

INTEREST OF AMICUS CURIAE .......... 1

SUMMARY OF THE ARGUMENT .......... 2

ARGUMENT .......... 3

I. Section 1337 Is a Trade Statute, Whose Purpose Is to Protect Against Unfair Trade Acts .......... 3

II. The ITC Has the Authority Under § 1337 to Issue an Exclusion Order in Appropriate Circumstances When an Importer Has Induced Infringement Under § 271(b) .......... 5

III. In Exercising Its Authority Under § 1337, the ITC Should Rigorously Apply the Requirements for Induced Infringement .......... 11

CONCLUSION .......... 13

APPENDIX .......... A1

Case: 12-1170 Document: 139 Page: 4 Filed: 08/18/2014

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ....................6

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ....................12

*Enercon GmbH v. ITC*,
151 F.3d 1376 (Fed. Cir. 1998) ....................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)....................2, 12

*John Mezzalingua Assoc., Inc. v. ITC*,
660 F.3d 1322 (Fed. Cir. 2011) ....................3

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
134 S. Ct. 2111 (2014)....................8

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
244 F.3d 1365 (Fed. Cir. 2001) ....................6

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ....................9

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
754 F.2d 345 (Fed. Cir. 1985) ....................8

*Warner-Lambert Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003) ....................12

*Young Engineers, Inc. v. ITC*,
721 F.2d 1305 (Fed. Cir. 1983) ....................10, 11

**Statutes and Rules**

19 U.S.C. § 1337....................passim

35 U.S.C. § 271....................passim

Case: 12-1170 Document: 139 Page: 5 Filed: 08/18/2014

Fed. R. App. 29 ....................................................................................................1

Fed. Cir. Rule 29 ..................................................................................................1

**Legislative History**

S. Rep. 71, 100th Cong., 1st Sess. (1987)..........................................................11

H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. (1988)...................................10, 11

Case: 12-1170 Document: 139 Page: 6 Filed: 08/18/2014

The Intellectual Property Owners Association (IPO) submits this brief as an amicus curiae pursuant to Fed. R. App. 29, Fed. Cir. Rule 29, and the Court's Order dated June 11, 2014, authorizing amicus briefs in this case. IPO submits this brief in support of the ITC having the authority under 19 U.S.C. § 1337 to ban importation of articles that will result in induced infringement, as long as all the requirements for inducement are met. IPO takes no position on the underlying merits of the parties' appeal, including whether the requirements for induced infringement are met in this case.

**INTEREST OF AMICUS CURIAE**

Amicus curiae Intellectual Property Owners Association is a trade association representing companies and individuals in all industries and fields of technology that own or are interested in intellectual property rights.[1] IPO's membership includes more than 200 companies and more than 12,000 individuals who are involved in the association either through their companies or as inventor, author, executive, law firm, or attorney members. Founded in 1972, IPO represents the

---

[1] No counsel for a party authored this brief in whole or in part, and no such counsel of party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the amicus curiae or its counsel made a monetary contribution to its preparation or submission. IPO files this brief in accordance with the order issued on June 11, 2014 which states that briefs may be filed without consent or leave of the court. The parties have consented to the filing of this brief.

Case: 12-1170 Document: 139 Page: 7 Filed: 08/18/2014

interests of all owners of intellectual property. IPO regularly represents the interests of its members before Congress and the United States Patent and Trademark Office and has filed amicus curiae briefs in this Court and other courts on significant issues of intellectual property law. The members of IPO's Board of Directors, which approved the filing of this brief, are listed in the Appendix.[2]

## SUMMARY OF THE ARGUMENT

The ITC has the authority under 19 U.S.C. § 1337 to ban importation of articles that will result in induced infringement under 35 U.S.C. § 271(b), even when direct infringement will take place after importation, as long as all the requirements for inducement are met. To hold otherwise would create a tremendous loophole that would allow importers, who may be beyond the jurisdiction of the district courts, to circumvent the ITC's authority and purpose, which is to protect against unfair trade acts, including importation of articles that will result in patent infringement.

By rigorous application of the specific intent standard required to establish active inducement of infringement under the Supreme Court's opinion in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), the ITC's authority to ban importation of articles that will result in infringement only after importation is

[2] IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

Case: 12-1170 Document: 139 Page: 8 Filed: 08/18/2014

appropriately limited. The ITC may exclude such articles only upon sufficient proof that the importer intends to induce infringement in the United States following importation.

## ARGUMENT

### I. Section 1337 Is a Trade Statute, Whose Purpose Is to Protect Against Unfair Trade Acts

Section § 1337 is a trade statute, whose purpose is to protect against unfair trade acts, including importation of articles that will result in patent infringement and harm to a domestic industry. The Congressional purpose of the statute is to provide "meaningful relief available to patentees by enabling the ITC to issue exclusion orders to stop infringement at the border." *John Mezzalingua Assoc., Inc. v. ITC*, 660 F.3d 1322, 1340 (Fed. Cir. 2011). As originally enacted in 1930, § 1337 authorized the ITC to investigate unfair acts in the importation of articles, including those that resulted in infringement of patents.[3] Over time, the ITC has developed into an important forum for protecting the rights of U.S. patent owners. At no time was the ITC's authority limited to only certain acts that constitute infringement under § 271, as long as those acts related to importation and resulted in harm to a domestic industry.

[3] Sections § 271(a) and (c) of the patent statute did not list "import[ing] into the United States" as an infringing act until 1994. Pub. L. 103-465, § 533(a).

Case: 12-1170 Document: 139 Page: 9 Filed: 08/18/2014

If the Court holds that direct infringement must take place at the time of importation, this will create a tremendous loophole that will allow importers, who may be beyond the jurisdiction of the district courts, to circumvent the ITC's authority. The ITC already does not consider allegations of direct infringement of method claims under § 271(a). A patented method is only infringed by "use" in the United States, which is not one of the types of conduct proscribed by § 1337. Section 1337(a)(1)(B) lists as unfair trade acts "importation," "sale for importation," and "sale within the United States after importation"—not "use." Thus, for patents with method claims, a patent owner may allege only indirect infringement under § 271(b) and (c). If the Court interprets § 1337 to eliminate induced infringement under § 271(b) from the ITC's statutory authority, that leaves only the possibility of enforcing method patents under § 271(c) where the imported articles are especially made or adapted for use in practicing the method.[4]

Contributory infringement under § 271(c) does not apply, however, when the article has a substantial noninfringing use. In those circumstances, if the ITC cannot reach induced infringement, an importer may be able to avoid the ITC entirely. For example, an importer could instruct users to delay final assembly of

---

[4] As discussed below in Section II, *infra* at 9, if direct infringement must take place "at the time of importation," § 271(c) will not be available in the ITC either, as the direct infringement for contributory infringement will also occur after importation.

the parts of an apparatus—and thus direct infringement—until after importation. Similarly, an importer could instruct users to perform one or more method steps after importation of an article that is used to practice a patented method. While a patent owner may be able to sue a foreign entity in the district court for inducing infringement under § 271(b), there may be issues of personal jurisdiction and enforcement of the judgment that make the district court ineffective. Without being able to stop the infringing articles at the border, when they are being used to induce infringement of a patent in the United States, patent owners may be left without an effective remedy.

## II. The ITC Has the Authority Under § 1337 to Issue an Exclusion Order in Appropriate Circumstances When an Importer Has Induced Infringement Under § 271(b)

1. Based on the statutory language, its structure, and purpose, § 1337 should be interpreted to give the ITC authority to remedy induced infringement under § 271(b) in appropriate circumstances. While § 1337(a)(1)(B) refers to "articles that . . . infringe," that statute must be read together with § 271 ("Infringement of a Patent"). Section 271 describes patent infringement in terms of acts of infringement and who is an infringer—not infringing articles. Thus, "articles that infringe" is something of a misnomer since *things* don't infringe—people do. And one of the ways to infringe a patent is by inducement. § 271(b)

Case: 12-1170 Document: 139 Page: 11 Filed: 08/18/2014

("Whoever actively induces infringement of a patent shall be liable as an infringer.").

Although the two sections do not use consistent terminology, they should be read together, in view of the underlying purpose of § 1337. Induced infringement often involves import or sale of a product. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (holding that foreign supplier's "acts in connection with selling its chip . . . constitute active inducement" of infringement); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (holding defendant liable for "induced infringement because it sold the device with the intention that doctors would use it to perform the patented method"). In that case, articles imported with the intent to induce others to infringe a patent can be said to be "articles that . . . infringe."[5]

That interpretation is also consistent with the purpose of § 1337. As discussed above in Section I, *supra* at 3, the statute is designed to provide relief from acts of unfair trade, including patent infringement that will result in harm to a domestic industry, whether that infringement is direct or indirect. Thus, based on

[5] As Judge Reyna observed in his dissenting opinion (at 14), there is no practical distinction between importing an article that meets all the limitations of an apparatus claim and encouraging another to use that article to practice a patented method. In both cases, a patented invention is practiced within the United States without authority as a result of importing of "articles that . . . infringe."

Case: 12-1170 Document: 139 Page: 12 Filed: 08/18/2014

the statutory language, its structure, and purpose, the ITC should have the authority under § 1337 to ban importation of articles that will result in induced infringement under § 271(b), even when direct infringement will take place after importation.

2. Neither the text nor the structure of § 1337(a) supports a narrow reading that the unfair trade acts within the ITC's authority cannot extend to induced infringement under § 271(b) because the direct infringement takes place after importation. While the original panel opinion held that § 1337 only applies to articles that infringe "at the time of importation," those words do not appear in the statute. Indeed, one of the three actionable unfair acts listed in § 1337(a)(1)(B) expressly addresses *post-importation* conduct:

> [1] The importation in the United States, [2] the sale for importation, or [3] *the sale within the United States after importation* by the owner, importer or consignee, of articles that . . . infringe a valid and enforceable United States patent . . . . (emphasis added).

Articles that infringe "at the time of importation" are covered by the first act listed in § 1337(a)(1)(B), namely [1] "[t]he importation in the United States" of "articles that . . . infringe," which is also an act of infringement under § 271(a). If an article is already infringing at the time of importation under [1], then [3] "sale within the United States after importation" is by definition also infringing and adds nothing that is not already covered. But if "sale . . . after importation" is a separate unfair

Case: 12-1170 Document: 139 Page: 13 Filed: 08/18/2014

act that is actionable under § 1337(a), it must also cover sales of articles that are not infringing at the time of importation; otherwise, it is unnecessary.

In this respect, it is important not to confuse the requirements for induced infringement under §271(b) with the *time* that liability attaches for that infringement. There is no doubt that induced infringement requires an act of direct infringement.[6] *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) (stating that, under Supreme Court's case law, there is "no doubt that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'"). But liability for induced infringement can attach when the steps are taken to induce the infringement, including importing the article, and need not wait for the direct infringement. *See Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985) (holding that liability for induced infringement arises "*as of the time the acts were committed*, not at some future date determined by the acts of others," i.e., direct infringement).

While the original majority opinion hypothesized that liability under §271(b) could still attach when direct infringement occurs pre-importation, Op. at 21 n.4, in reality that will not happen. Direct infringement can only occur in the United

[6] As discussed further below in Section III, *infra* at 11–12, the additional requirements of knowledge and specific intent for induced infringement should be rigorously applied by the ITC.

States, as § 271(a) is expressly limited to domestic acts. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012) (stating that "purely extraterritorial conduct cannot constitute *direct* infringement of a U.S. patent"). Thus, as a matter of logic, direct infringement cannot take place pre-importation, which would necessarily be outside the United States.

The original majority opinion also acknowledged that the ITC has the authority to remedy another form of indirect infringement—contributory infringement under § 271(c). Op. at 19. Like induced infringement under §271(b), however, the direct infringement necessary for contributory infringement must take place after importation in this country. *See Merial*, 681 F.3d at 1302 (holding that "direct infringement claims require domestic infringing acts"). There is nothing in the text or the structure of § 1337 that distinguishes these two forms of infringement or suggests they should be treated differently. *See Akamai*, 134 S. Ct. at 2117 (addressing requirement of direct infringement for inducement under § 271(b) but relying on case law for contributory infringement under § 271(c), stating "we see no basis to distinguish for these purposes between the two, which after all spring from common stock."). Thus, if the ITC's authority under § 1337 cannot reach induced infringement under § 271(b) because the direct infringement takes place after importation, then contributory infringement under §271(c) should

be excluded as well. As discussed next, there are decades of precedent where the ITC found violations of § 1337 for both induced and contributory infringement.

3. Nothing in the history of § 1337 shows any intent to eliminate from the ITC's authority to investigate unfair trade acts the act of inducement leading to infringement under § 271(b) when it involves importation. Since its original enactment, § 1337 has been interpreted to reach the acts of an importer who induces post-importation infringement under § 271(b). *See, e.g.*, *Young Engineers, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983). In 1998, Congress amended the statute to add the language at issue in this case, which now expressly prohibits the "importation . . . of articles that . . . infringe" a U.S. patent. The legislative history explains that the addition of this language was not intended to change the interpretation of the statute. H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 633 (1988) ("In changing the wording with respect to importation or sale, the conferees do not intend to change the interpretation or implementation of current law as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights."). In passing the 1988 amendments to § 1337, "Congress did not intend to weaken the ability of the ITC to prevent unfair acts by including an additional limitation on its jurisdiction." *Enercon GmbH v. ITC*, 151 F.3d 1376, 1382 (Fed. Cir. 1998) (stating that "the 1988 amendments were intended to strengthen the statute's effectiveness in eliminating the problems caused by the

Case: 12-1170 Document: 139 Page: 16 Filed: 08/18/2014

importation of goods that infringe U.S. intellectual property.”); *see* S. Rep. 71, 100th Cong., 1st Sess. 128 (1987); H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 112.

This history is confirmed by decades of precedent, cited by Judge Reyna in his dissent (at 5–6), where the ITC found violations of § 1337 by respondents actively inducing patent infringement. Many of those cases also involved contributory infringement under § 271(c), where the direct infringement did not occur until after importation. *See, e.g.*, *Young Eng’rs*, 721 F.2d 1305 (affirming violation based on contributory and induced infringement of process patents). For patent owners, changing the law now to exclude induced infringement from the ITC’s authority to proscribe unfair trade acts would be contrary to settled expectations and a long history at the ITC. Without a corresponding change in the statutory language, such a change in the settled law is not warranted and, as discussed above in Section I, *supra* at 4, creates a tremendous loophole that would allow importers to circumvent the ITC and avoid liability for inducing patent infringement in this country.

## III. In Exercising Its Authority Under § 1337, the ITC Should Rigorously Apply the Requirements for Induced Infringement

IPO is not advocating that the ITC should have the authority to stop imports of any article that might be used to infringe a U.S. patent. An import ban in the ITC based on induced infringement should still require a finding of culpable

Case: 12-1170 Document: 139 Page: 17 Filed: 08/18/2014

conduct, focusing on the intent of the inducer in performing the acts that result in infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (holding that "inducement requires evidence of culpable conduct, directed to encouraging another's infringement"). To succeed on a theory of induced infringement in the ITC, a complainant must still prove that the importer of the infringing articles induced the acts resulting in infringement. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) (stating that "[t]o succeed [on a theory of induced infringement], a plaintiff must prove that the defendants' actions induced infringing acts and that they knew or should have known their actions would induce actual infringement."). Thus, the importer must have knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *DSU,* 417 F.3d at 1304–06. The specific intent requirement can be met by showing "willful blindness" by the importer—i.e., that the importer (1) "subjectively believe[s] that there is a high probability" that a patent exists and that the induced acts result in infringement of that patent; and (2) "take[s] deliberate actions to avoid learning" about those facts. *See Global-Tech*, 131 S. Ct. at 2070.

By rigorously applying the requirements for induced infringement, including specific intent, the ITC should not be able to overstep its authority by prohibiting import of any articles that may be used to infringe a patent. The complainant must

prove under § 271(b) that the respondent specifically intended the articles to be used to infringe a U.S. patent. That will serve the intended purpose of § 1337, which is to protect against unfair trade acts, including importation of articles that will result in patent infringement, without exceeding the authority the statute give the ITC.

## CONCLUSION

IPO believes that the ITC should have the authority under § 1337 to ban importation of articles that will result in induced infringement, as long as all the requirements for inducement are met. IPO takes no position on the outcome of this particular case, including whether the requirements for induced infringement are met.

Respectfully submitted,

/s/ J. Michael Jakes
J. Michael Jakes
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Philip S. Johnson, *President*
Kevin H. Rhodes, *Chair*
*Amicus Brief Committee*
INTELLECTUAL PROPERTY OWNERS
ASSOCIATION
1501 M Street, N.W.
Suite 1150
Washington, D.C. 20005
(202) 507-4500

# APPENDIX

Case: 12-1170 Document: 139 Page: 20 Filed: 08/18/2014

## APPENDIX[1]

### Members of the Board of Directors
### Intellectual Property Owners Association

Steven Arnold
Micron Technology, Inc.

Edward Blocker
Koninklijke Philips N.V.

Tina M. Chappell
Intel Corp.

William J. Coughlin
Ford Global Technologies LLC

Robert DeBerardine
Sanofi-Aventis

Anthony DiBartolomeo
SAP AG

Louis Foreman
Enventys

Scott M. Frank
AT&T

Darryl P. Frickey
Dow Chemical Co.

Krish Gupta
EMC Corporation

Henry Hadad
Bristol-Myers Squibb Co.

Jennifer M. Hall
Mars Inc.

Carl B. Horton
General Electric Co.

Michael Jaro
Medtronic, Inc.

Philip S. Johnson
Johnson & Johnson

Lisa K. Jorgenson
STMicroelectronics, Inc.

Charles M. Kinzig
GlaxoSmithKline

Christopher H. Kirkman
The Travelers Companies, Inc.

David J. Koris
Shell International B.V.

Peter Y. Lee
Thermo Fisher Scientific Inc.

Allen Lo
Google Inc.

Timothy F. Loomis
Qualcomm, Inc.

Thomas P. McBride
Monsanto Co.

Steven W. Miller
Procter & Gamble Co.

[1]IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

Case: 12-1170 Document: 139 Page: 21 Filed: 08/18/2014

Micky Minhas
Microsoft Corp.

Douglas K. Norman
Eli Lilly and Co.

Elizabeth A. O'Brien
Covidien

Salvatore Pace
Praxair, Inc.

Richard F. Phillips
Exxon Mobil Corp.

Dana Rao
Adobe Systems Inc.

Kevin H. Rhodes
3M Innovative Properties Co.

Mark L. Rodgers
Air Products & Chemicals, Inc.

Curtis Rose
Hewlett-Packard Co.

Matthew Sarboraria
Oracle USA Inc.

Manny Schecter
IBM Corp.

Steven J. Shapiro
Pitney Bowes Inc.

Dennis C. Skarvan
Caterpillar Inc.

Terri H. Smith
Motorola Solutions, Inc.

Daniel J. Staudt
Siemens Corp.

Brian K. Stierwalt
ConocoPhillips

Thierry Sueur
Air Liquide

Brian Suffredini
United Technologies Corp.

James J. Trussell
BP America, Inc.

Roy Waldron
Pfizer, Inc.

Michael Walker
DuPont

BJ Watrous
Apple Inc.

Stuart L. Watt
Amgen, Inc.

Jon D. Wood
Bridgestone Americas Holding, Inc.

Michael Young
Roche, Inc.

Case: 12-1170 Document: 139 Page: 22 Filed: 08/18/2014

**United States Court of Appeals**
**for the Federal Circuit**

*Suprema, Inc. v. ITC*, 2012-1170

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by INTELLECTUAL PROPERTY OWNERS ASSOCIATION, Attorneys for Amicus Curiae to print this document. I am an employee of Counsel Press.

On **August 18, 2014**, counsel has authorized me to electronically file the foregoing **Brief for Amicus Curiae** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Darryl M. Woo
*(Principal Counsel)*
Bryan A. Kohm
David M.L. Kusters
Heather N. Mewes
Ilana Rubel
Erin Simon
FENWICK & WEST, LLP
555 California Street, 12th Floor
San Francisco, CA 94104
415-875-2300
dwoo@fenwick.com
bkohm@fenwick.com
dlacykusters@fenwick.com
hmewes@fenwick.com
irubel@fenwick.com
esimon@fenwick.com
*Counsel for Appellants*

Bradley T. Meissner
Jae Won Song
Fenwick & West Llp
1191 Second Avenue
Seattle, WA 98101
206-389-4546
bmeissner@fenwick.com
jsong@fenwick.com
*Counsel for Appellants*

Case: 12-1170 Document: 139 Page: 23 Filed: 08/18/2014

Maximilian A. Grant
*(Principal Counsel)*
Gabriel Bell
Bert C. Reiser
LATHAM & WATKINS LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
202-637-2200
max.grant@lw.com
gabriel.bell@lw.com
bert.reiser@lw.com
*Counsel for Intervenor*

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
212-906-1200
clement.naples@lw.com
*Counsel for Intervenor*

Clark S. Cheney
*(Principal Counsel)*
Andrea C. Casson
Clint A. Gerdine
Wayne W. Herrington
Office of General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC 20436
202-205-2661
clark.cheney@usitc.gov
andrea.casson@usitc.gov
clint.gerdine@usitc.gov
wayne.herrington@usitc.gov
*Counsel for Appellee*

Paper copies will also be mailed to the above principal counsel for each party on this date. Any counsel for Amici Curiae, registered as CM/ECF users and appearing in this matter at the time of filing, will be served only through the ECF notice of the filing.

Unless otherwise noted, thirty copies will be filed with the Court, via Federal Express, on this date.

August 18, 2014

/s/ John C. Kruesi, Jr.
Counsel Press

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

__X__ The brief contains 3,067 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__X__ The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using_________ ____________in a ___ characters per inch_________ font.

August 18, 2014
Date

/s/ J. Michael Jakes
J. Michael Jakes
Attorney for Amicus Curiae