No. 12–1170

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

SUPREMA, INC. AND MENTALIX, INC.,
*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,
*Appellee*,

and

CROSS MATCH TECHNOLOGIES, INC.,
*Intervenor*.

On appeal from the United States International Trade Commission,
Investigation No. 337-TA-720

# BRIEF OF *AMICUS CURIAE* MICROSOFT CORPORATION IN SUPPORT OF NEITHER PARTY

T. Andrew Culbert
David E. Killough
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Telephone: (425) 882-8080

Constantine L. Trela, Jr.
David T. Pritikin
Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

Brian R. Nester
Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000

*Counsel for Microsoft Corporation*

## CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae* Microsoft Corporation certifies the following:

1. The full name of every party or *amicus curiae* represented by me is: Microsoft Corporation.

2. The name of the real party in interest represented by me is: Microsoft Corporation.

3. There are no parent corporations or publicly held companies that own 10% or more of the stock of Microsoft Corporation.

4. The names of all law firms and the partners or associates who appeared for Microsoft Corporation in proceedings before the United States International Trade Commission, or are expected to appear in this Court, are:

SIDLEY AUSTIN LLP

Constantine L. Trela, Jr., David T. Pritikin, Richard A. Cederoth, Brian R. Nester, and Ryan Morris

MICROSOFT CORPORATION

T. Andrew Culbert and David E. Killough

DATE: August 18, 2014

/s/ Constantine L. Trela, Jr.
CONSTANTINE L. TRELA, JR.
*Counsel for Microsoft Corporation*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

STATEMENT OF INTEREST OF *AMICUS CURIAE* .......... 1

ARGUMENT .......... 3

I. SECTION 337(a)(1)(B)(i) OF THE TARIFF ACT DOES NOT APPLY TO METHOD CLAIMS. .......... 5

II. IN ANY EVENT, SECTION 337(a)(1)(B)(i) DOES NOT COVER INDIRECT INFRINGEMENT OF METHOD CLAIMS WHEN DIRECT INFRINGEMENT OCCURS POST-IMPORTATION. .......... 14

A. The Panel Correctly Concluded that Section 337(a)(1)(B)(i) Does Not Cover Induced Infringement of a Method Claim When Direct Infringement Occurs Post-Importation. .......... 15

B. Section 337(a)(1)(B)(i) Cannot Cover Contributory Infringement for the Same Reasons It Cannot Cover Inducement. .......... 18

CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alloc, Inc. v. ITC*,
342 F.3d 1361 (Fed. Cir. 2003) ....................12

*Ardestani v. INS*,
502 U.S. 129 (1991)....................8, 15

*Ariz. Christian Sch. Tuition Org. v. Winn*,
131 S. Ct. 1436 (2011)....................12

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961)....................4, 20, 22

*Bd. of Governors of Fed. Res. Sys. v. Dimension Fin. Corp.*,
474 U.S. 361 (1986)....................14

*Brecht v. Abrahamson*,
507 U.S. 619 (1993)....................13

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)....................17

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000)....................17

*Enercon GmbH v. ITC*,
151 F.3d 1376 (Fed. Cir. 1998) ....................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)....................21

*Heinzelman v. Sec'y of HHS*,
681 F.3d 1374 (Fed. Cir. 2012) ....................9

*Hilgraeve Corp. v. Symantec Corp.*,
265 F.3d 1336 (Fed. Cir. 2001) ....................7

*Hipolite Egg Co. v. United States*,
220 U.S. 45 (1911)....................12

Case: 12-1170 Document: 155 Page: 5 Filed: 08/18/2014

*INS v. Cardoza-Fonseca*,
480 U.S. 421 (1987)....9

*John Mezzalingua Assocs. v. ITC*,
660 F.3d 1322 (Fed. Cir. 2011) ....11

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ....6, 7, 20

*Kellog Co. v. Nat'l Biscuit Co.*,
305 U.S. 111 (1938)....6

*In re Kollar*,
286 F.3d 1326 (Fed. Cir. 2002) ....6

*Kyocera Wireless Corp. v. ITC*,
545 F.3d 1340 (Fed. Cir. 2008) ....3

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
134 S. Ct. 2111 (2014)....*passim*

*Linear Tech. Corp. v. ITC*,
566 F.3d 1049 (Fed. Cir. 2009) ....12

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
803 F.2d 684 (Fed. Cir. 1986) ....20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....5, 16, 17

*Motion Picture Ass'n of Am., Inc. v. FCC*,
309 F.3d 796 (D.C. Cir. 2002)....18

*Motorola Mobility LLC v. ITC*,
No. 2013-1518 (Fed. Cir. May 19, 2014)....1

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005)....13

*NTP, Inc. v. Research In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ....5, 6, 8

Case: 12-1170 Document: 155 Page: 6 Filed: 08/18/2014

*Pub. Emps. Ret. Sys. of Ohio v. Betts*,
492 U.S. 158 (1989), *superseded on other grounds by statute*,
Older Workers Benefit Protection Act, 104 Stat. 978 (1990),
*as recognized in Ky. Ret. Sys. v. EEOC*, 554 U.S. 135 (2008)............................13

*Ricoh Co. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) ........................................................................6, 7

*Sealed Air Corp. v. U.S. ITC*,
645 F.2d 976 (C.C.P.A. 1981) ........................................................................... 11

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)...........................................................................................18

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
754 F.2d 345 (Fed. Cir. 1985) ...........................................................................17

*Sundance, Inc. v. DeMonte Fabricating, Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008) .........................................................................12

*Suprema, Inc. v. ITC*,
742 F.3d 1350 (Fed. Cir. 2013), *vacated*,
2014 WL 3036241 (Fed. Cir. May 13, 2014).................................................6, 19

*United States v. Granderson*,
511 U.S. 39 (1994).............................................................................................11

*United States v. Mead Corp.*,
533 U.S. 218 (2001)...........................................................................................18

*VastFame Camera v. ITC*,
386 F.3d 1108 (Fed. Cir. 2004) ...........................................................................3

**STATUTES**

19 U.S.C. § 1337 ..................................................................................*passim*

35 U.S.C. § 271 ..................................................................................8, 9

**ADMINISTRATIVE DECISIONS**

*Certain Elec. Devices with Image Processing Sys., Components Thereof, & Associated Software*,
Inv. No. 337-TA-724, 2012 WL 3246515 (USITC Dec. 21, 2011)............*passim*

**LEGISLATIVE HISTORY**

H.R. Rep. No. 100-40, pt. 1 (1987).........................................................................10

**OTHER AUTHORITY**

*American Heritage Dictionary* (4th ed. 2009)..........................................................5

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

Microsoft Corporation is a worldwide leader in computer technology. Microsoft both holds U.S. patents and is often a defendant in lawsuits or a respondent in International Trade Commission (“Commission”) proceedings alleging that Microsoft’s products infringe U.S. patents owned by others. Microsoft not only imports products into the United States, but it also competes with entities that import products into this country.

Microsoft is an intervenor in an appeal before this Court that has been stayed pending the outcome of this *en banc* proceeding. *See Motorola Mobility LLC v. ITC*, No. 2013-1518 (Fed. Cir. May 19, 2014) (order) (Doc. 79). That case presents the issue before the Court in this proceeding — specifically, whether a violation of Section 337 of the Tariff Act, 19 U.S.C. § 1337, can be established based on alleged indirect infringement arising from the importation of a product that can be used to infringe a method claim where the required predicate act of direct infringement does not occur until after the product has been imported into the United States.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), Microsoft certifies that no counsel for a party authored this brief in whole or in part, no party or its counsel contributed money that was intended to fund preparing or submitting the brief, and no one but Microsoft and its counsel contributed financially to the brief’s preparation and submission. In ordering en banc briefing, the Court stated that “amicus briefs may be filed without consent and leave of court.” Order at 2–3, *Suprema, Inc. v. ITC,* No. 2012-1170 (June 11, 2014) (Doc. 106).

Case: 12-1170 Document: 155 Page: 9 Filed: 08/18/2014

In *Motorola Mobility*, the Commission concluded that the asserted method claims were directly infringed only after the accused products had been imported into the United States. Accordingly, under its decision in *Certain Electronic Devices with Image Processing Systems, Components Thereof, & Associated Software*, Inv. No. 337-TA-724, 2012 WL 3246515 (USITC Dec. 21, 2011) ("*Electronic Devices*"), the Commission found no Section 337 violation based on direct infringement. The Commission also found that the patentee, Motorola Mobility, had failed to establish the elements of indirect infringement. Motorola Mobility now argues on appeal that the Commission erred and that Microsoft violated Section 337 by indirectly infringing the asserted patent, even though Motorola Mobility concedes that there is no underlying direct infringement until after the accused products are imported into the United States. Microsoft argues on appeal that not only did the Commission correctly find that Motorola Mobility failed to prove indirect infringement, but that Section 337 does not apply to alleged indirect infringement in any event, where the underlying direct infringement occurs only after the accused product has been imported. The *Motorola Mobility* case thus may be directly affected by the Court's decision in this *en banc* proceeding.

Microsoft's interest in this proceeding, however, goes beyond its position as a party in another pending case. An interpretation of Section 337 that allows the Commission to find a violation where an imported article does not infringe a U.S.

Case: 12-1170 Document: 155 Page: 10 Filed: 08/18/2014

patent at the time of importation would, as a legal matter, expand the Commission's authority far beyond the scope granted by Congress. And as a practical matter, such an interpretation would potentially exclude from the United States, and take away from American consumers and businesses, a host of products that can be, and routinely are, used in wholly legitimate, non-infringing ways. As a frequent participant in proceedings before the Commission, and as a significant participant in the U.S. economy, including as a buyer and seller of imported articles, Microsoft has a substantial interest in the outcome of this case.

## ARGUMENT

"The Commission is a creature of statute," *VastFame Camera v. ITC*, 386 F.3d 1108, 1112 (Fed. Cir. 2004), and thus has no authority beyond what Congress has specifically given it, *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1355 (Fed. Cir. 2008). For some time now, however, the Commission has exceeded the limits of its statutory authority. First, the Commission has exceeded its authority under Section 337(a)(1)(B)(i) of the Tariff Act, 19 U.S.C. § 1337(a)(1)(B)(i), by asserting authority over the alleged direct or indirect infringement of method claims. Section 337(a)(1)(B)(i) extends only to "articles … that infringe," and, as this Court's and the Supreme Court's predecents make clear, methods are not "articles," and method claims are not infringed by "articles," but only by

Case: 12-1170 Document: 155 Page: 11 Filed: 08/18/2014

performing all steps of the claimed method in the sequence and manner required by the claims.

Second, even if the Commission did have authority to investigate the alleged infringement of method claims, it does not have authority over indirect infringement of a method claim when the predicate act of direct infringement occurs only after importation of the product at issue. The panel in this case correctly concluded that induced infringement of a method claim, when the underlying direct infringement occurs post-importation, cannot violate Section 337(a)(1)(B)(i). However, the panel erred in concluding, albeit in *dicta*, that contributory infringement could fall within the scope of this provision. The reason why Section 337(a)(1)(B)(i) does not cover inducement when direct infringement occurs post-importation applies equally to contributory infringement: as with inducement, "if there is no *direct* infringement of a patent there can be no *contributory* infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) ("*Aro I*"); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("inducement liability may arise 'if, but only if, [there is] … direct infringement.'" (alteration and omission in original) (quoting *Aro I*, 365 U.S. at 341)).

Case: 12-1170 Document: 155 Page: 12 Filed: 08/18/2014

## I. SECTION 337(a)(1)(B)(i) OF THE TARIFF ACT DOES NOT APPLY TO METHOD CLAIMS.

In Section 337 of the Tariff Act, Congress spelled out the Commission's authority to investigate particular alleged unlawful activities and the remedies available if the Commission finds that such an unlawful activity has occurred. 19 U.S.C. § 1337(a)–(h). Section 337(a)(1)(B), in particular, defines the Commission's authority over patent infringement. The provision at issue here — Section 337(a)(1)(B)(i) — declares unlawful the "importation into the United States, the sale for importation, or the sale within the United States after importation … of articles that … infringe a valid and enforceable" U.S. patent. *Id.* § 1337(a)(1)(B)(i). The text, context, and history of this statute establish that it does not cover direct or indirect infringement of method claims.

a. The operative phrase in Section 337(a)(1)(B)(i) — "articles that … infringe" a patent — makes clear that only products or goods that infringe a patent can give rise to a violation of this provision. The plain meaning of the term "article" refers to "a particular object or item." *American Heritage Dictionary* 101 (4th ed. 2009). And courts have long recognized that the term "article" refers to tangible products, *see, e.g.*, *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005) (discussing "article of manufacture"); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 942–43 (2005) (discussing

"article of commerce"), or is otherwise a general term referring to commercial goods, *Kellog Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 116 (1938).[2]

By confining Section 337(a)(1)(B)(i) to products or goods that infringe a patent, Congress necessarily excluded any type of infringement — whether, direct, induced, or contributory — of method claims. There is a long-standing "distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts." *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002). Method claims do not claim an "article" — that is, a product or good, or even anything tangible — they claim something intangible, namely the performance "of a series of acts or steps." *Id.* ("A process … consists of acts, rather than a tangible item."); *see also Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) (per curiam) ("This court has also stated that a process 'consists of doing something, and therefore has to be carried out or performed.'"). Infringement of a method claim "necessarily involves doing or performing each of the steps of" the patented method. *NTP*, 418 F.3d at 1318; *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is *directly* infringed *only* by one practicing the patented method.") (second emphasis added). A method is an action, not a product or good. Thus, the

[2] Indeed, the panel in this case correctly recognized that Section 337(a)(1)(B)(i) "pertain[s] only to the imported goods." *Suprema, Inc. v. ITC*, 742 F.3d 1350, 1359 (Fed. Cir. 2013).

Case: 12-1170 Document: 155 Page: 14 Filed: 08/18/2014

phrase "articles that … infringe" in Section 337(a)(1)(B)(i) cannot refer to infringement of method claims.

Because a method claim is infringed only when the claimed steps are actually performed, the importation or sale of an article that is capable of performing, or of being used to perform, those steps does not constitute infringement. As this Court has explained, "method claims" are "not directly infringed by the mere sale of an apparatus capable of performing the claimed process." *Joy Techs.*, 6 F.3d at 773 (discussing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991)). A "method or process claim is directly infringed only when the process is performed." *Id.*; *see id.* at 774–75 ("[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the apparatus is not a sale of the method."); *Ricoh*, 550 F.3d at 1335 (holding that the sale of "software containing instructions to perform a patented method does not infringe the patent" and that infringement could not occur until a person used the software to perform the patented steps).[3] And Section 337(a)(1)(B)(i) does not

[3] Some courts have referred to "accused devices" or "products accused" of infringing method claims, but that was just shorthand. "[M]ore properly the allegation is that the *operation* of the devices directly infringes the method claims at issue, or that the sale of the devices induces customers to infringe the method claims." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1342 n.2 (Fed. Cir. 2001) (emphasis added).

Case: 12-1170 Document: 155 Page: 15 Filed: 08/18/2014

refer to articles that may be used to infringe, or that could be used to infringe. It refers to articles that themselves actually infringe at the time of importation. *See Ardestani v. INS*, 502 U.S. 129, 135–36 (1991) (stating the "'strong presumption' that the plain language of the statute expresses congressional intent"). Section 337(a)(1)(B)(i) does not cover infringement of method claims.

b. Comparing the language of Section 271(a) of the Patent Act with the language of Section 337(a)(1)(B)(i) further demonstrates that method claims are not covered by the latter. Section 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States … infringes the patent." 35 U.S.C. § 271(a). As this Court has explained, "Congress has consistently expressed the view that it understands infringement of method claims under Section 271(a) to be limited to [the term] 'use'" in Section 271(a). *NTP*, 418 F.3d at 1319.[4] Section 337(a)(1)(B)(i), however, does not incorporate Section 271(a) or otherwise make it unlawful to "use" a patented invention; it adopts only some of the infringing acts covered by Section 271(a) by prohibiting solely the "importation" or "sale" of an "article," language this Court has said does not refer to infringement of method claims. *Id.* at 1319. That

[4] Section 271(c) similarly makes the term "use" the operative term for contributory infringement of a method claim. 35 U.S.C. § 271(c) (providing that sale of "a material or apparatus *for use* in practicing a patented process" may be contributory infringement (emphasis added)).

Case: 12-1170 Document: 155 Page: 16 Filed: 08/18/2014

congressional choice must be respected and cannot be dismissed based on a court's own judgment concerning the policy choice Congress should have made. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (when Congress uses a term in one statutory provision, but not in another, it is presumed that Congress acts purposefully).

The structure of Section 337(a)(1)(B) confirms Congress's intent, and confirms that subsection (i) does not reach infringement of a method claim. Congress demonstrated that it purposefully limited Section 337(a)(1)(B)(i) to tangible products — not intangible methods — by specifically providing for a particular form of infringement of method claims in the very next subsection. Section 337(a)(1)(B)(ii) makes unlawful the importation or sale of "articles that … are made, produced, processed, or mined under, or by means of, a *process* covered by the claims of a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(ii) (emphasis added).[5] "It is well-established that, '[w]here Congress includes particular language in one section of a statute but omits it in another …, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *Heinzelman v. Sec'y of*

---

[5] This limited authority over products produced by methods claimed by a U.S. patent parallels Section 271(g), which provides that "[w]hoever without authority imports into the United States … a product which is made by a process patented in the United States shall be liable as an infringer." 35 U.S.C. § 271(g).

Case: 12-1170 Document: 155 Page: 17 Filed: 08/18/2014

*HHS*, 681 F.3d 1374, 1382 (Fed. Cir. 2012) (alteration and omission in original) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)).

Subsection (ii) shows that Congress knows precisely how to include infringement of method claims within the Commission's purview, and expresses Congress's decision regarding the limited scope of method claim infringement that the Commission is authorized to address. Congress's failure to include the "use" of an unpatented imported article to infringe a method claim as an act within the scope of subsection (i) demonstrates that Congress deliberately limited the Commission's authority where method claims are concerned.[6]

Moreover, interpreting "articles" in Section 337(a)(1)(B) to include processes covered by a method claim would render subsection (ii) nonsensical. If "articles" in Section 337(a)(1)(B) included "articles used to perform patented processes," then subsection (ii) would make unlawful the importation or sale of "articles used to perform patented processes" "that … are made, produced, processed, or mined under, or by means of, a process covered by the claims" of a valid patent. That interpretation of Section 337(a)(1)(B) would make no sense and

[6] The legislative history of Section 337(a)(1)(B)(i) confirms that Congress intended this provision to apply to products, not methods. In discussing the impetus for Section 337(a)(1)(B)(i), the House Report explains that "[a]ny sale in the United States of an infringing *product* is a sale that rightfully belongs only to the holder or licensee of that property." H.R. Rep. No. 100-40, pt. 1, at 156 (1987) (emphasis added).

Case: 12-1170 Document: 155 Page: 18 Filed: 08/18/2014

would vitiate Congress's decision to carefully spell out the Commission's precise authority over certain types of patent infringement claims. *See United States v. Granderson*, 511 U.S. 39, 56 (1994) (courts should give "'a sensible construction' that avoids attributing to the legislature either 'an unjust or an absurd conclusion'") (quoting *In re Chapman*, 166 U.S. 661, 667 (1897)).

Congress's decision to limit Section 337(a)(1)(B)(i) to products and goods, and not method steps or processes, is also consistent with the Commission's unique jurisdiction. The Commission "is fundamentally a trade forum, not an intellectual property forum." *John Mezzalingua Assocs. v. ITC*, 660 F.3d 1322, 1327–28 (Fed. Cir. 2011). Accordingly, the Commission's jurisdiction extends to goods, not persons. *Sealed Air Corp. v. U.S. ITC*, 645 F.2d 976, 985 (C.C.P.A. 1981) ("An exclusion order operates against goods, not parties."). This *in rem* jurisdiction gives the Commission considerable power to exclude goods from the United States even when it does not have personal jurisdiction over the owners of those goods. *Id*. But this unique jurisdiction over goods also comes with a limit: the Commission does not have authority to address the entire range of infringing conduct under Section 271, such as "making" or "using" a patented invention in the United States, except as provided in Section 337(a)(1)(B)(ii). Indeed, the Commission's *in rem* jurisdiction is incompatible with any assertion of authority over an actor (whether animate or inanimate) who performs the steps of the

Case: 12-1170 Document: 155 Page: 19 Filed: 08/18/2014

claimed method, because "'in a suit *in rem* … the power and process of the court is confined to the thing itself, and does not reach the person or property of the owner.'" *Hipolite Egg Co. v. United States*, 220 U.S. 45, 59 (1911). For purposes of Section 337(a)(1)(B)(i), the Commission's role is limited to excluding "articles … that infringe" from importation into the United States.

c. Some of this Court's prior decisions have implicitly assumed that Section 337(a)(1)(B)(i) covers infringement of method claims. *See, e.g.*, *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1062 (Fed. Cir. 2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1373–74 (Fed. Cir. 2003). However, no case in this Circuit has ever directly addressed this question of statutory interpretation.[7] An issue "neither 'raised in briefs or argument nor discussed in the opinion of the Court' cannot be taken as 'a binding precedent.'" *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)). The Court "would risk error if it relied on assumptions that have gone unstated and unexamined." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448–49 (2011). In other

[7] For instance, in *Enercon GmbH v. ITC*, 151 F.3d 1376 (Fed. Cir. 1998), the Court addressed a Commission determination that infringement of method claims violated Section 337. However, the Court never addressed the meaning of "articles that … infringe," or the specific question whether infringement of method claims falls within the scope of Section 337(a)(1)(B)(i). The Court focused solely on the meaning of the term "sale" and whether the Commission could reasonably base its interpretation of that term on U.C.C. § 2-106(1). *Id.* at 1381–83.

words, even if the Court were not reviewing this issue *en banc*, it would be "free to address the issue on the merits." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

d. Nor are the Commission's prior decisions an obstacle to the Court's proper interpretation of Section 337(a)(1)(B)(i). Even where an agency has adopted a contemporaneous, longstanding, and consistent interpretation of a statute, that interpretation cannot override statutory language that is, as here, clear and unambiguous. *See Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) ("a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation … displaces a conflicting agency construction").

Moreover, there is no contemporaneous, longstanding, and consistent agency interpretation of Section 337(a)(1)(B)(i) in any event. In *Electronic Devices*, the Commission seemed to recognize that Section 337(a)(1)(B)(i) does not apply to direct infringement of method claims because the statute's scope is limited to "'articles that … infringe'" and because the statute does not prohibit "use" after importation. 2012 WL 3246515, at *11–12 (omission in original). However, without going on to fully consider the statutory text or the implications of its own reasoning, the Commission suggested in *dicta* that Section

Case: 12-1170 Document: 155 Page: 21 Filed: 08/18/2014

337(a)(1)(B)(i) could still reach indirect infringement of method claims. *Id.* at *9.[8] The Commission identified no statutory language that would give it authority to address infringement of method claims — whether that infringement was direct or indirect. Whatever the Commission's reasoning may have been, the language of Section 337(a)(1)(B)(i) unambiguously excludes any type of infringement of method claims from its scope, and thus the Commission's views are not entitled to deference from this Court. *See Bd. of Governors of Fed. Res. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986) ("If the statute is clear and unambiguous 'that is the end of the matter ….'").

## II. IN ANY EVENT, SECTION 337(a)(1)(B)(i) DOES NOT COVER INDIRECT INFRINGEMENT OF METHOD CLAIMS WHEN DIRECT INFRINGEMENT OCCURS POST-IMPORTATION.

Even if the Court concludes that Section 337(a)(1)(B)(i) can cover infringement of method claims, the text of this provision does not give the Commission authority over indirect infringement of method claims when the predicate direct infringement occurs after importation of the accused article.

[8] This portion of the Commission's decision was unnecessary because the Commission affirmed the ALJ's finding that the complainant had not proved indirect infringement. 2012 WL 3246515, at *13.

Case: 12-1170 Document: 155 Page: 22 Filed: 08/18/2014

### A. The Panel Correctly Concluded that Section 337(a)(1)(B)(i) Does Not Cover Induced Infringement of a Method Claim When Direct Infringement Occurs Post-Importation.

The text of Section 337(a)(1)(B)(i) makes clear that the Commission has no authority to find a Section 337 violation for induced infringement of a method claim when direct infringement occurs after importation of the accused article. This statute provides that an unlawful act occurs only where the imported article is infringing when it is imported: the statute declares unlawful the "importation," "sale for importation," or "sale within the United States after importation … of articles that … infringe" a valid patent. 19 U.S.C. § 1337(a)(1)(B)(i). The plain language links each unlawful act to the "importation … of" an article that infringes, making clear that the article must infringe at the time of importation. *See Ardestani*, 502 U.S. at 135–36 (there is a "'strong presumption' that the plain language of [a] statute expresses congressional intent").

When the direct infringement underlying a claim of inducement occurs after importation, however, there is no infringement of a method claim — direct or indirect — at the time of importation. As the Supreme Court recently re-emphasized in *Limelight*, the Court's "case law leaves no doubt that inducement liability may arise 'if, but only if, [there is] … direct infringement.'" 134 S. Ct. at 2117 (alteration and omission in original) (quoting *Aro I*, 365 U.S. at 341). The Court also reiterated that a method "patent is not infringed unless all the steps are

carried out." *Id.* Indeed, the Supreme Court emphasized that "a patentee's rights extend only to the claimed combination of elements, and no further." *Id.* Thus, if direct infringement does not occur until after articles are imported, there can be no induced infringement at the time of importation. The steps of the claimed method have not been performed, and so the required predicate direct infringement does not exist.

The Commission has argued that *Grokster*, 545 U.S. 913, holds that "liability for infringement under § 271(b) attaches at the time steps were taken to induce infringement …, not at the time of the direct infringement," and therefore Section 337(a)(1)(B)(i) can cover induced infringement even if direct infringement occurs only after importation. Combined Reh'g Pet. of Commission at 9–10, *Suprema, Inc. v. ITC*, No. 2012-1170 (Fed. Cir. Feb. 21, 2014) (Doc. 88). The Commission's argument, however, cannot withstand *Limelight*, in which the Supreme Court stated unequivocally that "liability for inducement must be predicated on direct infringement." 134 S. Ct. at 2117; *id.* (explaining that inducement "may arise 'if, but only if, [there is] … direct infringement'" (alteration and omission in original)). Nothing in *Grokster* contradicts this basic principle. Indeed, following the footnote in *Grokster* cited by the Commission, the

Supreme Court went on to say that "the inducement theory of course requires evidence of actual infringement by recipients." 545 U.S. at 940.[9]

The Commission has also suggested that its views are entitled to *Chevron* deference. Not so. Because the text of Section 337(a)(1)(B)(i) is clear, the Commission's views are entitled to no deference whatsoever. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Nor would the Commission's views be entitled to *Chevron* deference, even if the statute's language were ambiguous. In *Electronic Devices*, the Commission suggested in *dicta* that it had authority over indirect infringement of method claims even when direct infringement occurs post-importation. 2012 WL 3246515, at *11–12. Such an offhand suggestion, which neither binds the Commission nor otherwise shows that the agency has fully considered the issue, does not warrant *Chevron*-level deference. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587

[9] The Commission also relies on *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345 (Fed. Cir. 1985). But *Standard Oil* merely said that for purposes of the limitation on the recovery of damages under Section 286, courts would look to the acts of the defendant, who contributorily infringed, within the six-year period of that section and not the acts of a third party, who directly infringed, when assessing the damages against the defendant. *Id.* at 349. The Court made clear that because Section 286 was not a statute of limitations "it cannot be said that the statute 'begins to run' on some date or other." *Id.* at 348.

(2000) (agency interpretations that "lack the force of law" do not receive *Chevron* deference);*United States v. Mead Corp.*, 533 U.S. 218, 232 (2001) (explaining that even some agency decisions with precedential value do not receive *Chevron* deference); *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) ("The Court in *Mead* also makes it clear that, even if an agency has acted within its delegated authority, no *Chevron* deference is due unless the agency's action has the 'force of law.'"). At most, a court might consider giving the Commission's views *Skidmore*-level deference for their power to persuade, *see Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) (giving respect to agency position according to its power to persuade), but as shown above, the Commission's views here have no power to persuade because the language of the statute is clear and the Commission has offered no reasoned explanation for a contrary construction.

### B. Section 337(a)(1)(B)(i) Cannot Cover Contributory Infringement for the Same Reasons It Cannot Cover Inducement.

Although the panel in this case correctly concluded that Section 337(a)(1)(B)(i) cannot cover inducement when the necessary direct infringement occurs after importation, it suggested, and appellants echo, that this provision could nonetheless cover contributory infringement in that same situation. This is incorrect, and the Court should make clear that Section 337(a)(1)(B)(i) can cover neither inducement nor contributory infringement when direct infringement occurs

Case: 12-1170 Document: 155 Page: 26 Filed: 08/18/2014

after importation, even if it might otherwise be construed to reach infringement of method claims, contrary to the analysis in Section I, *supra*.

The panel held that the phrase "articles that … infringe" in Section 337(a)(1)(B)(i) references the "infringing nature of the articles at the time of importation." *Suprema, Inc. v. ITC*, 742 F.3d 1350, 1358 (Fed. Cir. 2013); *see also Elec. Devices*, 2012 WL 3246515, at *9. Accordingly, the statute applies only to articles that infringe "*when imported*." *Suprema*, 742 F.3d at 1359 (emphasis added). Because inducement is not complete until there has been an act of direct infringement, the panel held that "the statutory grant of authority in § 337 cannot extend to the conduct proscribed in § 271(b) where the acts of underlying direct infringement occur post-importation." *Id.* at 1360. Despite its holding on inducement, however, the panel suggested in *dicta* that Section 337(a)(1)(B)(i) could cover contributory infringement even when direct infringement occurs only after importation. *Id.* at 1360, 1361 n.4. But when direct infringement occurs post-importation, contributory infringement cannot violate Section 337(a)(1)(B)(i) for the same reasons inducement cannot do so.

As the panel explained, inducement cannot violate Section 337(a)(1)(B)(i) because it "is not … completed … until there has been a direct infringement." *Suprema*, 742 F.3d at 1360. The same goes for contributory infringement: "[I]t is settled that if there is no *direct* infringement of a patent there can be no

Case: 12-1170 Document: 155 Page: 27 Filed: 08/18/2014

*contributory* infringement." *Aro I*, 365 U.S. at 341; *see also Joy Techs.*, 6 F.3d at 775 (no contributory infringement because the apparatus allegedly used to practice a patented method would not be operational until after the patent term expired); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986). Indeed, the Supreme Court in *Limelight* stated explicitly that it saw "no basis to distinguish" between contributory infringement and inducement in holding that "liability for inducement must be predicated on direct infringement." *Limelight*, 134 S. Ct. at 2117 & n.3. Thus, like inducement, contributory infringement of a method claim does not occur until each step of the patented process is completed. Until that time, the article cannot be an "article … that infringe[s]" under any understanding of that term, and therefore does not fall within the statute's proscription against importation of "articles that … infringe." 19 U.S.C. § 1337(a)(1)(B)(i).

The panel suggested that even before an article is imported, contributory infringement could be tied to the "article" in ways that inducement could not. *Suprema*, 742 F.3d at 1360. That reasoning ignores the fact that an article, standing alone, simply cannot directly infringe a method claim, *e.g.*, *Joy Techs.*, 6 F.3d at 773, 774–75, and that the sale or importation of an article, standing alone, cannot contributorily infringe a method claim because contributory infringement requires separate proof of direct infringement, as well as knowledge and intent, just

Case: 12-1170 Document: 155 Page: 28 Filed: 08/18/2014

as is true of inducement. *Limelight*, 134 S. Ct. at 2117 (quoting *Aro I*, 365 U.S. at 341); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067–68 (2011) (concluding that both contributory infringement and inducement require proof that the alleged violator knew the combination was both patented and infringing). Absent such proof, there is no greater tie between an imported "article" and contributory infringement than there is between an imported "article" and induced infringement.

The panel's error occurred because it isolated particular terms in Sections 271(b) and 271(c), which define induced and contributory infringement, instead of focusing on the language of Section 337(a)(1)(B)(i), a misstep that appellants duplicate. To be sure, Sections 271(b) and 271(c) establish the basic elements of inducement and contributory infringement. But resolution of the question here does not turn on whether Section 271(b) is directed primarily at conduct, or whether Section 271(c) uses the phrases "component" and "staple article." It turns instead on whether and when the elements of inducement and contributory infringement have been met such that there is infringement. And for both induced and contributory infringement, that does not occur until someone commits direct infringement of the patent claim using the accused product. *Limelight*, 134 S. Ct. at 2117 (quoting *Aro I*, 365 U.S. at 341). Indeed, to conclude that there may be "infringement" at any point before the predicate act of direct

Case: 12-1170 Document: 155 Page: 29 Filed: 08/18/2014

infringement occurs would be to inappropriately expand the scope of the patent right. *See id.* at 2117 ("a patentee's rights extend only to the claimed combination of elements, and no further."). Thus, under any indirect infringement theory, when the predicate act of direct infringement occurs after importation of the accused article, there is no "article that … infringes" at the time of importation as required by the plain language of Section 337(a)(1)(B)(i).

Moreover, even if contributory infringement could be tied to the article as supposed by the panel, that supposed relationship cannot alter the fundamental point that, even assuming (contrary to the law, *see supra*, at 6–8) that an article can itself infringe a method claim, there is no "articl[e] that … infringe[s]" a method claim unless and until an act of direct infringement using that article has occurred. *Limelight*, 134 S. Ct. at 2117; *Aro I*, 365 U.S. at 341.

Ultimately, the Commission may believe that the best policy is for it to have greater authority over claims of indirect infringement or claims asserting infringement of method claims. But that policy choice is for Congress. Congress made its choice in Section 337(a)(1)(B)(i), in which the legislature plainly set forth the limits of the Commission's authority. Neither the Commission, nor the Court, can expand the Commission's power beyond those limits.

## CONCLUSION

For the foregoing reasons, the Court should hold that Section 337(a)(1)(B)(i) does not cover alleged infringement of method claims at all, and that even if it does, it cannot cover indirect infringement when the predicate direct infringement occurs after importation.

Respectfully submitted,

/s/ Constantine L. Trela, Jr.

Constantine L. Trela, Jr.
David T. Pritikin
Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

Brian R. Nester
Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000

T. Andrew Culbert
David E. Killough
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Telephone: (425) 882-8080

*Counsel for Microsoft Corporation*

Case: 12-1170 Document: 155 Page: 31 Filed: 08/18/2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(d) and 32(a)(7)(B) and the Rules of this Court, because it contains 5,317 words (as determined by the Microsoft Word 2007 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 2007 word-processing system in 14-point Times New Roman font.

/s/ Constantine L. Trela, Jr.
CONSTANTINE L. TRELA, JR.

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2014, I caused a true and correct copy of the foregoing BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION IN SUPPORT OF NEITHER PARTY to be filed with the Clerk of the Court using the appellate CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

/s/ Constantine L. Trela, Jr.
CONSTANTINE L. TRELA, JR.
*Counsel for Microsoft Corporation*