**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**2012-1170**

---

SUPREMA, INC. and MENTALIX, INC.,
*Appellants*,
v.

INTERNATIONAL TRADE COMMISSION,
*Appellee*,
and

CROSS MATCH TECHNOLOGIES, INC.,
*Intervenor*.

---

On Appeal from the United States International Trade Commission
in Investigation No. 337-TA-720

---

# CORRECTED BRIEF OF DELL INC.; ADOBE SYSTEMS, INC.; FORD MOTOR CO.; GOOGLE INC.; HEWLETT-PACKARD CO.; LG DISPLAY CO., LTD.; LG ELECTRONICS, INC.; NETFLIX, INC.; SAMSUNG ELECTRONICS CO., LTD.; AND SAP AMERICA, INC. AS *AMICI CURIAE* IN SUPPORT OF APPELLANTS

---

JOHN THORNE
AARON M. PANNER
MELANIE L. BOSTWICK
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
*Counsel for Amici Curiae*
*Dell Inc., Adobe Systems, Inc.,*
*Ford Motor Co., Hewlett-Packard Co.,*
*LG Display Co., Ltd., LG Electronics, Inc.,*
*Netflix, Inc., Samsung Electronics Co., Ltd.,*
*and SAP America, Inc.*

August 18, 2014

*(Additional Counsel Listed On Inside Cover)*

SUZANNE T. MICHEL
GOOGLE INC.
1101 New York Avenue, N.W.
Washington, D.C. 20015
(202) 667-5398
*Counsel for Amicus Curiae*
*Google Inc.*

# CERTIFICATE OF INTEREST

Counsel for *amici curiae* certifies the following:

1. The full name of every party or *amicus* represented by me is:

- Dell Inc.
- Adobe Systems, Inc.
- Ford Motor Co.
- Hewlett-Packard Co.
- LG Display Co., Ltd.
- LG Electronics, Inc.
- Netflix, Inc.
- Samsung Electronics Co., Ltd.
- SAP America, Inc.

2. The name of the real party in interest represented by me is:

Not applicable.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus curiae* represented by me are:

- Dell Inc.: Dell is a privately held corporation, and its direct parent company is Denali Intermediate Inc. There is no publicly held corporation owning 10% or more of Denali Intermediate Inc.'s stock.
- Adobe Systems, Inc.: None
- Ford Motor Co.: None
- Hewlett-Packard Co.: None
- LG Display Co., Ltd.: LG Electronics, Inc., a publicly held corporation, owns 10% or more of the stock of LG Display Co., Ltd.

- LG Electronics, Inc.: LG Corporation, a publicly held company, owns 10% or more of the stock of LG Electronics, Inc.
- Netflix, Inc.: None
- Samsung Electronics Co., Ltd.: SEC is not owned by any parent corporation, and no other publicly held corporation owns 10% or more of its stock.
- SAP America, Inc.: None

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are:

JOHN THORNE
AARON M. PANNER
MELANIE L. BOSTWICK
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999

/s/ *John Thorne*

Dated: August 18, 2014

John Thorne
*Counsel for Amici Curiae*
*Dell Inc., Adobe Systems, Inc.,*
*Ford Motor Co., Hewlett-Packard Co.,*
*LG Display Co., Ltd., LG Electronics, Inc.,*
*Netflix, Inc., Samsung Electronics Co., Ltd.,*
*and SAP America, Inc.*

# CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Google Inc. certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Google Inc.

2. The name of the real party in interest represented by me is:

   Not applicable.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus curiae* represented by me are:

   Google Inc. has no parent corporation, and no publicly held company owns 10% or more of Google Inc.'s stock.

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are:

SUZANNE T. MICHEL
GOOGLE INC.
1101 New York Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 667-5398
Fax: (202) 346-1101

DARYL JOSEFFER
ADAM CONRAD
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 737-0500
Fax: (202) 626-3737

Dated: August 18, 2014

/s/ *Suzanne T. Michel*
Suzanne T. Michel
*Counsel for Amicus Curiae*
*Google Inc.*

Case: 12-1170 Document: 160 Page: 6 Filed: 08/19/2014

# TABLE OF CONTENTS

Page


CERTIFICATES OF INTEREST ....... i

TABLE OF AUTHORITIES ....... ii

STATEMENT OF INTEREST ....... 1

BACKGROUND ....... 2

SUMMARY OF ARGUMENT ....... 8

ARGUMENT:

I. THE PANEL CORRECTLY HELD THAT SECTION 337 CANNOT APPLY TO A CLAIM OF INDUCEMENT IF THE INFRINGEMENT DOES NOT OCCUR AT THE TIME OF IMPORTATION ....... 9

II. "ARTICLES THAT . . . INFRINGE" UNDER SECTION 337 MUST SATISFY EVERY ELEMENT OF A PRODUCT CLAIM ....... 11

A. Infringement Under Section 337 Takes Its Meaning from § 271(a) ....... 11

B. An Article Cannot "Infringe" a Method Claim, Because an Article Does Not Perform Steps ....... 17

III. THE COMMISSION'S INTERPRETATION THAT "ARTICLES THAT . . . INFRINGE" INCLUDES INDIRECT INFRINGEMENT BASED ON POST-IMPORTATION INFRINGEMENT IS NOT ENTITLED TO *CHEVRON* DEFERENCE ....... 20

IV. THE COMMISSION MAY NOT EXPAND ITS MISSION TO FULFILL REMEDIAL TRADE PURPOSES ....... 23

CONCLUSION ....... 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

Case: 12-1170 Document: 160 Page: 7 Filed: 08/19/2014

**TABLE OF AUTHORITIES**

Page

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012), *rev'd*, 134 S. Ct. 2111 (2014) ............................5, 14, 23, 24

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961)..........13

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008)..........18

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)..........7, 20, 21

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972).......................15, 16

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)..................................1

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) .........................................25

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) ..........................1

*InterDigital Communications, LLC v. ITC*, 707 F.3d 1295 (Fed. Cir.), *cert. denied*, 134 S. Ct. 469 (2013).......... 24-25

*John Mezzalingua Assocs., Inc. v. ITC*, 660 F.3d 1322 (Fed. Cir. 2011), *cert. denied*, 133 S. Ct. 422 (2012)..........24

*Kollar, In re*, 286 F.3d 1326 (Fed. Cir. 2002) ..........8

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014)..........8, 14, 18, 24

*Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998).................18

*Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171 (S.D.N.Y. 1999), *aff'd mem.*, Nos. 99-1337 & 99-1370, 2000 WL 37707 (Fed. Cir. Jan. 14, 2000) (judgment noted at 230 F.3d 1379)..................................17

*Motiva, LLC v. ITC*, 716 F.3d 596 (Fed. Cir. 2013)...............................................24

*Nassau Precision Casting Co. v. Acushnet Co.*, No. 2013-1410,
2014 WL 2535260 (Fed. Cir. June 6, 2014) .......... 18

*Rohm & Haas Co. v. Dawson Chem. Co.*, 599 F.2d 685
(5th Cir. 1979), *aff'd*, 448 U.S. 176 (1980) .......... 17

*Sealed Air Corp. v. ITC*, 645 F.2d 976 (C.C.P.A. 1981) .......... 19

*Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) .......... 21

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) .......... 22

**ADMINISTRATIVE DECISIONS**

*Certain Electronic Devices, In re*, Inv. No. 337-TA-724,
2012 WL 3246515 (ITC Dec. 21, 2011) .......... 5, 6, 10, 11, 12, 16

**STATUTES AND RULES**

Patent Act (35 U.S.C.) .......... 8, 11

35 U.S.C. § 271 .......... 8, 12, 14

35 U.S.C. § 271(a) .......... 7, 11, 12, 14, 15, 16, 17

35 U.S.C. § 271(b) .......... 4, 6, 7, 13, 14, 17

35 U.S.C. § 271(c) .......... 6, 7, 13, 17

35 U.S.C. § 271(e)(2) .......... 13

35 U.S.C. § 271(f) .......... 13, 16

35 U.S.C. § 271(f)(1) .......... 13

35 U.S.C. § 271(f)(2) .......... 13

35 U.S.C. § 271(g) .......... 13, 14

Case: 12-1170 Document: 160 Page: 9 Filed: 08/19/2014

Tariff Act of 1930, 19 U.S.C. § 1304 *et seq.*:

§ 337, 19 U.S.C. § 1337 ....................................................4, 5, 6, 8, 9, 10, 11, 12, 16, 17, 19, 20, 22, 23

§ 337(a)(1)(B), 19 U.S.C. § 1337(a)(1)(B) ........................................................ 9

§ 337(a)(1)(B)(i), 19 U.S.C. § 1337(a)(1)(B)(i) ...................................4, 8, 9, 19

§ 337(d)(2)(A), 19 U.S.C. § 1337(d)(2)(A) ...................................................... 19

§ 337(d)(2)(B), 19 U.S.C. § 1337(d)(2)(B)....................................................... 19

Fed. R. App. P. 29(c)(5)..........................................................................................1

## LEGISLATIVE MATERIALS

H.R. Conf. Rep. No. 100-576 (1988)...................................................................16, 17

S. Rep. No. 93-1298 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186 .......................10

S. Rep. No. 100-71 (1987) .........................................................................................10

## ADMINISTRATIVE MATERIALS

Br. for the Federal Respondent in Opposition, *Nokia Inc. v. ITC*, No. 12-1352 (U.S. filed Sept. 9, 2013), *available at* http://www.justice.gov/osg/briefs/2013/0responses/2012-1352.resp.pdf ..........................................................................................25

Federal Trade Comm'n, *The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition* (Mar. 2011), *available at* http://www.ftc.gov/reports/evolving-ip-marketplace-aligning-patent-notice-remedies-competition ................................................25

Case: 12-1170 Document: 160 Page: 10 Filed: 08/19/2014

U.S. Int'l Trade Comm'n:

*Budget Justification: Fiscal Year 2013*, *available at* http://www.usitc.gov/press_room/documents/budget_2013.pdf............. 25-26

*Budget Justification: Fiscal Year 2015*, *available at* http://www.usitc.gov/press_room/documents/budget_2015.pdf...................26

**OTHER MATERIALS**

Colleen V. Chien, *Protecting Domestic Industries at the ITC*, 28 Santa Clara Computer & High Tech. L.J. 169 (2011)..............................25

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012).........................................................................12, 16, 24

## STATEMENT OF INTEREST

*Amici* are some of the world's leading technology companies. Collectively, they have invested billions of dollars in research and development, and employ hundreds of thousands of people in the United States, including many of the world's most innovative computer scientists and engineers. Their worldwide contributions in technology and commerce have transformed society in countless ways. Precisely because of their size and commercial success (the combined public market capitalization of *amici* is nearly $1 trillion), they are often targets of expensive litigation at the ITC. Allowing exclusion orders against articles that do not infringe when imported—on the ground that they may be combined with other products after importation to infringe—threatens substantial disruption to their businesses.[1]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for *amici* represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than *amici* or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief. One of the *amici* on this brief filed a separate brief before the original panel on the issue whether the ITC misapplied the Supreme Court's standard for intent to induce infringement, specifically whether the ITC's "knew or should have known" test and its application of willful blindness is consistent with *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). *Compare* Commission Opinion at 6 (Nov. 10, 2011) (Add. 193) ("The intent element can be satisfied by the patentee showing that the 'infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.' ") (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)) *with Global-Tech*, 131 S. Ct. at 2070-71 (willful blindness has "an appropriately limited scope that surpasses recklessness and negligence":

Case: 12-1170 Document: 160 Page: 12 Filed: 08/19/2014

**BACKGROUND**

Suprema manufactures in Korea and imports into the United States optical scanners that do not directly infringe Cross Match's asserted patent and are capable of substantial non-infringing uses, depending on what software is used with the scanners. The ITC's Administrative Law Judge found that, when several models of Suprema scanners are imported and then combined in the United States with U.S.-developed software by Mentalix, the combined product (which the ALJ referred to as the "Mentalix systems") infringes a patented method for detecting fingerprint images and determining the quality of the fingerprint shape and area.

With respect to claim 19 of the '344 patent, the ALJ found direct infringement by use of the combined scanner-and-software systems. The complainant also had accused respondents Suprema and Mentalix of contributing to and inducing infringement by *other* "various third parties," but the ALJ found no evidence of infringement by other third parties and therefore concluded that there was "neither contributory infringement nor inducement to infringe by respondents." Final Initial and Recommended Determinations at 98 (June 17, 2011) (Chief ALJ Luckern) (Add. 107). The ALJ did not consider whether the

---

that is, more than "one who merely knows of a substantial and unjustified risk" (recklessness) or "one who should have known of a similar risk" (negligence)). This brief does not address that issue.

foreign-based respondent Suprema contributed to or induced infringement by the U.S.-based respondent Mentalix.

The ITC declined to review (and thus affirmed) the ALJ's decision on several other patents and reviewed the ALJ's decision only with respect to infringement of method claim 19 of the '344 patent where, as described above, the ALJ had found direct infringement only after importation when the Mentalix software is used in combination with the otherwise non-infringing Suprema scanners. The Commission sought comment from the parties on the following limited questions: First, "*Who* infringes claim 19 of the '344 patent and *what type of infringement* has occurred? Please consider direct, contributory, and induced infringement." Second, "Is there a *sufficient nexus* between the infringer's unfair acts and importation to find a violation of section 337?" Commission Order at 2 (Aug. 18, 2011) (Add. 182) (emphases added). *See also* Commission Opinion at 4 (Add. 191) ("our review concerned who infringes claim 19 of the '344 patent, under what theory of infringement, and whether there is a sufficient nexus between the infringer's unfair acts and importation").

Given the new opportunity to argue for indirect infringement, the complainant asserted that the U.S.-based firm, Mentalix, is the infringer and that Suprema both induced and contributed to Mentalix's infringement. The Commission agreed with complainant's argument in part and modified the ALJ's order, "find[ing] that claim

Case: 12-1170 Document: 160 Page: 14 Filed: 08/19/2014

19 [of the ’344 patent] is directly infringed by Mentalix, and that Suprema induces infringement of, but does not contributorily infringe, claim 19.” Commission Opinion at 4 (Add. 191).

The Commission did not find that Suprema had actual knowledge of either the patent or the fact that its scanner was being configured by Mentalix to infringe the patent but found instead that Suprema behaved in a “willfully blind” fashion. *Id.* at 13-16 (Add. 200-03). By contrast, the Commission found no contributory infringement because Suprema’s scanners (and the related software development kit that Suprema imports) are capable of substantial non-infringing uses. *Id.* at 17-18 (Add. 204-05).

A panel of this Court held that the ITC lacks power to issue exclusion orders predicated on a theory of induced infringement under 35 U.S.C. § 271(b) where the imported articles do not infringe the asserted patent at the time of importation and the allegedly induced infringement occurs only *after* importation. *Suprema, Inc. v. ITC*, 742 F.3d 1350 (Fed. Cir. 2013). Section 337 of the Tariff Act of 1930 authorizes the ITC to bar importation of “articles that . . . infringe,” 19 U.S.C. § 1337(a)(1)(B)(i), and the majority held that, because there is no “completed inducement” under § 271(b) until there has been direct infringement, “the statutory grant of authority in § 337 cannot extend to the conduct proscribed in § 271(b) where the acts of underlying direct infringement occur post-importation.” 742 F.3d at 1360.

A dissenting opinion by Judge Reyna stated that the Commission "is not constrained by a requirement that the articles be in an infringing state when imported. . . . An article that is not in an infringing state at the moment of importation can still form the basis of a Section 337 violation if its importation is tied to conduct giving rise to infringement liability." *Id.* at 1375 (Reyna, J., concurring in part, dissenting in part). Judge Reyna reasoned that, because it is a trade statute, Section 337 should be interpreted broadly "to stop, at the border, articles involved in unfair trade." *Id.* Otherwise, an importer might circumvent liability for patent infringement. *Id.* at 1375-76 (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc), *rev'd*, 134 S. Ct. 2111 (2014)).

Both the panel majority and dissenting opinions also discussed a decision that the Commission issued one month after the decision on review, in which the Commission elaborated on the question whether it has statutory authority to exclude articles based on indirect infringement. *See In re Certain Electronic Devices*, Inv. No. 337-TA-724, 2012 WL 3246515 (ITC Dec. 21, 2011). The Commission construed the word "infringe" under Section 337 to "derive[] its legal meaning from 35 U.S.C. § 271, the section of the Patent Act that defines patent infringement." *Id.* at *9. The Commission held that in determining whether there is infringement of any sort—either direct or indirect—it "interpret[s] the phrase

'articles that – infringe' to reference the status of the articles at the time of importation. Thus, infringement, direct or indirect, must be based on the articles as imported . . . ." *Id.* For example, when the complaint is that " '[u]se' of a patented method may constitute infringement under 35 U.S.C. § 271(a), . . . domestic use of such a method, without more, is not a sufficient basis for a violation of section 337(a)(1)(B)(i), which concerns the 'importation' or 'sale' of articles that infringe a U.S. patent." *Id.* at *13. "Merely importing a device that may be used to perform a patented method does not constitute direct infringement of a claim to that method." *Id.* at *12. The Commission also criticized using "the obsolete . . . language" of "nexus" to find a Section 337 violation based on infringing conduct that occurred post-importation: "We clarify here that a showing of a nexus between imported articles and alleged acts of infringement will not substitute for proof that all of the statutory requirements found in section 337 have been satisfied." *Id.* at *11.

The Commission in *Certain Electronic Devices* found no indirect infringement, but noted that it would entertain claims of indirect infringement under either § 271(b) or § 271(c) even if the direct infringement occurred post-importation. *Id.* at *13 (the complainant "might have proved a violation of section 337 if it had proved indirect infringement"). The panel majority in this case stated that the Commission's stated intention to recognize such indirect infringement

claims was not entitled to *Chevron* deference, "even if not dicta," because it was contrary to the statute. 742 F.3d at 1363 & n.5. The dissenting opinion disagreed, stressing that the ITC's limited enforcement of claims based on direct infringement under § 271(a) required authorizing greater enforcement of claims based on indirect infringement under § 271(b) and § 271(c). *Id.* at 1376 (Reyna, J., concurring in part, dissenting in part) (because "[t]he Commission already declines to entertain complaints based on allegations of direct infringement of method claims under § 271(a) [when the] patented method is only infringed by 'use' in the United States, . . . the ability to file a Section 337 complaint based on theories of indirect infringement becomes even more important").

Case: 12-1170 Document: 160 Page: 18 Filed: 08/19/2014

## SUMMARY OF ARGUMENT

Section 337's prohibition on "[t]he importation . . . , the sale for importation, or the sale within the United States after importation . . . of *articles that* . . . *infringe* a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B)(i) (emphasis added), reaches only articles that infringe *at the time of importation* (even if the claimed violation is sale after importation). Section 337 does not allow claims based on sales of articles different from the articles imported. The en banc Court should reaffirm the panel decision for this reason—Suprema's scanners, at the time of importation, do not infringe the asserted patent claim.

More generally, an article cannot infringe a method claim at the time of importation. The word "infringe" in Section 337 derives its meaning from § 271 of the Patent Act. As the Supreme Court has long held and recently reaffirmed, *see Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014), a patent is infringed only if every element of the claimed invention is met. Accordingly, an "article" cannot "infringe" a method claim—as opposed to a product claim—because infringement of a method requires "doing something, and therefore has to be carried out or performed." *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002); *see Limelight*, 134 S. Ct. at 2117 ("A method patent claims a number of steps; . . . the patent is not infringed unless all the steps are carried out."). Suprema's scanners, as imported, do not perform the steps of the claimed method.

Case: 12-1170 Document: 160 Page: 19 Filed: 08/19/2014

Not only is this construction of Section 337 the only one that comports with the plain language of the statute, but it is also necessary to make the primary remedy under Section 337—exclusion orders—administrable. If the article's physical properties do not reveal whether it "infringes" the asserted patent claim, distinguishing between prohibited and lawful articles requires Customs officials to predict future uses of the product including, as here, how it might be combined and used with other products. And infringement claims that focus on allegedly infringing *domestic* conduct can and should properly be litigated in the federal courts, when and if the articles are used to infringe a patent.

## I. THE PANEL CORRECTLY HELD THAT SECTION 337 CANNOT APPLY TO A CLAIM OF INDUCEMENT IF THE INFRINGEMENT DOES NOT OCCUR AT THE TIME OF IMPORTATION

The Court should re-affirm the panel decision on the ground that there can be no Section 337 violation when the accused articles are not infringing at the time of importation. Section 337(a)(1)(B) defines three potential bases for a violation: "importation," "sale for importation," and "sale within the United States after importation" of "articles that . . . infringe." 19 U.S.C. § 1337(a)(1)(B)(i). The statute thus looks at several points in the chain of distribution, but the "articles" in question are, in each case, the same—that is, the articles that are imported. The temporal requirement that the articles must be infringing when imported follows directly from Section 337(a)(1)(B)'s use of the present tense—"articles that . . .

Case: 12-1170 Document: 160 Page: 20 Filed: 08/19/2014

infringe"—to define the violation caused by importation of such articles. A month after its decision here, the Commission itself correctly held that Section 337 is so limited: "We also interpret the phrase 'articles that – infringe' to reference the status of the articles at the time of importation. Thus, infringement, direct or indirect, must be based on the articles as imported . . . ." *Certain Electronic Devices*, 2012 WL 3246515, at *9.[2]

In particular, a violation of Section 337 cannot be predicated on a claim that a staple article—like Suprema's scanners—may be modified after importation and, in that new form, infringe a device claim or be used to carry out an allegedly infringing process. Even without defining precisely what it means for an article to "infringe" within the meaning of Section 337, if a staple article must be altered before it can be employed to infringe the asserted claim, the *imported* article does not infringe. The use or sale of different, modified articles is not addressed by Section 337.

The ITC here determined that the complainant's claim of infringement was based on the combination of Suprema's accused scanners with Mentalix's

---

[2] Congress's discussion of Section 337 as it applies to patent infringement is consistent with this temporal focus. *See, e.g.*, S. Rep. No. 100-71, at 128 (1987) ("The *importation of any infringing merchandise* derogates from the [patent holder's] statutory right . . . ."); S. Rep. No. 93-1298, at 196 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7329 ("For example, in patent-based cases, the Commission considers, for its own purposes under the section 337, the *status of imports* with respect to the claims of U.S. patents.") (emphasis added).

Case: 12-1170 Document: 160 Page: 21 Filed: 08/19/2014

software, a combination that occurred only after the as-yet-non-infringing scanners were imported into the United States. *See* Commission Opinion at 4 (Add. 191). It is undisputed that the scanners, as imported, do not infringe claim 19 of the ’344 patent; the panel correctly determined that a Section 337 violation cannot be premised on a theory that Suprema induces Mentalix to modify those articles after importation to infringe.

## II. "ARTICLES THAT . . . INFRINGE" UNDER SECTION 337 MUST SATISFY EVERY ELEMENT OF A PRODUCT CLAIM

The Court should also re-affirm the panel decision based on the meaning of Section 337's limiting phrase "articles that . . . infringe," which is not a special trade term and is well-understood in patent law to mean (1) articles that satisfy every element of (2) a product claim—that is, a "structure" invention as opposed to a "process" invention. Giving the phrase its ordinary meaning reinforces the conclusion that the panel's determination in this case was correct.

### A. Infringement Under Section 337 Takes Its Meaning from § 271(a)

Section 337, by using the phrase "infringe a valid and enforceable . . . patent," unmistakably refers to the definition of infringement contained in § 271(a) of the Patent Act. A "valid and enforceable United States patent" is a patent that is valid and enforceable under the Patent Act; likewise, as the panel majority held and the Commission itself explained in *Certain Electronic Devices*, the infringement described in Section 337 is the same infringement described in

Case: 12-1170 Document: 160 Page: 22 Filed: 08/19/2014

35 U.S.C. § 271. *See Suprema*, 742 F.3d at 1359 ("To determine if imported goods are 'articles that . . . infringe,' we turn to the patent laws, specifically, § 271 of Title 35 of the U.S. Code."); *Certain Electronic Devices*, 2012 WL 3246515, at *9 ("The word 'infringe' in section 337 derives its legal meaning from 35 U.S.C. § 271, the section of the Patent Act that defines patent infringement."). *Compare Suprema*, 742 F.3d at 1375-76 (Reyna, J., concurring in part, dissenting in part) ("Section 337 is defined, much like § 271," but suggesting that under Section 337 an infringing article could be "an article capable of performing almost all of the steps of a patented method"). Indeed, when Congress uses the same term in two statutes enforcing the identical property right, without giving the term different definitions, the term should be construed consistently. *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").

The relevant definition of infringement under § 271 is found in § 271(a). *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention . . . , *infringes the patent*.") (emphasis added); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341

(1961).[3] Sections 271(b), (c), (f), and (g), by contrast, do not expand the definition of infringement—*i.e.*, they do not define additional exclusive rights—but instead extend liability to certain persons whose actions do not qualify as an act of patent infringement but who, in the judgment of Congress, demonstrate a level of culpability and should be held "liable as an infringer." 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be *liable as an infringer*.") (emphasis added); *id.* § 271(c) ("[w]hoever offers to sell or sells within the United States or imports into the United States" a component or material meeting the statutory criteria "*shall be liable as a contributory infringer*") (emphasis added); *id.* § 271(f)(1) ("Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patent invention . . . in a manner that would infringe the patent if such combination occurred within the United States, *shall be liable as an infringer*.") (emphasis added); *id.* § 271(f)(2) ("Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention . . . in a manner that would infringe the patent if such combination occurred within the United States, *shall be liable as an infringer*.") (emphasis

[3] Section 271(e)(2) defines an additional "act of infringement" specific to pharmaceuticals, 35 U.S.C. § 271(e)(2); that provision is irrelevant for present purposes.

Case: 12-1170 Document: 160 Page: 24 Filed: 08/19/2014

added); *id.* § 271(g) ("[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States *shall be liable as an infringer*" in the circumstances specified in the statute) (emphasis added).

The Supreme Court's decision in *Limelight* confirms this understanding of § 271. The Court explained that liability for inducement under § 271(b) is not an independent form of "infringement," but rather a form of *liability* that "must be predicated on direct infringement" under § 271(a). 134 S. Ct. at 2117; *see id.* at 2118 (rejecting an interpretation of § 271 that "would require the courts to develop two parallel bodies of infringement law: one for liability for direct infringement, and one for liability for inducement"). The Supreme Court criticized this Court's contrary holding as improperly "creating for § 271(b) purposes some free-floating concept of 'infringement' both untethered to the statutory text and difficult for the lower courts to apply consistently." *Id.* at 2120. Similarly, in a dissenting opinion subsequently vindicated by the Supreme Court, Judge Linn pointed out that Congress in 1952 "defin[ed] 'infringement' in § 271(a) and expressly defin[ed] the *only* situations in which a party could be liable for *something less than an infringement* in § 271(b) and (c)." *Akamai*, 692 F.3d at 1337 (Linn, J., dissenting) (second emphasis added).

Case: 12-1170 Document: 160 Page: 25 Filed: 08/19/2014

The conclusion that the meaning of “articles that . . . infringe” is defined and limited by the definition of infringement in § 271(a) is reinforced by the Supreme Court’s decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972). In that case, the petitioner (Deepsouth) had been enjoined from selling shrimp deveiners that infringed respondent Laitram’s patent; Deepsouth sought modification of an injunction to make clear that it was not enjoined from exporting the deveiner *in pieces* for assembly abroad. *See id.* at 523-24. The district court granted the relief: because only the combination of elements was patented, and Deepsouth did not make the combination in the United States when it exported the components, such conduct was not infringing and could not be enjoined. The Fifth Circuit reversed—finding the district court’s construction “artificial” and “technical,” *id.* at 525 (internal quotation marks omitted), but the Supreme Court agreed with the district court. The Court held that, “to secure the injunction it seeks, Laitram must show a § 271(a) direct infringement by Deepsouth in the United States”; Laitram could not do so because its patent covered only the combination—not the unassembled components. *Id.* at 527; *see id.* at 528-29.

The same reasoning limits the scope of “articles that . . . infringe” to those articles that directly infringe under § 271(a) at the time of importation. And it

precludes the ITC's argument, embraced in the dissenting opinion,[4] that Section 337 can be stretched to reach an article that does not infringe under § 271(a). Section 337 does not prohibit the importation (or sale after importation) of articles that do not infringe, simply because they may (at some later time) have some connection to infringing conduct. (Indeed, the Commission itself now has disavowed its prior "nexus"-based standard. *Certain Electronic Devices*, 2012 WL 3246515, at *11.) And Congress—which had recently adopted 35 U.S.C. § 271(f), in part to overrule the result in *Deepsouth*—would have been sensitive to the need to be explicit if it intended to extend the prohibition in Section 337 to articles that do not "infringe" in the sense of including every element of the asserted claim.[5]

---

[4] *See* Commission Opinion at 19 (Add. 206) (Section 337 covers indirect infringement if there is a "nexus between the unfair acts and importation"); *but see Certain Electronic Devices*, 2012 WL 3246515, at *11 (calling such nexus language "obsolete"); *see also Suprema*, 742 F.3d at 1375-76 (Reyna, J., concurring in part, dissenting in part) (the phrase "articles that . . . infringe" encompasses articles "capable of performing almost all of the steps of a patented method" or "tied to conduct giving rise to infringement liability").

[5] Congress's adoption of the new "articles that . . . infringe" language in 1988 cannot be read to *codify* any existing practice, because "a significant change in language is presumed to entail a change in meaning." Scalia & Garner at 256. It is evident from the changed language that an "unfair practice" (the pre-1988 violation) might encompass much conduct that importation of "articles that . . . infringe" does not. The snippet of legislative history cited by the Commission (Dkt. No. 88-1, at 12) and Cross Match (Dkt. No. 90-1, at 13) does not suggest otherwise. In particular, the Commission leaves out the limiting introductory clause: Congress stated only that "*In changing the wording with respect to importation or sale*, the conferees do not intend to change the interpretation or implementation of current law as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights." H.R. Conf. Rep. No. 100-576,

Case: 12-1170 Document: 160 Page: 27 Filed: 08/19/2014

That federal district courts generally did not grant injunctive relief against sales of non-infringing products involved in § 271(b) or (c) violations (*e.g.*, *Rohm & Haas Co. v. Dawson Chem. Co.*, 599 F.2d 685, 703 n.24 (5th Cir. 1979) ("The patentee's relief . . . would not be an injunction forbidding the defendants' *sale* of [non-infringing] staples, since mere sale is not wrongful under either [§ 271](b) or (c)."), *aff'd*, 448 U.S. 176 (1980); *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 182 (S.D.N.Y. 1999), *aff'd mem.*, Nos. 99-1337 & 99-1370, 2000 WL 37707 (Fed. Cir. Jan. 14, 2000) (per curiam) (judgment noted at 230 F.3d 1379 (table)) made it all the more imperative for Congress to be explicit if it wanted to grant injunctive-type exclusionary relief against articles that do not infringe. There is no justification for extending the reach of Section 337 beyond the bounds that Congress established.

### B. An Article Cannot "Infringe" a Method Claim, Because an Article Does Not Perform Steps

Infringement under § 271(a) requires that every limitation recited in the patent claim be met. In the case of a device patent, the patent is infringed by making, using, or selling an article that includes every element of the patented

---

at 633 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1666 (emphasis added). The relevant change in wording is described on the same page of the cited House Report as relating to the very different issue of what injury to domestic industry must be shown. *See id.* ("The House bill removes the requirement to prove injury, but only with regard to certain intellectual property rights cases involving patents, copyrights, registered trademarks, and mask works. In those cases, reference is made to 'the importation into the United States, the sale for importation, or the sale within the United States after importation' of specified articles.").

Case: 12-1170 Document: 160 Page: 28 Filed: 08/19/2014

device. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims."). In the case of a method claim—such as the claim at issue here—the patent is infringed only when "all the steps" recited in the claim "are carried out." *Limelight*, 134 S. Ct. at 2117.

An article cannot "infringe" a method patent that involves the *performance* of a series of steps; an article does not "perform" anything. By referring to "articles that . . . infringe," therefore, Congress indicated that it was referring to infringement of claims that define an invention according to structure—that is, product claims. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) (noting the importance of not "blurr[ing the] important difference between" "apparatus claim[s]" and "method claim[s]"); *Nassau Precision Casting Co. v. Acushnet Co.*, No. 2013-1410, 2014 WL 2535260, at *6 & n.1 (Fed. Cir. June 6, 2014) (the patent-law terms have "a stable, unambiguous meaning": "The court has long warned that apparatus and method claims 'are directed toward different classes of patentable subject material under 35 U.S.C. § 101' and that the distinction should not be 'blurred.' ") (quoting *Baldwin Graphic Sys.*, 512 F.3d at 1344).

By contrast, when Congress wanted the ITC to enforce method claims, it specifically said so. In 1940, responding to a decision of this Court's predecessor,

Case: 12-1170 Document: 160 Page: 29 Filed: 08/19/2014

Congress added a provision intended to protect a subset of method claim inventions used to create products prior to importation. That provision, codified as 19 U.S.C. § 1337(a)(1)(B)(ii), declares unlawful the importation "of articles that . . . are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent." Such articles, following their production, processing, or mining, may not satisfy the elements of any patent and therefore may not be "articles that . . . infringe" at the time of importation. Congress added this section to exclude articles produced by a patented method as a separate form of unfair trade. There is no comparable Section 337 provision defining a post-importation violation when the article as imported does not include every element of a patent claim but may be employed after importation in an infringing process. *Cf. Sealed Air Corp. v. ITC*, 645 F.2d 976, 986 (C.C.P.A. 1981) (contrasting the two types of patent-related conduct subject to Section 337: (1) when "the imported product is alleged to infringe patent claims drawn to a product" and (2) when "the imported product is alleged to have been made by a process that infringes patent claims drawn to a process of making the product").

More generally, Section 337 actions are *in rem*. An exclusion order operates against the articles directly. *See id.* at 985 ("An exclusion order operates against goods, not parties."); 19 U.S.C. § 1337(d)(2)(A), (B) (authorizing a general

exclusion order against the articles if an order limited to products of named persons would be subject to circumvention or there is a pattern of violations and it is difficult to identify the source of the infringing products). Thus, whether the "articles . . . infringe" must be ascertainable by examining the articles themselves. Although the dissenting judge reasoned that the Commission's *in rem* jurisdiction suggests that "it has the authority to exclude products *intended* to be sold or imported in the future," *Suprema*, 742 F.3d at 1374-75 (Reyna, J., concurring in part, dissenting in part), questions of the importer's intent or knowledge regarding the infringement by its downstream customers go well beyond whether the "articles . . . infringe" and are inconsistent with the *in rem* remedy.

## III. THE COMMISSION'S INTERPRETATION THAT "ARTICLES THAT . . . INFRINGE" INCLUDES INDIRECT INFRINGEMENT BASED ON POST-IMPORTATION INFRINGEMENT IS NOT ENTITLED TO *CHEVRON* DEFERENCE

The panel majority declined to give *Chevron* deference to the Commission's interpretation of the statute to allow exclusion of articles that do not infringe at the time of importation because, as described above, the statute is "unambiguous." *Suprema*, 742 F.3d at 1363 & n.5.

The panel's conclusion is correct: the statute as a whole makes more sense when infringement is judged at the time an article is imported. An interpretation of Section 337 that finds violations based on the intent of the importer or uses of the product downstream, and where the remedy does not closely fit the violation,

Case: 12-1170 Document: 160 Page: 31 Filed: 08/19/2014

is inconsistent with the design and structure of the statute. The Supreme Court's most recent opinion on *Chevron* deference is instructive:

> Even under *Chevron*'s deferential framework, agencies must operate "within the bounds of reasonable interpretation." *Arlington*, 569 U.S., at —, 133 S.Ct., at 1868. And reasonable statutory interpretation must account for both "the specific context in which . . . language is used" and "the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). A statutory "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988). Thus, an agency interpretation that is "inconsisten[t] with the design and structure of the statute as a whole," *University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. —, —, 133 S.Ct. 2517, 2529 (2013), does not merit deference.
>
> . . .
>
> . . . We are not willing to stand on the dock and wave goodbye as EPA embarks on this multiyear voyage of discovery. We reaffirm the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.

*Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2442, 2446 (2014) (alterations in original; parallel citations omitted).

The panel pointed out that the ITC's primary remedy—an exclusion order—does not fit when it is applied to articles that do not infringe when imported and "may or may not" infringe later depending on how they are combined with other products by downstream customers after importation. *Suprema*, 742 F.3d at 1363.

Case: 12-1170 Document: 160 Page: 32 Filed: 08/19/2014

In its rehearing petition, the ITC argued that "the panel confused the question of an appropriate remedy . . . with the question of liability" and claimed that the overbroad remedy could be fixed because "U.S. Customs and Border Protection may permit importation" if Suprema can "certify that the scanners are not covered by the order." Dkt. No. 88-1, at 5, 14-15 (citing Dkt. No. 75 (Limited Exclusion Order), at 2, ¶ 3). But the panel appropriately considered the practical ability of enforcement agents to implement a remedy based on the Commission's interpretation of Section 337. It is a familiar principle that the institutional ability to identify and remedy conduct bears on whether the conduct falls within the relevant statutory prohibition in the first place. *E.g., Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414-15 (2004).

Moreover, while *amici* do not oppose the ITC's creative attempt to limit overbroad remedies, the "certification" safety valve to allow imports of non-infringing products will be particularly difficult to administer here. The provision states: "At the discretion of the U.S. Customs and Border Protection ('CBP') and pursuant to procedures it establishes, persons seeking to import biometric scanning devices, components thereof, associated software, and products containing the same that are potentially subject to this Order may be required to certify that they . . . have made appropriate inquiry, and thereupon state that, to the best of their knowledge and belief, the products being imported are not excluded from entry

under paragraph 1 of this Order." Dkt. No. 75 (Limited Exclusion Order), at 2, ¶ 3. Paragraph 1 of the Order, in turn, defines the offending devices as ones "that infringe" the patent claims and are manufactured abroad or imported by Suprema. *Id.* at 1, ¶ 1.

How would Customs and Border Protection administer such a provision, and what would Suprema certify, if the Commission's ruling is allowed to stand? The "products being imported" do *not* infringe the method claim because they do not perform all (indeed any) of the steps of the claim; nor do they contain the components necessary to do so. As the panel decision noted, it is unreasonable to expect Customs and Border Protection officers to administer a provision that depends on whether Suprema *intends* to cause infringement by others. Even on the objective question of infringement, Customs and Border Protection cannot discern whether Suprema's downstream customers may modify the scanners in ways that practice the method claim. Such modification may occur, if it ever occurs, long after importation and far from the ports of entry that CBP polices.

## IV. THE COMMISSION MAY NOT EXPAND ITS MISSION TO FULFILL REMEDIAL TRADE PURPOSES

Indirect infringement theories should not be used to "fill gaps" in the scope of Section 337 or the enforcement of patents. Judge Reyna's dissenting opinion cited this Court's en banc decision in *Akamai v. Limelight* as an example of how indirect infringement liability may be expanded to prevent "circumvention" or

"escap[ing] liability" when there is no "direct infringement [under § 271(a)] until after importation." *Suprema*, 742 F.3d at 1376 (Reyna, J., concurring in part, dissenting in part). But the Supreme Court in reversing the *Akamai* decision held that the limited "scope of § 271(a) is no reason for . . . misconstruing § 271(b) to impose liability for inducing infringement where no infringement has occurred." *Limelight*, 134 S. Ct. at 2119. There would be no stopping point to "improvisation" by the ITC in pursuit of remedying unfair trade if the statute is not the limit. Scalia & Garner at 364-66.

Here, there is no gap in enforcement of patent rights. Infringement that occurs in the United States post-importation may be addressed through remedies available in U.S. district courts. The ITC need not expand its jurisdiction to reach every infringement claim that could be brought in district court because the role of the ITC is not to serve as an alternative forum for patent litigation. It is a trade court that may hear only the specified types of cases that Congress has designated. *See, e.g.*, *Motiva, LLC v. ITC*, 716 F.3d 596, 601 (Fed. Cir. 2013) ("the 'Commission is fundamentally a trade forum, not an intellectual property forum' ") (quoting *John Mezzalingua Assocs., Inc. v. ITC*, 660 F.3d 1322, 1327-28 (Fed. Cir. 2011), *cert. denied*, 133 S. Ct. 422 (2012)); *InterDigital Communications, LLC v. ITC*, 707 F.3d 1295, 1301 (Fed. Cir.) ("At the hearings on the legislation to amend section 337, there was opposition to the complete elimination of the [domestic

Case: 12-1170 Document: 160 Page: 35 Filed: 08/19/2014

industry requirement, on the ground that to do so would convert the Commission's mission from a trade forum into an intellectual property court . . . ."), *cert. denied*, 134 S. Ct. 469 (2013); Br. for the Federal Respondent in Opposition at 15 & 16 n.*, *Nokia Inc. v. ITC*, No. 12-1352 (U.S. filed Sept. 9, 2013) ("[T]he ITC's enforcement authority is subject to distinct limitations that do not apply in district court." For example, "[t]he court in an infringement suit has authority to enjoin the manufacture and sale of infringing articles even where that manufacture and sale occurs wholly within the United States. Under Section 1337, by contrast, the ITC is authorized only to address offenses involving the *importation* of infringing articles, not to restrict purely domestic conduct."), *available at* http://www.justice.gov/osg/briefs/2013/0responses/2012-1352.resp.pdf. Expanding the ITC's enforcement in order to duplicate even more of what the district courts cover (already approximately two-thirds of ITC investigations have parallel district court cases[6]) would lead to additional expense and inconsistency.[7]

---

[6] *See* Colleen V. Chien, *Protecting Domestic Industries at the ITC*, 28 Santa Clara Computer & High Tech. L.J. 169, 171 (2011) ("Around two-thirds of ITC cases have a district court counterpart."); Federal Trade Comm'n, *The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition* 239 (Mar. 2011) (65% of ITC cases have concurrent district court counterparts), *available at* http://www.ftc.gov/reports/evolving-ip-marketplace-aligning-patent-notice-remedies-competition.

[7] For example, the ITC's not following the equitable limits on remedies that district courts follow under *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), is one of the reasons that the ITC "now accounts for a substantial share of the patent infringement trials conducted in the United States." USITC, *Budget Justification:*

Case: 12-1170 Document: 160 Page: 36 Filed: 08/19/2014

## CONCLUSION

The panel's decision should be re-affirmed.

Respectfully submitted,

/s/ *John Thorne*
JOHN THORNE
AARON M. PANNER
MELANIE L. BOSTWICK
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
*Counsel for Amici Curiae Dell Inc., Adobe Systems, Inc., Ford Motor Co., Hewlett-Packard Co., LG Display Co., Ltd., LG Electronics, Inc., Netflix, Inc., Samsung Electronics Co., Ltd., and SAP America, Inc.*

Counsel whose names appear below have consented to the electronic representation of their signatures:

/s/ *Suzanne T. Michel*
SUZANNE T. MICHEL
GOOGLE INC.
1101 New York Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 667-5398
Fax: (202) 346-1101
*Counsel for Amicus Curiae Google Inc.*

August 18, 2014

---

*Fiscal Year 2013*, at 24, *available at* http://www.usitc.gov/press_room/documents/budget_2013.pdf; *see* USITC, *Budget Justification: Fiscal Year 2015*, at 17 (ITC expects its patent caseload to "remain at the elevated levels of the last several years and that the hearings in these proceedings will continue to account for a substantial share of the patent infringement trials conducted in the United States"), *available at* http://www.usitc.gov/press_room/documents/budget_2015.pdf.

Case: 12-1170 Document: 160 Page: 37 Filed: 08/19/2014



FORM 30. Certificate of Service

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on August 19, 2014
by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means (by email or CM/ECF)

John Thorne
Name of Counsel

/s/ John Thorne
Signature of Counsel

Law Firm: Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Address: 1615 M Street, N.W., Suite 400
City, State, ZIP: Washington, D.C. 20036
Telephone Number: 202-326-7900
FAX Number: 202-326-7999
E-mail Address: jthorne@khhte.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief contains 6,462 words. This certificate was prepared in reliance on the word count of the word-processing system (Microsoft Office Word 2007) used to prepare this brief.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point Times New Roman font.

/s/ *John Thorne*

Dated: August 18, 2014

John Thorne
*Counsel for Amici Curiae*
*Dell Inc., Adobe Systems, Inc.,*
*Ford Motor Co., Hewlett-Packard Co.,*
*LG Display Co., Ltd., LG Electronics, Inc.,*
*Netflix, Inc., Samsung Electronics Co., Ltd.,*
*and SAP America, Inc.*