- NONCONFIDENTIAL -

2012-1170

# United States Court of Appeals for the Federal Circuit

SUPREMA, INC. and MENTALIX, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor*.

Appeal from the United States International Trade Commission in Investigation No. 337-TA-720.

## BRIEF FOR INTERVENOR ON REHEARING EN BANC

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4843
(212) 906-1200

Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
Jennifer M. Halbleib
LATHAM & WATKINS LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Intervenor*
*Cross Match Technologies, Inc.*

October 15, 2014

## CERTIFICATE OF INTEREST

Counsel for Intervenor Cross Match Technologies, Inc. certifies the following:

1. The full name of every party or amicus curiae represented by me is:

   Cross Match Technologies, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Francisco Partners Management LLC

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

   Latham & Watkins LLP: Maximilian A. Grant, Matthew J. Moore, Bert C. Reiser, Clement Naples, Gabriel Bell, Adam Greenfield, Michael David, Gregory Sobolski, Jennifer M. Halbleib, Franklin Kang (former), Stephen McBride (former), Inge Osman (former), James Bender (former)

Respectfully submitted,

/s/ Maximilian A. Grant

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004

*Counsel for Intervenor*
*Cross Match Technologies, Inc.*

October 15, 2014

# TABLE OF CONTENTS


**Page**

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF RELATED CASES ........................................................1

STATEMENT OF THE ISSUES ...............................................................2

STATEMENT OF THE CASE ..................................................................3

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT .......................................................................................16

I. THE COMMISSION PROPERLY FOUND A SECTION 337 VIOLATION BASED ON SUPREMA INDUCING MENTALIX'S POST-IMPORTATION INFRINGEMENT ..........................................16

A. Congress Empowered The Commission To Prohibit Importers From Inducing Domestic Infringement ..........................................18

1. The Statutory Text Confirms The Commission's Interpretation ..........................................18

2. The Statutory History Confirms The Commission's Interpretation ..........................................26

3. The Statutory Purpose Confirms The Commission's Interpretation ..........................................32

B. The Commission's Interpretation Is Entitled To Deference ...............34

1. The Commission's Interpretation Is Longstanding And Has Been Repeatedly Affirmed By This Court ........................35

2. The Commission's Interpretation Is Reasonable ......................40

a. The Commission's Interpretation Does Not Render Any Language Superfluous ..........................................41

**Page**


b. The Scope Of The Commission's Exclusion Order Is Proper And, Regardless, Not At Issue Here ............... 42

II. SUBSTANTIAL EVIDENCE SUPPORTS THE COMMISSION'S FINDING THAT SUPREMA INDUCED INFRINGEMENT ..................... 48

A. Substantial Evidence Supports The Commission's Finding Of Willful Blindness ..................... 50

1. The Commission Applied The *Global-Tech* Standard ............. 50

2. The Commission's Willful Blindness Finding Is Supported By Substantial Evidence Just As In *Global-Tech* ..................... 51

3. Suprema's Failure To Obtain Advice of Counsel Further Supports the Commission's Willful Blindness Finding ........... 55

B. Substantial Evidence Supports The Commission's Finding Of Intentionally Aiding And Abetting Infringement ................................ 57

III. THE COMMISSION PROPERLY CONSTRUED CLAIM 19 AND FOUND IT INFRINGED ..................... 58

CONCLUSION ..................... 59


## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 8, 15, 46, 52-54, and 56-58 relates to confidential business information subject to a protective order.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbey v. United States*,
745 F.3d 1363 (Fed. Cir. 2014) .......................................................35

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) .......................................................49

*Bally/Midway Manufacturing Co. v. ITC*,
714 F.2d 1117 (Fed. Cir. 1983) .......................................................42

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008) .........................................................49

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)..........................................................................17

*Commodity Futures Trading Commission v. Schor*,
478 U.S. 833 (1986)..........................................................................26

*Computer Stores Northwest, Inc. v. Dunwell Tech, Inc.*,
No. 10-284, 2011 WL 2413825 (D. Or. June 9, 2011) ...................34

*Corning Glass Works v. ITC*,
799 F.2d 1559 (Fed. Cir. 1986) .......................................................40

*Department of Revenue v. ACF Industries, Inc.*,
510 U.S. 332 (1994)..........................................................................30

*Disabled America Veterans v. Secretary of Veterans Affairs*,
419 F.3d 1317 (Fed. Cir. 2005) .................................................26, 30

*DSU Medical Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) .......................................................49

*Enercon GmbH v. ITC*,
151 F.3d 1376 (Fed. Cir. 1998) ...............................................*passim*

**Page(s)**

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................30

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*,
501 F.3d 1263 (Fed. Cir. 2007)....................45

*Freedom Hawk Kayak, LLC v. Ya Tai Electric Appliances Co.*,
908 F. Supp. 2d 763 (W.D. Va. 2012)....................34

*Frischer & Co. v. Bakelite Corp.*,
39 F.2d 247 (C.C.P.A. 1930)....................24

*Fuji Photo Film Co. v. Benun*,
463 F.3d 1252 (Fed. Cir. 2006)....................34, 45

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)....................*passim*

*Highmark Inc. v. Allcare Health Management System, Inc.*,
134 S. Ct. 1744 (2014)....................57

*Hyundai Electronics Industries Co. v. ITC*,
899 F.2d 1204 (Fed. Cir. 1990)....................44, 46, 47

*ICC v. Texas*,
479 U.S. 450 (1987)....................27

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004)....................56

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
134 S. Ct. 2111 (2014)....................22

*Massa v. Department of Defense*,
815 F.2d 69 (Fed. Cir. 1987)....................54

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012)....................45

**Page(s)**

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007)....................................................22, 45

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..........................................................11, 21, 22, 25, 44

*Micron Technology, Inc. v. United States*,
243 F.3d 1301 (Fed. Cir. 2001) ...........................................................................26

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) .............................................................................49

*Morgan v. Principi*,
327 F.3d 1357 (Fed. Cir. 2003) ...........................................................................29

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*,
545 U.S. 967 (2005)..............................................................................................17

*Nippon Steel Corp. v. United States.*,
458 F.3d 1345 (Fed. Cir. 2006) .....................................................................48, 54

*NLRB v. Bell Aerospace Co. Division of Textron, Inc.*,
416 U.S. 267 (1974)..............................................................................................38

*Oticon, Inc. v. Sebotek Hearing Systems, LLC*,
865 F. Supp. 2d 501 (D.N.J. 2011).......................................................................34

*Passaro v. United States*,
774 F.2d 456 (Fed. Cir. 1985) ..............................................................................26

*Pentax Corp. v. Robison*,
135 F.3d 760 (Fed. Cir. 1998) ..............................................................................58

*Robert Bosch, LLC v. Pylon Manufacturing Corp.*,
719 F.3d 1305 (Fed. Cir. 2013) ...........................................................................32

*Rohm & Haas Co. v. Dawson Chemical Co.*,
599 F.2d 685 (5th Cir. 1979), *aff'd*, 448 U.S. 176
(1980)....................................................................................................................44

**Page(s)**

*San Huan New Materials High Tech, Inc. v. ITC*,
161 F.3d 1347 (Fed. Cir. 1998) ............................................................26, 30

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947)..........................................................................................38

*In re Seagate Technology, LLC*,
497 F.3d 1360 (Fed. Cir. 2007) ............................................................55, 56

*Sealed Air Corp. v. ITC*,
645 F.2d 976 (C.C.P.A. 1981).......................................................24, 43, 47

*SiRF Technology, Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010) ............................................................37, 46

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................................................................58

*Spansion, Inc. v. ITC*,
629 F.3d 1331 (Fed. Cir. 2010) ............................................................23, 48

*Suprema, Inc. v. ITC*,
742 F.3d 1350 (Fed. Cir. 2013) ........................................................*passim*

*TianRui Group Co. v. ITC*,
661 F.3d 1322 (Fed. Cir. 2011) ....................................................................40

*Timex V.I. v. United States*,
157 F.3d 879 (Fed. Cir. 1998) ......................................................................18

*Viscofan, S.A. v. ITC*,
787 F.2d 544 (Fed. Cir. 1986) ......................................................................44

*In re Von Clemm*,
229 F.2d 441 (C.C.P.A. 1955).......................................................................27

*Water Technologies Corp. v. Calco, Ltd.*,
850 F.2d 660 (Fed. Cir. 1988) ......................................................................57

**Page(s)**

*Wheatland Tube Co. v. United States*,
495 F.3d 1355 (Fed. Cir. 2007) ....................................................................38

*Young v. Community Nutrition Institute*,
476 U.S. 974 (1986)..........................................................................26, 30

**AGENCY DECISIONS AND MEMORANDA**

*Certain Apparatus for Installing Electrical Lines and Components Therefor*,
Inv. No. 337-TA-196, Comm'n Op. (June 20, 1986)....................................24

*Certain Chemiluminescent Compositions*,
Inv. No. 337-TA-285, ALJ Op. (Apr. 13, 1989), *aff'd*, Comm'n Op. (Aug. 17, 1989)..........................................................................................37

*Certain Compound Action Metal Cutting Snips and Components Thereof*,
Inv. No. 337-TA-197, Comm'n Action and Order (July 19, 1985) .............24

*Certain Condensers*,
Inv. No. 337-TA-334 (Remand), Comm'n Op. (Sept. 10, 1997)..................46

*Certain Digital Models, Digital Data, and Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances*,
Inv. No. 337-TA-833, Comm'n Op. (Apr. 3, 2014)....................19, 32, 39, 40

*Certain Digital Televisions*,
Inv. No. 337-TA-617, ALJ Op., 2008 WL 5324356 (Nov. 17, 2008), *aff'd in relevant part*, Comm'n Op., 2009 WL 1124461 (Apr. 23, 2009), *aff'd sub nom. Vizio, Inc. v. ITC*, 605 F.3d 1330 (Fed. Cir. 2010) .............................................................................................36

*Certain Digital Televisions*,
Inv. No. 337-TA-617, Comm'n Op., 2009 WL 1124461 (Apr. 23, 2009), *aff'd sub nom. Vizio, Inc. v. ITC*, 605 F.3d 1330 (Fed. Cir. 2010) .......................................................................................46, 47

*Certain Electronic Devices*,
Inv. No. 337-TA-724, 2012 WL 3246515 (Dec. 21, 2011) ..........................39

**Page(s)**

*Certain GPS Devices*,
Inv. No. 337-TA-602, ALJ Op., 2008 WL 5051308 (Aug. 8, 2008), *aff'd in relevant part*, Comm'n Op. (public vers. dated Jan. 27, 2009), *aff'd sub nom. SiRF Technology, Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010) ....................37, 46

*Certain Hardware Logic Emulation Systems*,
Inv. No. 337-TA-383, Comm'n Op. (Mar. 31, 1998) ....................37

*Certain Laser Bar Code Scanners and Scan Engines*,
Inv. No. 337-TA-551, Comm'n Op. (June 14, 2007)....................46

*Certain Minoxidil Powder, Salts & Compositions for Use in Hair Treatment*,
Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988)....................36

*Certain Molded-In Sandwich Panel Inserts & Methods for Their Installation*,
Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982), *aff'd sub nom. Young Engineers, Inc. v. ITC*, 721 F.2d 1305, 1310 (Fed. Cir. 1983) ....28, 36

*Certain Optoelectronic Devices*,
Inv. No. 337-TA-669, 2011 WL 7628061 (Nov. 2011), *aff'd sub nom. Emcore Corp. v. ITC*, 449 F. App'x 918 (Fed. Cir. 2011) ....................37

*Certain Plastic Food Storage Containers*,
Inv. No. 337–TA–152, Comm'n Action and Order at 7, 9-11 (July 13, 1984) ....................24

*Certain Semiconductor Chips with Minimized Chip Package Size*, Inv. No. 337-TA-605, Comm'n Op. (June 3, 2009) ....................46

## STATUTES

5 U.S.C. § 706(2)(E) ....................48

19 U.S.C. § 1337 ....................3

**Page(s)**

19 U.S.C. § 1337(a)(1)(A) ....................41

19 U.S.C. § 1337(a)(1)(A)(i) ....................41

19 U.S.C. § 1337(a)(1)(A)(ii) ....................41

19 U.S.C. § 1337(a)(1)(A)(iii) ....................41

19 U.S.C. § 1337(a)(1)(B) ....................7

19 U.S.C. § 1337(a)(1)(B)(i)....................18, 28

19 U.S.C. § 1337(f)....................29, 42

19 U.S.C. § 1337(k) ....................43

28 U.S.C. § 1659(a) ....................1

35 U.S.C. § 271....................119

35 U.S.C. § 271(a) ....................11, 20

35 U.S.C. § 271(b) ....................3, 11, 20

35 U.S.C. § 271(c) ....................11, 20

1 Stat. 109 (1790)....................21

Pub. L. No. 67-318, 42 Stat. 858 (1922)....................27

Pub. L. No. 71-361, 46 Stat. 590 (1930)....................12, 27

Pub. L. No. 82-593, 66 Stat. 792 (1952)....................21

Pub. L. No. 100-418, 102 Stat. 1107 (1988)....................28, 32

Pub. L. No. 102-563, 106 Stat. 4237 (1992)....................29

**Page(s)**

Pub. L. No. 103-465, 108 Stat. 4909 (1994)....................................................29

Pub. L. No. 104-295, 110 Stat. 3514 (1996)....................................................30

Pub. L. No. 106-113, 113 Stat. 1501 (1999)....................................................29

Pub. L. No. 108-429, 118 Stat. 2434 (2004)....................................................29

## OTHER AUTHORITY

General Counsel, U.S. ITC, *Causes of Action Under Section 337*, USITC GC-G-243, 1983 WL 206913 (Sept. 30, 1983) ................................37

H.R. Rep. No. 100-40 (1987)........................................................29, 32, 42

H.R. Rep. No. 100-60 (1987)..............................................................42

H.R. Rep. No. 100-576 (1988)........................................................13, 28

S. Rep. No. 67-595 (1922)...................................................12, 27, 32, 40

S. Rep. No. 100-71 (1987)...........................................................32, 41

Allen M. Sokal & Joyce Craig, *Federal Circuit Discards the "Nexus" Test for Infringement at the ITC, Potentially Narrowing the Scope and Effectiveness of § 337*, 41 AIPLA Q.J. 637 (2013) ......................................33

## STATEMENT OF RELATED CASES

*Cross Match Technologies, Inc. v. International Trade Commission*, Nos. 2012-1026, -1124, arose out of the same underlying United States International Trade Commission ("Commission") investigation (No. 337-TA-720). It was decided in the same opinion as the present appeal. 742 F.3d 1350 (Fed. Cir. Dec. 13, 2013) (panel consisting of Prost, O'Malley, and Reyna, JJ.).

On February 10, 2010, Cross Match Technologies, Inc. ("Cross Match") sued Suprema, Inc. ("Suprema") and Mentalix, Inc. ("Mentalix") in federal district court in Texas; the case was stayed pursuant to 28 U.S.C. § 1659(a). *See Cross Match Technologies, Inc. v. Suprema, Inc. et al.*, No. 6:10-cv-28 (E.D. Tex.).

## STATEMENT OF THE ISSUES

1. Whether the United States International Trade Commission has authority to find a Section 337 violation—and issue an exclusion or cease and desist order—where it finds that an importer actively induced infringement of a patented invention using its imported articles but the direct infringement occurred after the initial, or first, importation ("post-importation").

2. Whether the Commission's finding of induced infringement of U.S. Patent No. 7,203,344 ("'344 patent") is supported by substantial evidence and in accordance with law.

3. Whether the Commission's finding of infringement of the '344 patent is based on a proper construction of the "shape" and "area" limitations and supported by substantial evidence.

4. Whether the Commission correctly construed the "optical system" limitation of U.S. Patent No. 5,900,993 ("'993 patent") as permitting the use of mirrors between the claimed "lens units."*

5. Whether the Commission's finding that Appellants failed to establish, by clear and convincing evidence, that the combination of U.S. Patent Nos. 3,619,060 and 5,615,051 renders the '993 patent invalid due to obviousness is supported by substantial evidence.*

* *Issues addressed in Cross Match's principal brief but not in this rehearing brief.*

## STATEMENT OF THE CASE

The Commission found that Appellants Suprema (a Korean company) and Mentalix (located in Texas) (collectively "Appellants") violated Section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, because Suprema's fingerprint scanners, when imported and used with Mentalix's software, perform a method for capturing and processing fingerprints that infringes Cross Match's '344 patent. *See* A37; A40; A211; A220; A264-301. The Commission determined that Suprema actively aided and abetted Mentalix's infringement by collaborating with Mentalix to import the scanners and helping Mentalix adapt its software to work with the imported scanners to practice the patented method. A220-24. Based on a detailed factual record, the Commission found that Suprema willfully blinded itself to the existence of the patent and the infringing nature of the activities it encouraged, and held that Suprema induced infringement under 35 U.S.C. § 271(b). A220-24. Thus, the Commission found that Appellants violated Section 337. A213-15; A233. The Commission then issued a limited exclusion order barring importation of products that infringe the '344 patent. A235; A240; A400501-04. The order includes a provision under which Appellants can certify that future imports do not infringe Cross Match's patent rights. A400502-03.

A panel of this Court vacated the Commission's rulings as to the '344 patent, holding that the Commission lacks authority under Section 337 to find a

violation (and thus issue a remedy) where an importer induces infringement under Section 271(b) by importing articles but the direct infringement using those articles only occurs after the initial, or first, importation ("post-importation"). The Court granted the Commission's and Cross Match's petitions for rehearing *en banc*.

**A. Background**

Founded in 1996, Cross Match is a pioneer and leading global provider in the field of biometric identification solutions. A500116. The company develops and manufactures a variety of products, including products that practice the '344 patent. *Id*. Cross Match's innovative products include a wide range of multimodal biometric solutions, including fingerprint and palmprint scanners, which are used to capture and process the unique physiological characteristics of individuals to verify identities. A500116-17. These products allow Cross Match's customers to protect and secure people, property, and privacy.

Cross Match invests heavily in research and development and has a rich history of innovation. A500117. Cross Match conducts manufacturing and testing associated with more than ten product families and it (or its subsidiaries) have been granted over 115 patents with many additional patent applications pending to protect its various innovative proprietary systems and methods. *Id*. The technology at issue in this appeal involves fingerprint scanners that use optical

systems, a light source, a sensor, and software to obtain and quality-check images of fingerprints. A40-41; A120; A123-33.

Appellants compete with Cross Match in the biometrics and fingerprint scanning industries. Suprema makes and sells RealScan scanners—fingerprint-scanning hardware—bundled with software for using the devices, which Appellants import into the United States. *See* A40-41; A211-12. Suprema's "software development kit" (or "SDK") utilizes Suprema hardware to scan fingerprints and assesses the quality and number of the prints, among other functions. *See, e.g.*, A115-18; A300049; A100755. The SDKs include manuals instructing customers on how to integrate such features, including the functions described in the method claim at issue here, into customer software to perform the desired scanner functionality. A41; A224.

Mentalix develops its own biometric identification software (called "FedSubmit") using Suprema's SDK code. Mentalix purchases Suprema scanners, tests the scanners using its FedSubmit software, and sells the scanners as a system with its software. A40-41; A135-36; A101703; A101711-12. Mentalix performs demonstrations of the scanner running the software and uses it for training. A220; Appellants' Rehearing Br. 34. FedSubmit operates, in relevant part, by assessing height and width of fingerprints to determine whether they are of acceptable

quality. A127-32; *see* Appellants' Rehearing Br. 65. Appellants collaborate on software development and commercial implementation. A224.

### B. The '344 Patent

The only claim of the '344 patent at issue here is claim 19 and the only limitations at issue are (e) and (f). Claim 19 states (A297):

> **19.** A method for capturing and processing a fingerprint image, the method comprising:
>
> (a) scanning one or more fingers;
>
> (b) capturing data representing a corresponding fingerprint image;
>
> (c) filtering the fingerprint image;
>
> (d) binarizing the filtered fingerprint image;
>
> (e) detecting a fingerprint area based on a concentration of black pixels in the binarized fingerprint image;
>
> (f) detecting a fingerprint shape based on an arrangement of the concentrated black pixels in an oval-like shape in the binarized fingerprint image; and
>
> (g) determining whether the detected fingerprint area and shape are of an acceptable quality.

### C. Commission Proceedings

On May 11, 2010, Cross Match filed a complaint with the Commission, alleging, *inter alia*, importation and sale of Suprema's RealScan products that, used in conjunction with FedSubmit, infringe the '344 patent. *See* A36; A102; A120. On June 11, 2010, the Commission initiated an investigation pursuant to

Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(1)(B). A36.

The Administrative Law Judge ("ALJ") held that the language in claim 19 of the '344 patent for "detecting a fingerprint area" (step (e)) and "detecting a fingerprint shape" (step (f)) was plain on its face and required no formal construction. A127-28; A131. With respect to the remaining language of step (f), the ALJ held that "the concentrations of black pixels need only be comprised of oval-like shapes" and that step (f) "does not require a calculation or determination of whether anything is oval-like." A131, *quoted at* Appellants' Rehearing Br. 65; *cf*. A78-94 (construing other claim terms).

The ALJ found that Suprema's RealScan-10/10F and RealScan-D/DF, used in conjunction with Mentalix's FedSubmit software, satisfied both limitations. A127-31. The ALJ found that FedSubmit determines a fingerprint area and shape based on the placement of a bounding box around each fingerprint image, which is a concentration of black pixels arranged in an oval-like shape. A131 ("[T]he process of placing a bounding box around the fingerprint shows that the system necessarily determines the boundaries of the print and thus detects … the area and shape of the print."), *quoted at* Appellants' Rehearing Br. 65. Because the ALJ also found all other limitations met, the ALJ found infringement of claim 19. A123-33; A204.

The Commission reviewed and affirmed the ALJ's ruling of infringement of claim 19 of the '344 patent, with some elaboration. The Commission found that (a) Mentalix directly infringed claim 19 by providing training and demonstrations of its integrated scanner system, A220, and (b) Suprema induced infringement because it "**[[** **]]** then 'willfully blinded' itself to the infringing nature of Mentalix's activities which it had actively encouraged," A221 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71 (2011)); *see also* A221-24. Thus, the Commission found, "[t]hese actions result in a finding of a violation of section 337 by both respondents." A230. The Commission explained that its "remedial authority to issue exclusion orders extends to violations of section 337 based on indirect infringement," including "contributory and induced infringement." A215.

The Commission issued a limited exclusion order prohibiting Suprema and Mentalix from importing into the United States scanning devices and software "that infringe ... claim 19 of the '344 patent," A400502, and a cease and desist order similarly prohibiting Mentalix from, inter alia, importing such products into the United States or distributing or selling such products in the United States, A400506-07. The exclusion order further provides that, in enforcing the order, U.S. Customs and Border Protection ("Customs") may permit Appellants to certify

that "the products being imported" do not infringe claim 19 and therefore "are not excluded from entry" under the order. A400503.[1]

### D. Panel Decision

On December 13, 2013, a divided panel of this Court vacated the exclusion and cease and desist orders as to the '344 patent, holding that the Commission has no authority to find a Section 337 violation where an importer induced infringement but the predicate direct infringement occurred post-importation. *Suprema, Inc. v. ITC*, 742 F.3d 1350, 1357 (Fed. Cir. 2013). The majority recognized that its holding contradicted Commission precedent interpreting the statute as giving the Commission that authority, *id.* at 1362-63, but "decline[d] to afford deference to the Commission's views on the precise question presented" because, according to the majority, the "congressional intent … is evident from the statutory language." *Id.* at 1363 & n.5.

Judge Reyna dissented, pointing out that the majority opinion "negate[d] both a statutory trade remedy and its intended relief" by "overlook[ing] the Congressional purpose of Section 337, the long established agency practice … of conducting unfair trade investigations based on induced patent infringement, and

[1] The Commission also found that certain Suprema scanners directly infringe claims 10, 12, and 15 of the '993 patent, A240, and included those claims in the exclusion order, A400502. That patent is addressed in Cross Match's Principal Brief.

related precedent by this Court confirming this practice." *Id.* at 1372 (Reyna, J., dissenting). The dissent identified numerous decisions spanning over three decades (which the majority did not address) in which the Commission found a Section 337 violation and issued an exclusion order barring an inducing importer's products even though direct infringement occurred post-importation. *Id.* at 1372 & n.2. "In the end," the dissent concluded, "the majority has created a fissure in the dam of the U.S. border through which circumvention of Section 337 will ensue, thereby harming holders of U.S. patents." *Id.* at 1372.[2]

### E. Rehearing *En Banc*

On February 21, 2014, the Commission and Cross Match petitioned for panel rehearing or rehearing *en banc*. ECF Nos. 88, 90. They argued that the panel erred in vacating the Commission's orders with respect to the '344 patent. On May 13, 2014, the Court granted rehearing *en banc*. ECF No. 105.

## SUMMARY OF ARGUMENT

1. The Commission properly found a Section 337 violation based on Suprema importing its scanners to induce Mentalix to infringe claim 19 of the '344 patent post-importation. For decades the Commission has exercised its authority under Section 337 to issue an exclusion order based on indirect infringement even

---

[2] The panel unanimously affirmed the Commission's exclusion order as to the '993 patent. That ruling was not addressed in the rehearing petitions.

when the direct infringement only occurred post-importation. The Commission has long understood that, as in this case, inducing post-importation infringement of method patent claims is precisely the type of unfair act that violates Section 337. The Commission's interpretation of Section 337 is correct. Based on the statutory text, history, and purpose, it is plain that Congress intended to protect U.S. companies against such unfair acts in connection with importing articles into domestic commerce.

Appellants' primary argument to the contrary is that, because Section 337 refers to "articles … that infringe," there can be no violation of the statute unless the articles themselves "infringe" at the moment of initial importation. According to Appellants, importing staple articles to induce domestic infringement does not violate the statute. But the only statutory provision defining infringement, Section 271 of the Patent Act, does not define "articles … that infringe" and instead defines the acts that constitute infringement (direct, induced, or contributory). 35 U.S.C. § 271(a)-(c). Appellants contend that only direct and contributory infringement are tied to articles that infringe. But all three types of infringement can intimately involve imported articles. Indeed, such articles (even staple articles) can be the "tools" for inducing infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 n.13 (2005). Especially given the lack of definition in Section 337 of "articles … that infringe," there is no coherent basis

(and Appellants have provided none) for distinguishing among the types of infringement that Congress defined in Section 271. The Commission's interpretation is, therefore, the only sensible way to understand what Congress intended in Section 337.

The history and purpose of the statute, as borne out in the Commission's well-established precedent, confirm that conclusion. As originally enacted, Section 337 (and its 1922 predecessor) prohibited "[u]nfair methods of competition and unfair acts in the importation of articles into the United States," Tariff Act of 1930, Pub. L. No. 71-361, § 337, 46 Stat. 590, 703—a provision "broad enough to prevent *every type and form of unfair practice*," S. Rep. No. 67-595, pt.1, at 3 (1922) (emphasis added). The courts and the Commission have long understood that the provision prohibited acts of patent infringement—and, more specifically, that an importer violated Section 337 with an unfair act of inducing domestic infringement (including infringement of a method claim). In 1988, Congress expressly codified, for the first time, patent infringement (*i.e.*, acts involving "articles … that infringe" a U.S. patent) as a violation of Section 337. In doing so, Congress "'d[id] not intend to change the interpretation or implementation of current law as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights'" and, thus, "did not intend to weaken the ability of the ITC to prevent unfair acts." *Enercon GmbH v. ITC*, 151 F.3d 1376, 1382-83

(Fed. Cir. 1998) (quoting H.R. Rep. No. 100-576, at 633 (1988) (Conf. Rep.)). Thereafter, the Commission adhered to its view that inducing domestic infringement is an unfair act that violates Section 337 and continued to issue exclusion orders affirmed by this Court. And Congress repeatedly left that interpretation undisturbed. Congress thereby ratified what is otherwise already apparent from the text, history, and purpose: importing articles to induce domestic infringement violates Section 337.

A contrary conclusion (advocated by Appellants and adopted by the panel) would leave a gaping hole in the Commission's ability to enforce the statutory protections against unfair trade practices and permit foreign importers to induce domestic infringement with impunity. For example, importers of high-tech devices that infringe only after being loaded with certain software could evade Commission authority simply by importing the devices without software while actively instructing stateside partners how to load such software and use the devices after importation—which is exactly what happened here. In fact, *all method patents* would effectively be outside the Commission's remedial reach because method patents are only infringed post-importation—an extreme view that Appellants try to downplay, but that Appellants' *amici* embrace. *See* Microsoft Br. at 5; Dell Br. at 18. However, such improper trade practices are precisely the type that Congress intended that the Commission stop at the border.

At most, given that no statute expressly defines the key term at issue, Section 337 is ambiguous and this Court must, therefore, afford *Chevron* deference to the Commission's longstanding interpretation. That interpretation is, at a minimum, reasonable in light of the statutory text, history, and purpose. Appellants contend that the Commission's interpretation is not reasonable primarily because, according to Appellants, the Commission's exclusion order is overly broad and expands substantive patent rights. But that argument is unavailing because the only issue presented here is whether there is a violation of Section 337 in the first place—*not* whether the resulting remedial order is properly tailored. This Court has long recognized that the issues of Section 337 violations and Section 337 remedies are *separate*—and only the underlying violation is challenged here. In any event, far from expanding substantive patent rights, the exclusion order in this case is precisely tailored to exclude only articles that "infringe" claim 19 of the '344 patent—*e.g.*, articles imported to induce domestic infringement—and includes a certification provision to guard against excluding non-infringing articles. This Court has held that the Commission has broad authority to craft just such remedies. Appellants' argument that Customs cannot (or will not) properly administer the exclusion order misses the mark because that issue is also not presented.

The Commission properly held that Suprema's inducement of Mentalix's domestic infringement violates Section 337.

2. Substantial evidence supports the Commission's finding that Suprema induced infringement under 35 U.S.C. § 271(b). Appellants misrepresent the Commission's finding that Suprema was willfully blind to the existence of the '344 patent and the nature of Mentalix's infringing conduct as resting only on inaction. But the record is replete with Suprema's extensive and purposeful efforts to, for example, research Cross Match's products and Cross Match's patents and [[

]]

A221; *see* Appellants' Rehearing Br. 56-57. Suprema searched for "potentially relevant patents" using search terms that would have revealed the '344 patent; undisputedly reviewed another Cross Match Patent that incorporates by reference the '344 patent application; studied that other patent; and tried to modify its products to steer clear of that other patent. Against this backdrop, Suprema (purportedly) failed to obtain an opinion of counsel on its potential infringement exposure, which would have undoubtedly turned up the '344 patent. Applying Supreme Court precedent, the Commission considered the record as a whole and did not improperly rely on "mere inaction." The Commission determined that "*even if* Suprema did *somehow* fail to learn of the '344 patent" despite all of its purposeful activity, Suprema was at least willfully blind and "deliberately shielded

itself from the nature of the [Mentalix's] infringing activities." A223-24 (emphases added). The record was also replete with evidence that Suprema intended to induce Mentalix's infringement.

3. Finally, the Commission correctly construed and applied claim 19 in finding infringement. As the Commission held, the plain claim language "detecting a fingerprint area" and "detecting a fingerprint shape" does not require locating the exact contours of the image or calculating the area and shape to a certain level of precision. Measuring the height and width of a fingerprint image is sufficient. The Commission also correctly held that claim 19 does not require determining *whether* an image is oval-like shaped; it merely requires that the claimed method be used on oval-like shaped concentrations of black pixels. Therefore, substantial evidence supports the Commission's finding that certain accused products, which undisputedly calculate the exact height and width of oval-like shaped fingerprints, infringe claim 19.

## ARGUMENT

### I. THE COMMISSION PROPERLY FOUND A SECTION 337 VIOLATION BASED ON SUPREMA INDUCING MENTALIX'S POST-IMPORTATION INFRINGEMENT

Appellants argue that, contrary to the Commission's longstanding statutory interpretation, Section 337 does not provide for a violation where, as here, an importer induces post-importation direct infringement. Appellants' Rehearing Br.

27. Appellants thus contend that the Commission erred in finding a Section 337 violation based on Suprema inducing Mentalix's direct infringement of Cross Match's method claims. *Id.*; *see* A215, A229-30. Appellants are mistaken.

As the Commission is charged with administering Section 337, this Court reviews the Commission's statutory interpretation with deference under the familiar two-step framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *See Enercon GmbH v. ITC*, 151 F.3d 1376, 1381 (Fed. Cir. 1998). The Court first determines "'whether Congress has directly spoken to the precise question at issue.'" *Id.* (quoting *Chevron*, 467 U.S. at 842-43). If so, the inquiry is at an end. But if "the statute is 'silent or ambiguous with respect to the specific issue," the Court then determines "'whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 842-43). The Court will "uphold the ITC's interpretation of section 337 if it is reasonable in light of the language, policies and legislative history of the statute." *Id.* Filling any "statutory gap[s]" "involves difficult policy choices that agencies are better equipped to make" and the courts must accept the agency's reasonable reading even if it "differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

Here, the Commission's interpretation of Section 337 is correct because it is the only one consistent with Congress's unequivocal purpose based on the statutory text, history, and policy. But, at worst, the statute is ambiguous and the Commission's longstanding interpretation and practice of finding Section 337 violations based on importers inducing post-importation direct infringement is reasonable and entitled to *Chevron* deference. *See Enercon*, 151 F.3d at 1381.

### A. Congress Empowered The Commission To Prohibit Importers From Inducing Domestic Infringement

Under *Chevron* step 1, the Court seeks to "determine whether Congress's purpose and intent on the question at issue is judicially ascertainable" by "employ[ing] the 'traditional tools of statutory construction.'" *Timex V.I. v. United States*, 157 F.3d 879, 881-82 (Fed. Cir. 1998). Here, the Commission's interpretation is firmly grounded in the statutory text, history, and purpose of Section 337.

#### 1. The Statutory Text Confirms The Commission's Interpretation

Section 337 prohibits "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of *articles that – infringe* a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(i) (emphasis added). There is no dispute over the meaning of "articles," which the Commission has consistently

read as broadly "embrac[ing] imported items without limitations as to form or type of the articles." *Certain Digital Models, Digital Data, and Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances*, Inv. No. 337-TA-833, Comm'n Op. at 43 (Apr. 3, 2014); *see also* Appellants' Rehearing Br. 30 (quoting definitions of "article"). But, as Appellants concede, the Tariff Act does not define the term at issue here: "articles … that infringe." Appellants' Rehearing Br. 30.

Congress defined patent infringement in Section 271 of the Patent Act. 35 U.S.C. § 271 ("Infringement of patent"). But that provision does not define "articles … that infringe" either. Instead, the Patent Act defines *who* "infringes" (or is an "infringer") based on conduct involving items or methods that practice a patented invention. Congress provided for direct infringement and two types of indirect infringement (inducement and contributory):

> (a) … [W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
>
> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
>
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part

> of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(a)-(c).

The issue, therefore, is how to read Section 337's "articles that … infringe" in light of Section 271's definition of infringement. It is undisputed that all three types of infringement may involve articles. And nothing in Section 337 suggests that Congress intended to limit the types of infringement involving articles that the Commission can redress. Instead, Section 337 on its face permits the Commission to find a violation of the Tariff Act where the importation of articles is tied to any type of infringement—direct, inducement, or contributory. Insofar as the acts of infringement involve "articles," Section 337 empowers the Commission to stop such infringement at the border, as the Commission correctly held.

Appellants, however, propose a piecemeal incorporation of Section 271. Appellants contend that Congress only intended Section 337 to incorporate two of those three types of infringement. According to Appellants, only two types of infringement—direct infringement (Section 271(a)) and contributory infringement (Section 271(c))—involve articles that infringe. Appellants' Rehearing Br. 30-31. In contrast, Appellants assert, inducing infringement (Section 271(b)) "is not tied to any articles that infringe" at the time of importation because it is "conduct-

based." Appellants' Rehearing Br. 37-38; *see also id.* at 31 (Section 271(b) is "*in personam*, not *in rem* in nature"). Thus, Appellants (like the panel) conclude that imported articles can "infringe" for purposes of Section 337 only if they satisfy the requirements for either direct infringement or contributory infringement at the time of importation. This reasoning is fundamentally flawed.

Appellants' attempt to connect "articles that … infringe" to certain subsections of Section 271—(a) and (c), but not (b)—is incoherent. None of those subsections is *in rem* and none defines "infringing *articles*." Instead, all three are *in personam*, each sets forth a type of *conduct* that qualifies as infringing, and each can involve articles. That has been true since those sections were added in the Patent Act of 1952, Pub. L. No. 82-593, 66 Stat. 792, and it traces back to the first Patent Act, *see* 1 Stat. 109, 111 (1790) (making it illegal for "any person or persons [to] devise, make, construct, use, employ, or vend within these United States, any [patented] art, manufacture, engine, machine or device"). There is no statutory basis on which to single out inducement as uniquely unconnected to an article.

In *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, for example, the Supreme Court held that even when an item is a staple article, it nonetheless can be an integral "tool" in inducing infringement. 545 U.S. at 931-32, 940 n.13. As the Court explained, "the distribution of a product can itself give rise to liability where

evidence shows that the distributor intended and encouraged the product to be used to infringe" and, "[i]n such a case, the culpable act is not merely the encouragement of infringement but also the *distribution of the tool intended for infringing use*." *Id.* at 940 n.13 (emphasis added). The Court emphasized that "the Patent Act's exemption from liability for those who distribute a staple article of commerce" in Section 271(c) does not "extend to those who induce patent infringement" under Section 271(b). *Id.* at 935 n.10.[3] But Suprema's interpretation would do just that—immunizing importers from Section 337 liability for actively inducing infringement as long as the imported article is a staple article, even if the article is the "tool intended for infringing use." *Id.* at 940 n.13.

Appellants' distinction between inducement (Section 271(b)) and contributory infringement (Section 271(c)) is particularly unpersuasive. Both are forms of indirect infringement that depend on more than the "attribute[s]" of the articles themselves (Appellants' Rehearing Br. 52). They both depend on the state of mind of the indirect infringer—both require knowledge of the patent. *Global-Tech*, 131 S. Ct. at 2068 (explaining that "the two provisions have a common origin"); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111,

[3] On remand, the district court entered an injunction and tailored it to preserve non-infringing uses. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1236-37 (C.D. Cal. 2007). Exclusion orders are limited to infringing uses. *See, e.g.*, A234; A236; A400501-04.

2117 n.3 (2014) (Sections 271(b) and (c) "spring from common stock"). Also, both give rise to liability only if they lead to direct infringement. *Limelight Networks*, 134 S. Ct. at 2117 & n.3. In that sense, contributory infringement is no more completed "at the time of importation" than is induced infringement. Appellants' Rehearing Br. 34. Yet Appellants recognize that, even if the corresponding direct infringement occurs post-importation, contributory infringement *is* a basis for Section 337 violation. *Id.* at 30-31, 38.[4] That is correct. *See, e.g.*, *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1353-54 (Fed. Cir. 2010) (affirming Section 337 violation based on contributory infringement where direct infringement occurred post-importation). But it follows that the same is true for induced infringement.

More generally, the Commission and courts have long recognized that Section 337 violations can depend on more than the imported articles' characteristics at the time of importation. For example, the Commission finds violations based on post-importation false advertising and passing off the imported

[4] Appellants purport not to reach "whether contributory infringement is within the scope" of Section 337, Appellants' Rehearing Br. 31 n.7, but later contend that "articles that … infringe" means "unauthorized articles that (1) meet all of the elements of a claim of a patent; or (2) are *components especially made for infringement and are not staple articles*," *id.* at 38 (emphasis added); *see also id.* at 30-31 (arguing that "the only bases for infringement liability under section 271 involving articles are section 271(a) (direct infringement …); and section 271(c) (contributory infringement …)").

goods. In *Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247, 260 (C.C.P.A. 1930), the court upheld a violation where the importer sold goods to domestic purchasers, who then fraudulently passed them off to consumers. The court analogized to inducing patent infringement and explained that the violation was proper because "'[o]ne who induces another to commit a fraud and furnishes the means of consummating it is equally guilty and liable for the injury.'" *Id.* (citation omitted). And the Commission has found violations based on such unfair acts many times since.[5] Moreover, the statute expressly provides for violations based on post-importation conduct—*i.e.*, "sale after importation" of articles that infringe (Section 337(a)(1)(B)(i)). The statute also expressly provides for violations based on pre-importation conduct—*i.e.*, whether the product was manufactured abroad by a process that would infringe a U.S. method patent (Section 337(a)(1)(B)(ii))—a fact that is "not discernable from an examination of the product." *Sealed Air Corp. v. ITC*, 645 F.2d 976, 989 (C.C.P.A. 1981). The statutory scheme, therefore, expressly contemplates violations based on more than the inherent qualities of the articles at the moment of first importation.

---

[5] *See, e.g.*, *Certain Compound Action Metal Cutting Snips and Components Thereof*, Inv. No. 337–TA–197, Comm'n Action and Order (July 19, 1985); *Certain Apparatus for Installing Electrical Lines and Components Therefor*, Inv. No. 337-TA-196, Comm'n Op. at 16 & n. 24 (June 20, 1986); *Certain Plastic Food Storage Containers*, Inv. No. 337–TA–152, Comm'n Action and Order at 7, 9-11 (July 13, 1984).

At root, Appellants fail to appreciate that the Commission's authority for finding a Section 337 violation (and then issuing prospective exclusion or cease and desist orders) typically requires the complainant to show the respondents' past, *completed* infringement (or other unfair act). Here, the Commission did not find that "mere sale or importation of a staple article by itself" is "inducement of infringement." Appellants' Rehearing Br. 32. Rather, the Commission found that Suprema induced Mentalix's infringement of the '344 patent by importing Suprema scanners and instructing Mentalix how to adapt Mentalix's software and use the scanners to perform the patented fingerprint capturing method. Suprema collaborated extensively with Mentalix prior to and including importation of the scanners and, after importation, Mentalix added its software and used the scanners in the infringing manner Suprema's inducing conduct contemplated. In other words, when the Commission found a violation in this case, the infringement—inducement and direct—*had already occurred* and was closely tied to Suprema's imported scanners, the "tool[s] intended for infringing use." *Grokster*, 545 U.S. at 940 n.13. Therefore, those are "articles that … infringe" for purposes of Section 337 and the Commission may prevent continued infringement by barring those articles at the point of importation. That is especially so where, as here, the record shows that the infringing products continued to be imported after the first direct infringement. *See, e.g.*, A400759-62; A401375; A401379-80; A200312-13;

A400638; A400640-43; A400653-54; A220-24. Appellants' attempt to curtail the Commission's authority is unsupported by the statutory language.

### 2. The Statutory History Confirms The Commission's Interpretation

The statutory and legislative history confirm the Commission's interpretation and establish that Congress ratified the agency's exercise of this authority. When Congress amends a statute without disturbing a well-established administrative or judicial interpretation—especially where the legislative history makes plain that Congress is aware of that interpretation—it "'is persuasive evidence that the interpretation is the one intended by Congress.'" *Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 983 (1986) (citation omitted); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845-46 (1986) (citation omitted); *see also Passaro v. United States*, 774 F.2d 456, 458 (Fed. Cir. 1985). Indeed, "congressional inaction in the face of long-standing agency practice can rise to the level of implied adoption." *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1322 (Fed. Cir. 2005); *see also ICC v. Texas*, 479 U.S. 450, 458 (1987) (courts may *presume* Congress is aware of an agency's "consistent practice"); *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1312 n.10 (Fed. Cir. 2001) (collecting cases); *San Huan New Materials High Tech, Inc. v. ITC*, 161 F.3d 1347, 1355 (Fed. Cir. 1998).

For decades, the Commission has found Section 337 violations based on induced infringement under Section 271(b) where the direct infringement (including infringement of method claims) occurs post-importation. Congress left the agency's understanding and practice undisturbed multiple times—with a 1988 amendment, and several times thereafter. That is persuasive evidence that Congress intended—and ratified—the Commission's interpretation.

In 1922, Congress enacted the predecessor to Section 337, prohibiting "unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale," the effect of which is to injure a domestic industry. Tariff Act of 1922, Pub. L. No. 67-318, § 316, 42 Stat. 858, 943. That provision was "broad enough to prevent *every type and form of unfair practice*." S. Rep. No. 67-595, pt.1, at 3 (1922) (emphasis added). In 1930, Congress recodified the same language as Section 337 of the Tariff Act of 1930, Pub. L. No. 71-361, § 337, 46 Stat. 590, 703 (1930). The courts and the Commission recognized early on that patent infringement, although not initially identified specifically in Section 337, is one such unfair act. *See*, *e.g.*, *In re Von Clemm*, 229 F.2d 441, 443-44 (C.C.P.A. 1955). And "it is evident from the language used that Congress intended to allow wide discretion in determining what practices are to be regarded as unfair." *Id.* at 444. Prior to 1988, the Commission consistently held, and this Court affirmed, that an importer that induces post-importation infringement (for

example, of a method patent) commits an "unfair act" under Section 337. *See*, *e.g.*, *Certain Molded-In Sandwich Panel Inserts & Methods for Their Installation*, Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982) ("*Sandwich Panel Inserts*"), *aff'd sub nom. Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305, 1310, 1317 (Fed. Cir. 1983); *infra* at 35-40 & n.9.

In 1988, Congress amended the statute to expressly provide patent infringement as a basis for a Section 337 violation. Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1342(a)(1), 102 Stat. 1107, 1212 (1988). Congress added the current language, making unlawful "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation … of articles that … infringe" a U.S. patent. 19 U.S.C. § 1337(a)(1)(B)(i). And, as this Court has held, the legislative history makes plain that, "in passing the 1988 amendments to section 337, Congress *did not intend* to weaken the ability of the ITC to prevent unfair acts." *Enercon*, 151 F.3d at 1383 (emphasis added). In particular, the Court held that "'[i]n changing the wording with respect to importation or sale [*i.e.*, by adding Section 337(a)(1)(B)(i))], the conferees *do not intend to change the interpretation or implementation of current law* as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights.'" *Id.* at 1382 (quoting H.R. Rep. No. 100-576, at 633 (1988) (Conf. Rep.)). In other words, Congress intended

to retain the full scope of the "unfair acts" of patent infringement, as "interpret[ed]" and "implement[ed]" by the Commission. *Id.*; *see also* H.R. Rep. No. 100-40, at 155 (1987) ("As indicated by the scope of its language, section 337 was designed to cover a broad range of unfair acts."). In fact, the provision authorizing the Commission to issue cease and desist orders—then and now—still refers to all Section 337 violations (including patent infringement violations) as "unfair methods or acts." 19 U.S.C. § 1337(f). Thus, Congress was aware of the Commission's interpretation of Section 337 and intended the 1988 amendments not to restrict the scope of the Commission's authority to find a violation based on induced infringement where the direct infringement occurred post-importation. *See also Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003) ("Congress is presumed to legislate against the backdrop of existing law.").[6]

Moreover, after the 1988 amendments, the Commission adhered to its view, finding Section 337 violations for inducing post-importation infringement of method claims within the United States. *See infra* at 35-40 & n.9. Since, Congress has amended Section 337 numerous times without disturbing the agency's understanding. *See, e.g.*, Pub. L. No. 102-563, 106 Stat. 4237, 4248 (1992); Pub.

---

[6] In fact, "the 1988 amendments were intended to *strengthen* the statute's effectiveness in eliminating the problems caused by the importation of goods that infringe U.S. intellectual property rights." *Enercon*, 151 F.3d at 1382-83 (emphasis added).

L. No. 103-465, 108 Stat. 4909, 4943 (1994); Pub. L. No. 104-295, 110 Stat. 3514, 3527 (1996); Pub. L. No. 106-113, 113 Stat. 1501, 1501A-594 (1999); Pub. L. No. 108-429, 118 Stat. 2434, 2592 (2004).

Consequently, "[t]he legislative history leaves no doubt that Congress was aware of, and approved of," the Commission's statutory interpretation. *San Huan New Materials High Tech*, 161 F.3d at 1355. For example, in *Disabled American Veterans*, this Court held that Congress ratified a Veterans Affairs Department practice because "[b]oth prior and subsequent to the enactment of [the statutory section at issue], Congress has done nothing to disturb this well-settled agency practice, and … this inaction was intentional." 419 F.3d at 1322.[7] The same is true here. At a minimum, the legislative and statutory history is "'persuasive evidence that the [Commission's] interpretation is the one intended by Congress.'" *Young*, 476 U.S. at 983 (citation omitted). Appellants' interpretation of the statute improperly curtails the Commission authority that Congress deliberately left intact.

Appellants argue that the legislative history does not show that Congress endorsed the Commission's broad authority to prevent all unfair acts involving

---

[7] *See also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (holding congressional ratification of agency's longstanding interpretation prevents agency from changing course). *Department of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 345-46 (1994) (cited at Appellants' Rehearing Br. 41 n.11) is not to the contrary because the available evidence in that case "suggest[ed] the opposite" of the proposed statutory interpretation.

patent infringement. According to Appellants, Congress intended the 1988 amendments to *narrow* the Commission's authority as to patents (under Section 337(a)(1)(B)) by using the term "articles" and separating them from the residual class of "unfair acts" (under Section 337(a)(1)(A)). But this Court rejected that same argument in *Enercon*, 151 F.3d at 1383. In that case, the issue was whether Congress's addition in 1988 of the "sale for importation" language in Section 337(a)(1)(B) limited the range of unfair patent infringement acts that the Commission could redress. There, as here, the appellant argued that Congress "'limit[ed] the Commission's authority to reach unfair acts in their incipiency'" and did not "maintain prior law as applied by the ITC to 'unfair acts'" involving patent infringement. Opening Br. of Appellant at 30-31, *Enercon*, No. 97-1554, 1997 WL 33545703 (Fed. Cir. Dec. 15, 1997). This Court found otherwise and held that the 1988 amendments did "'not intend to change the [Commission's] interpretation or implementation of current law'" as applied to intellectual property rights and held that Congress did not "intend[] to separate accused infringement of intellectual property rights covered by subsection[] (B) [and other intellectual property subsections] from the general class of unfair acts covered by subsection (A)." *Enercon*, 151 F.3d at 1383.

This Court has, therefore, already rejected Appellants' reading of the relevant statutory history. This Court should adhere to that understanding,

especially given the "special force" that *stare decisis* has on statutory interpretation. *Robert Bosch, LLC v. Pylon Mfg. Corp*., 719 F.3d 1305, 1316-17 (Fed. Cir. 2013) (en banc) (adhering to earlier panel's interpretation).

**3. The Statutory Purpose Confirms The Commission's Interpretation**

Finally, the Commission's interpretation is the only one consistent with the overriding purpose of the Tariff Act as a trade remedy. As the Commission recently explained, "[t]he legislative history emphasizes the central purpose of preventing *every type of unfair act or practice in connection with imported articles* …, and endeavors to strengthen the reach of Section 337 to provide effective relief to U.S. industries that are harmed by imported articles." *Certain Digital Models*, Comm'n Op. at 46 (emphasis added). Congress has consistently recognized the same purpose. *See*, *e.g*., H.R. Rep. No. 100-40, at 155 (1987); S. Rep. No. 67-595, pt.1, at 3 (1922); *supra* at 27-31. And Congress has repeatedly broadened the statute to effectuate that purpose—especially as to safeguarding intellectual property. For example, in 1988, in codifying patent infringement as an unfair act under Section 337 Congress "strengthen[ed] [the statute's] effectiveness" in protecting intellectual property rights by eliminating the requirement to show domestic injury because that requirement "ma[de] no sense in the intellectual property arena." S. Rep. No. 100-71, at 128 (1987); *see Enercon*, 151 F.3d at 1382-83; Pub. L. No. 100-418, § 1342, 102 Stat. 1212-13 (1988).

The interpretation espoused by Appellants (and the panel) would substantially constrain the Commission's ability to perform its statutory function, allowing importers to circumvent the statute's critical protections against unfair trade practices. Importers could aid and abet direct infringers with impunity—for example, importing an article and providing explicit instructions on how to assemble it into an infringing product or how to use it to perform an infringing method—and, so long as the final assembly or use only occurs after importation, the Commission would be "powerless" to stop it. *Suprema*, 742 F.3d at 1357. Appellants would vitiate the Commission's ability to stop inducement at the border and "legalize[] the most common and least sophisticated form of circumvention, importation of the article in a disassembled [or not complete] state." *Id.* at 1376-77 (Reyna, J., dissenting). As commentators have recognized, that approach, adopted by the panel, would "drastically curtail the reach of 19 U.S.C. § 1337." Allen M. Sokal & Joyce Craig, *Federal Circuit Discards the "Nexus" Test for Infringement at the ITC, Potentially Narrowing the Scope and Effectiveness of § 337*, 41 AIPLA Q.J. 637, 639 (2013).

Appellants' assurances of a purportedly limited impact ring hollow. Appellants allow that inducement can still be a basis for a violation—but only if the article infringes at time of importation or is not capable of non-infringing uses. Appellants' Rehearing Br. 31 & n.8; *see also Suprema*, 742 F.3d at 1361 n.4. Of

course, in those situations, the importer will already violate Section 337 as a direct or contributory infringer. That would leave no *independent* basis for preventing an importer from inducing infringement by importing its products. Appellants' suggestion (at 26) to bring such matters in federal court is also misplaced. Patentees might well face insurmountable difficulties regarding personal jurisdiction and enforcement. *See Suprema*, 742 F.3d at 1376-77 (Reyna, J., dissenting); *see also Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 771 (W.D. Va. 2012); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 521 (D.N.J. 2011); *Computer Stores Nw., Inc. v. Dunwell Tech, Inc.*, No. 10-284, 2011 WL 2413825, at *9 (D. Or. June 9, 2011). In any event, Congress intentionally provided the Commission as an alternative forum "to provide distinct relief at the border to stop imports of articles that are used in unfair trade." *Suprema*, 742 F.3d at 1377 (Reyna, J., dissenting); *see also Spansion*, 629 F.3d at 1359 (Congress designed Commission's remedial scheme to be "quite different"); *Fuji Photo Film Co. v. Benun*, 463 F.3d 1252, 1255 (Fed. Cir. 2006) (Commission can provide "markedly" different remedies). The Commission's interpretation is thus consistent with the purpose of Section 337.

### B. The Commission's Interpretation Is Entitled To Deference

Even if the statute's text, history, and purpose did not plainly show that Congress intended the Commission to enforce section 337 to prevent induced

infringement leading to post-importation direct infringement (they do), at worst the statute is "'silent or ambiguous'" on the meaning of "articles that … infringe."[8] Therefore, under *Chevron* step 2, the Court must uphold the Commission's longstanding interpretation of Section 337 because "it is reasonable in light of the language, policies and legislative history of the statute." *Enercon*, 151 F.3d at 1381 (affording *Chevron* deference to Commission interpretation of Section 337(a)(1)(B)). The Commission is uniquely well-suited—in light of its deep expertise as a trade forum and staunch mandate to guard against any and all "unfair acts"—to reasonably interpret Section 337 in light of Section 271(b). *See id.*; *see also, e.g.*, *Abbey v. United States*, 745 F.3d 1363, 1373-74 (Fed. Cir. 2014) (deferring to agency's harmonization of two statutory provisions).

#### 1. The Commission's Interpretation Is Longstanding And Has Been Repeatedly Affirmed By This Court

For over three decades, the agency has exercised its authority to find a Section 337 violation based on induced infringement even where the direct infringement occurs post-importation. Indeed, the Commission has frequently found a violation based on inducement of a *method* claim, which, by definition, can only be infringed post-importation.

---

[8] As discussed, neither the Tariff Act nor the Patent Act defines the term.

For example, in *Sandwich Panel Inserts*, the Commission found a violation where the importer induced infringement of a patented method by importing products (airplane parts) and training domestic aerospace companies to use them (and thus practice the patented method) post-importation. 1982 WL 61887, *aff'd sub nom. Young Eng'rs*, 721 F.2d at 1310, 1317. Similarly, in *Certain Minoxidil Powder, Salts & Compositions for Use in Hair Treatment*, the Commission found induced infringement of a patented method using an imported compound (minoxidil), even though direct infringement only occurred post-importation by the "end user." Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988). Although "[n]o respondent was shown to infringe these claims directly," the "respondents who have sold topical minoxidil to the consumer and provided information through advertising and labeling on how to use it to promote hair growth have induced infringement" of the method claims. *Id.* at *6.

And the Commission finds violations based on induced infringement even when *rejecting* contributory infringement. In *Certain Digital Televisions*, for example, the Commission found a violation because the importers induced domestic infringement of a patented method for receiving digital television signals, but held that "the record does not support a finding of contributory infringement." Inv. No. 337-TA-617, ALJ Op., 2008 WL 5324356 (Nov. 17, 2008), *aff'd in relevant part*, Comm'n Op., 2009 WL 1124461, at *2, *4-5 (Apr. 23, 2009), *aff'd*

*sub nom. Vizio, Inc. v. ITC*, 605 F.3d 1330 (Fed. Cir. 2010). Similarly, in *Certain GPS Devices*, the Commission held that the respondents violated Section 337 by "actively induc[ing]" domestic infringement of patented GPS methods but at the same time held that complainants "failed to show that [respondents] contributorily infringe." Inv. No. 337-TA-602, ALJ Op., 2008 WL 5051308, at *52-53, *92-93, *110 (Aug. 8, 2008), *aff'd in relevant part*, Comm'n Op. (public vers. dated Jan. 27, 2009), *aff'd sub nom. SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). Citing its "longstanding practice," the Commission emphasized that "section 337 [is] equally applicable to articles that infringe method claims." *Certain GPS Devices*, Comm'n Op. at 16.[9]

Nonetheless, Appellants contend that there is no consistent agency practice because the agency has never applied its longstanding interpretation in the precise

---

[9] *See also, e.g., Certain Optoelectronic Devices*, Inv. No. 337-TA-669, 2011 WL 7628061, at *9-10 (Nov. 2011) ("There is no distinction between direct or indirect infringement in Commission remedial orders and the language 'covered by,' found in the Commission's orders, applies to both types of infringement."), *aff'd sub nom. Emcore Corp. v. ITC*, 449 F. App'x 918 (Fed. Cir. 2011); *Certain Hardware Logic Emulation Systems*, Inv. No. 337-TA-383, Comm'n Op. 19 (Mar. 31, 1998) (Section 337 "'embraces *any* direct, contributory and *induced* infringement'" as "provided for in the patent statute" (emphasis added)); *Certain Chemiluminescent Compositions*, Inv. No. 337-TA-285, ALJ Op. at 38 n.12, 42 (Apr. 13, 1989) (finding violation based on contributory and induced infringement even though method claim "is not directly infringed by the importation"), *aff'd*, Comm'n Op. at 2-3 (Aug. 17, 1989); General Counsel, U.S. ITC, *Causes of Action Under Section 337*, USITC GC-G-243, 1983 WL 206913, at *1-2 (Sept. 30, 1983) (Section 337 violation can be based on inducement under Section 271(b)); *Suprema*, 742 F.3d at 1372 & n.2 (Reyna, J., dissenting) (collecting cases).

factual circumstances here. Appellants' Rehearing Br. 42-43. But that has never been the litmus test for *Chevron* deference. Agencies are allowed to develop their policies and practices using adjudication or rulemaking—or both. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202-03 (1947) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."). As the Supreme Court has explained, "'[a]djudicated cases may and do … serve as vehicles for the formulation of agency policies, which are applied and announced therein,' and that such cases 'generally provide a guide to action that the agency may be expected to take in future cases.'" *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 293-94 (1974) (citation omitted). The courts must defer to those reasonable interpretations. *See Enercon*, 151 F.3d at 1381; *see also Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1361 (Fed. Cir. 2007) (deferring to agency rulemaking). Here, the Commission has repeatedly explained its statutory interpretation under which there is a Section 337 violation when an importer induces domestic infringement of a method claim.

Appellants' heavy reliance on *Certain Electronic Devices* (*e.g.*, Appellants' Rehearing Br. 29-30) is particularly misplaced because that decision, on its own terms, *bolsters* the Commission decision here. In that case, the Commission reiterated its view, based on an analysis of the statutory provisions, that "section

337 may reach articles involved in indirect infringement of method claims"—inducement or contributory infringement—even when the articles as imported do not directly infringe. Inv. No. 337-TA-724, 2012 WL 3246515, at *13 (Dec. 21, 2011). Although the imported devices in that case were staple articles (computers) capable of substantial non-infringing uses, the Commission repeatedly stressed that there *would* have been a Section 337 violation if the complainant had demonstrated indirect infringement of the asserted method claims. *See*, *e.g.*, *id*. at *12-13, *18. Nor can that reasoned agency view be brushed aside as mere dicta. *Cf*. *Suprema*, 742 F.3d at 1363. The Commission found that it had jurisdiction over the investigation precisely because the complainant "alleged sufficient facts" as to induced infringement (and other theories) that, if proven, would show the respondent violated Section 337. 2012 WL 3246515, at *7 (citing inducement allegations). Thus, the Commission held that a violation could be premised on induced infringement, even where direct infringement occurs post-importation—which is exactly what happened here.

*Certain Digital Models* (cited at Appellants' Rehearing Br. 33) likewise offers Appellants no support and instead supports the Commission's action here. In that case, the Commission held that that the term "articles" in Section 337 has a "broad meaning" that "embraces imported items without limitations as to form or type of the articles," including digitally transmitted files. *Certain Digital Models*,

Comm'n Op. at 41. The Commission explained that "the meaning of 'articles' is intended to encompass imported items of commerce as to which a finding of infringement of a patent … may be sustained." *Id.* at 42. The Commission further stressed that it "must construe the term 'articles' in such a manner as to faithfully implement the express purpose for which Congress enacted the statute" and "[t]he central purpose of Section 337, since the enactment of the original statute in 1922, has been to prevent *every type of unfair act or practice* in import trade that harms U.S. industries." *Id.* at 45 (citing S. Rep. No. 67-595, at 3 (1922) (emphasis added)). Similarly, here the Commission appropriately read "articles that infringe" as encompassing every type of patent infringement in import trade—including an importer that induces domestic infringement.

### 2. The Commission's Interpretation Is Reasonable

The Commission's interpretation is reasonable because it is consistent with the text, history, and purpose of Section 337, for the reasons discussed (*supra* at 18-34). *See Enercon*, 151 F.3d at 1381; *see also TianRui Group Co. v. ITC*, 661 F.3d 1322, 1324 (Fed. Cir. 2011) (upholding interpretation of Section 337(a)(1)(A)); *Corning Glass Works v. ITC*, 799 F.2d 1559, 1565 (Fed. Cir. 1986) (same, Section 337(a)). Appellants contend that the Commission's interpretation is not reasonable because, according to Appellants, (a) it renders other provisions superfluous and (b) the Commission's exclusion order

impermissibly expands substantive patent rights and is inconsistent with Customs' enforcement mechanism. Appellants' Rehearing Br. 28. Appellants are wrong.

**a. The Commission's Interpretation Does Not Render Any Language Superfluous**

Appellants contend that the Commission's interpretation fails to give effect to "articles that … infringe" by rendering superfluous the distinction between Section 337(a)(1)(A) and (B). Appellants' Rehearing Br. 45-46. But Appellants fail to recognize that the key difference between those subsections (a difference the Commission's interpretation preserves) is that subsection (A) requires a showing of injury to a domestic industry whereas subsection (B) purposely eliminated that showing for patent infringement cases.

Subsection (A), using language held over from the original 1922 and 1930 tariff acts, prohibits "unfair methods of competition and unfair acts in the importation of articles" "other than" those involving intellectual property, which are set out in the other subsections, including patents in subsection (B). 19 U.S.C. § 1337(a)(1)(A). Violations based on this catch-all provision must still show injury to a domestic industry. *Id.* § 1337(a)(1)(A)(i)-(iii). By contrast, subsection (B) intentionally omits those additional requirements. In 1988, when Congress codified patent infringement as an unfair act under Section 337 (as the Commission and courts had long held), it also made it easier to show a violation based on patent infringement by removing the domestic injury requirement. *See* S.

Rep No. 100-71, at 127-29 (1987); H.R. Rep. No. 100-60, at 9-10 (1987); H.R. Rep. No. 100-40, at 154-56 (1987). The Commission's interpretation does not affect that distinction and does not render anything superfluous. As discussed, this Court previously rejected a similar argument. *See Enercon*, 151 F.3d at 1383; *supra* at 31-32.

**b. The Scope Of The Commission's Exclusion Order Is Proper And, Regardless, Not At Issue Here**

Appellants also contend that the Commission's interpretation of what qualifies as a violation under Section 337 is unreasonable because it results in a remedy that is both overbroad (it "expand[s] the substantive rights of patent holders by effectively giving them hold-up power over the importation of staple articles of commerce") and unworkable (Customs cannot enforce it). Appellants' Rehearing Br. 47-53. Appellants argue that Section 337(a)(1)(B)(i) does not "authorize[] [the] Commission to exclude from the United States staple articles of commerce." *Id.* at 47. Appellants' argument is flawed.

First, Appellants are conflating the definition of a *violation* under in Section 337(a) with the Commission's authority to issue a *remedy*, such as an exclusion order under Section 337(d) or a cease and desist order under Section 337(f). However, "Congress did not intend the Commission to consider questions of remedy when the agency determines whether there is a violation" because "the issues of violation and remedy are *separate*." *Bally/Midway Mfg. Co. v. ITC*, 714

F.2d 1117, 1123 (Fed. Cir. 1983) (emphasis added). The Commission must first "determine the question of violation *even though it might not issue any remedy if it finds a violation*." *Id.* at 1123 (emphasis added). Then, the Commission "is required to consider a different and broader range of issues in deciding the remedy question than in deciding whether there is a violation." *Id*. at 1122.

The only issue presented in this appeal is whether the Commission had authority to find a Section 337 violation in the first place. *See* Appellants' Rehearing Br. 3 (Issue 1); Appellants' Principal Br. 2 (Issue 1). Appellants do not contend that the Commission erred in refusing to further narrow the remedial orders.[10] Appellants instead argue that the breadth of the remedial orders and Customers' purported difficulty in enforcing it mean that there cannot be a Section 337 violation *at all*. That is precisely backwards. Remedial considerations do not speak to the antecedent question of whether there is a Section 337 violation.

<u>Second</u>, even if the issue were presented, the scope of the limited exclusion order in this case does not expand substantive patent rights and is well within the Commission's discretion in light of its "expertise in evaluating the likelihood of injury to American business." *Sealed Air Corp.*, 645 F.2d at 989. The

---

[10] Appellants challenged the breadth of the Commission's remedial authority in various ways below, *see* A500047-59, but has not pressed those arguments here. The statute provides a mechanism for "modification" of an exclusion order in appropriate circumstances. 19 U.S.C. § 1337(k).

Commission "has broad discretion in selecting the form, scope, and extent of the remedy, and judicial review of its choice of remedy necessarily is limited." *Viscofan, S.A. v. ITC*, 787 F.2d 544, 548 (Fed. Cir. 1986). Indeed, "'the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.'" *Id.* (citation omitted); *see also Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1208-09 (Fed. Cir. 1990).

Appellants argue that the Commission's exclusion order improperly gives Cross Match "hold-up power" to prevent mere distribution of staple articles. Appellants' Rehearing Br. 47-48. The order does no such thing. On its own terms, the exclusion order (and cease and desist order) here only applies insofar as the articles "infringe" the '344 patent—*i.e.*, insofar as they are the "tools" that Suprema is using to induce infringement. *Grokster*, 545 U.S. at 940 n.13. The order does not exclude all Suprema scanners—or even all of the Suprema scanners at issue in this case. It only excludes Suprema scanners and software insofar as they are involved in inducing infringement of the '344 patent. *See* A400502 (excluding those that "infringe … claim 19 of the '344 patent"). In other words, it does not affect the "'mere sale'" (or mere importation) of staple articles (Appellants' Rehearing Br. 32 (quoting *Rohm & Haas Co. v. Dawson Chem. Co.*, 599 F.2d 685, 703 n.24 (5th Cir. 1979), *aff'd*, 448 U.S. 176 (1980))—it only

affects imports that Suprema insists on using to induce domestic infringement. Thus, the remedy is precisely coextensive with the patent rights.[11]

In addition, to mitigate any residual risk of over-enforcement, the Commission included a provision for certifying non-infringement. Under that provision, Appellants may be asked to "certify that they are familiar with the terms of this Order, that they made appropriate inquiry," and "that, to the best of their knowledge and belief, the products being imported are not excluded from entry under … this Order." A400502-03. The Commission routinely includes (and this Court routinely upholds) such provisions to ensure non-infringing products are not improperly excluded, especially in cases where Customs might have difficulty identifying the products upon inspection. For example, in *Certain GPS Devices*, after holding that the respondents violated Section 337 by inducing infringement of (but not contributorily infringing) a method claim, the Commission included a certification provision "to minimize the possibility that non-infringing products will be excluded" because "Customs is unable to easily determine by inspection

---

[11] Courts are similarly willing to prohibit inducement schemes. *See, e.g.*, *Merial Ltd v. Cipla Ltd*., 681 F.3d 1283, 1302-04 (Fed. Cir. 2012); *Forest Labs., Inc. v. Ivax Pharm., Inc*., 501 F.3d 1263, 1271-72 (Fed. Cir. 2007); *Grokster*, 518 F. Supp. 2d at 1236-37. And Appellants admit that district court relief "'might extend to an injunction against continuing to "actively induce" infringement'" under Section 271(b). Appellants' Rehearing Br. 32 (citation omitted). Regardless, Congress intentionally empowered the Commission to provide "markedly" different remedies. *Fuji Photo Film Co.*, 463 F.3d at 1255.

whether an imported product violates" the exclusion order. Comm'n Op. at 20, *aff'd sub nom. SiRF Tech., Inc.*, 601 F.3d at 1333. The same was true in *Certain Digital Televisions*, Inv. No. 337-TA-617, Comm'n Op., 2009 WL 1124461, at *6 (Apr. 23, 2009), *aff'd sub nom. Vizio, Inc. v. ITC*, 605 F.3d 1330 (Fed. Cir. 2010).[12] As in such cases, the remedy here "represents a careful and common-sense balancing of the parties' conflicting interests." *Hyundai Elecs. Indus.*, 899 F.2d at 1209 (affirming limited exclusion order including certification provision).[13]

Appellants themselves urged the Commission to include a certification provision precisely **[[**

**]]** A500053.

Appellants acknowledged that **[[**

**]]** A500053-54 (citing *Laser Bar Code Scanners*, Comm'n Op. at 23;

---

[12] *See also, e.g.*, *Certain Laser Bar Code Scanners and Scan Engines*, Inv. No. 337-TA-551, Comm'n Op. at 23 (June 14, 2007); *Certain Semiconductor Chips with Minimized Chip Package Size*, Inv. No. 337-TA-605, Comm'n Op. at 72 (June 3, 2009); *Certain Condensers*, Inv. No. 337-TA-334 (Remand), Comm'n Op. at 39 (Sept. 10, 1997).

[13] Nor would the exclusion order be problematic even if it "effectively shifts to would-be importers of potentially infringing articles, as a condition of entry, the burden of establishing noninfringement." *Hyundai Elec. Indus.*, 899 F.2d at 1210.

*Semiconductor Chips*, Comm'n Op. at 72; *Digital Televisions*, 2009 WL 1124461, at *6)). Appellants cannot complain about that now.

Third, to the extent that Appellants take issue with how Customs enforces the orders, any such challenge is not properly before the Court. For example, in *Hyundai Electronics Industries*, the Court rejected a respondent's complaint about "the certification procedure [the respondent] expects the Customs Service to devise when it implements the Commission's order" because it was "not before us and cannot be contested in a proceeding seeking review of the Commission's underlying remedy determination." 899 F.2d at 1210. The same is true here. Regardless, Customs is well-versed in enforcing exclusion orders with certification provisions, even when the relevant facts are "not discernible from an examination of the product" itself and instead depend on additional factors. *Sealed Air Corp.*, 645 F.2d at 987.

* * * * *

Appellants' attempts to undermine the Commission's interpretation of Section 337 are unfounded. The Commission's understanding, applied here as it has been for decades, is consistent with the statutory text, history, and purpose. At worst, the Commission's interpretation is a reasonable reading of the ambiguous way in which Section 337 of the Tariff Act incorporates Section 271 of the Patent Act. Especially in light of the agency's broad congressional mandate to administer

Section 337 and its expertise in policing unfair import-related impositions on U.S. businesses and innovators, this a quintessential case for *Chevron* deference. The Commission's interpretation should be affirmed.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE COMMISSION'S FINDING THAT SUPREMA INDUCED INFRINGEMENT

Appellants challenge the merits of the Commission's inducement ruling, arguing that the Commission erred in its factual findings that Suprema (1) willfully blinded itself to the infringing nature of Mentalix's activities, and (2) aided and abetted Mentalix's infringement. Appellants' Rehearing Br. 54-61. Appellants seek to reframe the Commission's straightforward factual findings as legal errors. Appellants are wrong on the law and the facts.

The Court reviews factual findings, such as induced infringement, for substantial evidence. *Spansion, Inc. v. ITC,* 629 F.3d 1331, 1344 (Fed. Cir. 2010); *see also* 5 U.S.C. § 706(2)(E). The Court must affirm the Commission's determination "'if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion'" and "'even if it is possible to draw two inconsistent conclusions from evidence in the record.'" *Nippon Steel Corp. v. United States.*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citations omitted). The question is not whether the Court "would have reached the same result'" in the first instance. *Id.* (citation omitted).

Under Section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Inducement is a factual finding that this Court reviews for substantial evidence. *Global-Tech*, 131 S. Ct. at 2068; *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1056, 1059-61 (Fed. Cir. 2010). Establishing induced infringement requires showing that "once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) (citation omitted); *see also Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("To prove inducement of infringement, … the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."). The knowledge requirement may be satisfied by actual knowledge or the doctrine of "willful blindness," under which "the defendant must subjectively believe that there is a high probability that a fact exists" and "the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 131 S. Ct. at 2070. Induced infringement may be established by circumstantial evidence. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008).

The Commission's inducement findings—on willful blindness and on aiding and abetting—are well-supported by substantial evidence and consistent with governing law.

### A. Substantial Evidence Supports The Commission's Finding Of Willful Blindness

Appellants challenge the Commission's willful blindness finding, arguing that the Commission (1) applied the wrong standard (merely "a negligence standard"), (2) improperly focused on Suprema's "inaction," and (3) effectively imposed a duty to obtain an opinion of counsel. Appellants' Rehearing Br. 54-60. Appellants are wrong on the law and the evidentiary record. *See* Cross Match's Principal Br. 30-37.

#### 1. The Commission Applied The *Global-Tech* Standard

The Commission applied the proper standard for willful blindness, as directed by the Supreme Court in *Global-Tech*. The Commission explained that, under *Global-Tech*, "'a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.'" A214 (quoting *Global-Tech*, 131 S. Ct. at 2071-72). The Commission emphasized that "'merely a known risk that the induced acts are infringing' is insufficient to establish knowledge of infringement." *Id.* (quoting *Global-Tech*, 131 S. Ct. at 2071-72). Applying that standard, the Commission found that "the record evidences Suprema's subjective

belief of the high probability that Cross Match's scanner technology was patented, and therefore Suprema was aware of the likelihood that the scanner products it was developing would be covered by Cross Match's patents, but took steps to avoid learning for certain that they were" and "deliberately shielded itself from the nature of the infringing activities it actively encouraged and facilitated Mentalix to make." A223-24 (citing *Global-Tech*).

#### 2. The Commission's Willful Blindness Finding Is Supported By Substantial Evidence Just As In *Global-Tech*

Substantial evidence supports the Commission's willful blindness finding. *Global-Tech* does not require a certain class of "active" steps before courts can find willful blindness. 131 S. Ct. at 2068-72. Instead, the key teaching of *Global-Tech*, is that mere inadvertence or negligence or even gross recklessness is insufficient and that willful blindness requires finding that the inducer, by its actions or *in*actions, *purposely* avoided knowledge of the patentee's rights. *See id*. Indeed, a finding of willful blindness rests on purposefully *not* doing something—*i.e.*, avoiding learning something. *Id*. at 2069 n.6. The inquiry, the Court explained, is whether the inducing party is "deliberately shielding [itself] from clear evidence of critical facts that are strongly suggested by the circumstances." *Id*. at 2068-69. A defendant may not take "deliberate steps to remain ignorant of [patent] rights despite a high probability that the rights exist and are being infringed." *Id.* at 2069 n.8; *see id.* at 2069 n.6 (defendant cannot "'close his eyes,

when he pleases, upon all sources of information, and then excuse his ignorance by saying that he does not see anything'" (citation omitted)). In *Global-Tech* itself, the Court upheld an inducement finding based in part on certain *in*actions by the inducing party—including not making full disclosure to the attorney from whom a right-to-use opinion was sought. *Id.* at 2071.

In any event, the Commission's finding rests on far more than Suprema's inaction. There is substantial evidentiary support in the record, akin to that in *Global-Tech*, to support the Commission's finding of willful blindness. In *Global-Tech*, the Supreme Court affirmed a finding of inducement because the fact finder "could have easily found" that the defendant "willfully blinded itself to the infringing nature of the sales it encouraged." *Id*. The Court cited evidence that (i) the accused infringer copied the patentee's products; (ii) the accused infringer "refrained from telling [its] attorney that its design was copied directly from [the patentee]," and (iii) the CEO of the accused infringer "performed 'market research' and 'gather[ed] information as much as possible.'" *Id*. at 2064, 2071 (citation omitted).

The same result follows from the similar record here of purposeful activity. A220-23. As the Commission explained, the testimony of multiple witnesses and other record evidence established that Suprema carefully studied Cross Match and its products, researched Cross Match's patents, and sought **[[**

**]]** A221-22; *see* Br. 56-57, 60; *see also*, e.g., A200329-31; A400558-59, 400573-74; A303754-55, 303763; A301870; A303236-46; A303333-35; A301868, 301870, 301923; A303011-12. Suprema admits that it searched for "potentially relevant patents" and that it found at least another Cross Match patent, U.S. Patent No. 7,277,562 ("'562 patent") (Appellants' Rehearing Br. 17)—which incorporates by reference in its specification (several times) the patent application that led to the '344 patent and which has the same inventor as the '344 patent. A221-22. In the context of those *active* efforts, the Commission found it telling that Suprema nonetheless **[[**

**]]** and failed to obtain the opinion of counsel, which "undoubtedly would have uncovered the '344 patent." A223.

While not dispositive of this issue, Appellants contend that Suprema did not become aware of the '344 patent because it had no reason to review the '562 patent thoroughly. Appellants' Rehearing Br. 18. According to Appellants' view of the evidence, Suprema's Executive Vice President of Research and Development, Mr. Song, purportedly only reviewed the *abstract* of the '562 patent (whereas the references to the '344 patent's application were in the *body* of the '562 patent) and concluded that the '562 patent did not have "'any relevance to the products [it] had in mind.'" *Id.* (quoting A200331). But Appellants admitted that Suprema

"abandoned certain planned features so as to stay far outside the scope of the '562 patent." Appellants' Principal Br. 12 n.1. It is implausible that Appellants would have done so if Suprema had no concerns about the '562 patent and did not bother to finish reading it. *See also* A400578 (Song Depo.) (**[[**

**]]**).

In view of the foregoing record evidence, the Commission revealed its dubious view of Suprema's denials of actual knowledge, and concluded that "*even if Suprema did somehow fail to learn of the '344 patent* … **[[**

**]]** Suprema willfully blinded itself to the evidence of the existence of the '344 patent and therefore deliberately shielded itself from the nature of the infringing activities it actively encouraged and facilitated Mentalix to make." A223-24 (emphasis added).[14] That finding is reasonable and supported by substantial evidence. *Nippon Steel*, 458 F.3d at 1352

---

[14] Appellants incorrectly state that "the undisputed record evidence establishes" Suprema had no actual knowledge of the '344 patent. Appellants' Rehearing Br. 54. After finding willful blindness, it was "not necessary for the Commission to reach the issue of … actual knowledge." A224. Regardless, there was substantial circumstantial evidence of actual knowledge, *see, e.g.*, *Massa v. Dep't of Def.*, 815 F.2d. 69, 73 (Fed. Cir. 1987) (circumstantial evidence can prove knowledge); *Global-Tech*, 131 S. Ct. at 2073 (Kennedy, J., dissenting) ("[c]ircumstantial facts" "are often probative of actual knowledge"), and the Commission was justifiably dubious of Suprema's denials of actual knowledge. A223-24.

(court "'must affirm a Commission determination if it is reasonable and supported by the record as a whole'" even if Court could reach another result "'in the first instance'" (citations omitted)); *see also Global-Tech*, 131 S. Ct. at 2068.

### 3. Suprema's Failure To Obtain Advice of Counsel Further Supports the Commission's Willful Blindness Finding

Appellants contend that the Commission "imput[ed] knowledge" of the '344 patent based on "Suprema's inaction to obtain an opinion of counsel for the '562 patent" and "based on what counsel's opinion work might have revealed." Appellants' Rehearing Br. 58-59. According to Appellants, this "effectively impose[s] an affirmative duty to obtain an opinion of counsel in nearly every case." *Id*. at 59. Appellants' argument is wrong and misrepresents the record.

The Commission did not place dispositive weight on Suprema's failure to obtain an opinion. The Commission said that its conclusion would be the *same* regardless: "Suprema's deliberate avoidance of acquiring knowledge of the '344 patent is further shown by its failure to obtain the opinion of counsel." A223 (emphasis original). Appellants cite no case (and Cross Match is aware of none) prohibiting a court from considering the failure to obtain an opinion of counsel as one factor in the totality of evidence showing willful blindness. Appellants' reliance (at 59-60) on *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc), is misplaced. There, in addressing willful infringement, this Court reiterated that, although the "failure to proffer any favorable advice [of

counsel] is not *dispositive* of the willfulness inquiry, *it is crucial to the analysis*." 497 F.3d at 1369 (emphasis added); *see also Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 383 F.3d 1337, 1345-47 (Fed. Cir. 2004) (leaving open the question of whether failure to obtain opinion can be relevant). *Seagate* and *Knorr* are consistent with the Commission's findings.

Appellants mischaracterize the role of the '562 patent in the analysis. It is undisputed that Suprema was so concerned about the '562 patent that it "abandoned certain planned features so as to stay far outside the scope of the '562 patent." Appellants' Principal Br. 12 n.1. The Commission found it telling that, against the backdrop of such anxiety, Suprema purportedly failed to obtain advice of counsel as to infringement exposure *generally*—not just *as to the '562 patent*. Finally, that Suprema's failure to obtain an opinion was a deliberate choice is further confirmed by evidence that Suprema enlisted outside patent counsel **[[**

**]]**

including Cross Match, but never followed up on the result. A400751; *see* A400576, A400585.

The Commission's willful blindness analysis adhered to binding precedent, is supported by substantial evidence, and should be affirmed. *See Global-Tech*, 131 S. Ct. at 2068. Even if sufficient evidence were lacking (it is not), this Court

should at most remand for the Commission to address Suprema's *actual* knowledge, which the Commission expressly declined to resolve. A225.

### B. Substantial Evidence Supports The Commission's Finding Of Intentionally Aiding And Abetting Infringement

Appellants contend that the Commission erred in concluding that Suprema intentionally aided and abetted Mentalix's infringing actions. Appellants' Rehearing Br. 55. Appellants do not identify any legal error in the Commission's decision or argue that it was not supported by substantial evidence. *Id.* at 61. Nor could they. Appellants instead invite the Court to commit reversible error by reexamining the evidence and reaching its own conclusion *de novo*. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (fact questions cannot be reviewed *de novo*).

Substantial evidence supports the Commission's finding that Suprema intentionally aided and abetted Mentalix's direct infringement. *See Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("'Intent is a factual determination particularly within the province of the trier of fact.'" (citation omitted)). As the Commission explained, "the record is replete with evidence of Suprema's efforts to collaborate with Mentalix to import the scanners and to help adapt Mentalix's FedSubmit software to work with Suprema's imported scanners and SDK." A224. For example, the collaborative efforts included

**[**

**]** *Id*.; *see, e.g.*, A200312-13; A400630-31, 400634, 400638, 400640, 400653; A200254-56; A500001-02; A303226-28; A303727; A303230-32; A303162-74.

In any event, this issue is nowhere raised in Appellants' opening panel brief. *See* Appellants' Principal Br. 24-32; Cross Match's Principal Br. 31. It is waived. Appellants' panel reply confirms that they only challenged the willful blindness element, but nonetheless asserts that they "did not concede any other element of inducement." Appellants' Reply Br. 11. Of course, failure to raise the issue in their principal brief *does* concede it, *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006), and Appellants cannot raise it at this stage, *see Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998) ("issues not raised before the court are not addressed on rehearing").

## III. THE COMMISSION PROPERLY CONSTRUED CLAIM 19 AND FOUND IT INFRINGED

Finally, Appellants argue that the Commission erred in finding infringement of claim 19 of the '344 patent because, according to Appellants, the Commission erroneously construed two claim limitations. Appellants' arguments, rehashed from their panel briefing, are wrong for the reasons discussed at length in Cross

Match's principal brief (at 17-30). The Commission correctly found that Suprema induced Mentalix to infringe claim 19 of the '344 patent and, thus, that Appellants violated Section 337.

## CONCLUSION

For the foregoing reasons, and those stated in Cross Match's principal brief and Cross Match's rehearing petition, this Court should affirm the Commission's rulings as to the '344 and '993 patents.

Respectfully submitted,

/s/ Maximilian A. Grant

Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
Jennifer M. Halbleib
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4843
(212) 906-1200

Dated: October 15, 2014

*Counsel for Intervenor*
*Cross Match Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2014, I electronically filed the Confidential and Non-Confidential version of the **BRIEF FOR INTERVENOR ON REHEARING EN BANC** with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I further certify that I caused copies of the Confidential Version of the Brief for Intervenor on Rehearing En Banc to be served via FedEx next-day delivery upon the following:

Clark S. Cheney
International Trade Commission
Suite 707
500 E Street, SW
Washington, DC 20436

Darryl M. Woo
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104

/s/ Maximilian A. Grant
Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,198 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief was prepared using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ Maximilian A. Grant
Maximilian A. Grant