**2012-1170**

---

**IN THE**
# UNITED STATES COURT OF APPEALS
**FOR THE FEDERAL CIRCUIT**

---

**SUPREMA, INC. AND MENTALIX, INC.,**
*Appellants*,

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*,

AND

**CROSS MATCH TECHNOLOGIES, INC.,**
*Intervenor*.

---

Appeal from the United States International Trade
Commission in Investigation No. 337-TA-720

---

**BRIEF OF AMICUS CURIAE INTERNATIONAL TRADE COMMISSION TRIAL LAWYERS ASSOCIATION IN SUPPORT OF APPELLEE INTERNATIONAL TRADE COMMISSION**

---

T. Cy Walker
*President*
INTERNATIONAL TRADE COMMISSION
TRIAL LAWYERS ASSOCIATION
c/o Kenyon & Kenyon LLP
1500 K Street, NW
Suite 700
Washington, DC 20005-1257
(202) 220-4218

Eric J. Fues
*Counsel of Record*
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4245

October 22, 2014

# CERTIFICATE OF INTEREST

Counsel for Amicus Curiae International Trade Commission Trial Lawyers Association certifies the following:

1. The full name of every party or amicus represented by me is:

   International Trade Commission Trial Lawyers Association

2. The name of the real party in interest represented by me is:

   None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Eric J. Fues
901 New York Avenue, NW
Washington, DC 20001-4413

T. Cy Walker
*President*
INTERNATIONAL TRADE COMMISSION
TRIAL LAWYERS ASSOCIATION
c/o Kenyon & Kenyon LLP
1500 K Street, NW
Suite 700
Washington, DC 20005-1257

October 22, 2014

Respectfully submitted,

/s/ Eric J. Fues
Eric J. Fues
*Counsel of Record*
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4245

T. Cy Walker
*President*
INTERNATIONAL TRADE COMMISSION
TRIAL LAWYERS ASSOCIATION
c/o Kenyon & Kenyon LLP
1500 K Street, NW
Suite 700
Washington, DC 20005-1257
(202) 220-4218

# TABLE OF CONTENTS

Page

STATEMENT OF INTEREST OF AMICUS CURIAE ...................................... viii

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT ...................................................................................................1

I. 19 U.S.C. § 1337 Is a Trade Statute Broadly Directed at Unfair Trade Practices ...........................................................................................1

A. The Structure and Evolution of Section 337 Show that It Was Intended to Be Inclusive and Allow Discretion in Determining What Acts Constitute Unfair Trade .................................1

B. The Legislative History of Section 337 and Its Predecessor Statutes Support the ITC's Authority to Adjudicate Issues of Indirect Infringement, Including Induced Infringement .......................5

C. A Long Line of Precedent Supports the ITC's Authority to Adjudicate Inducement, Where Direct Infringement Occurs Post-Importation ...........................................................................8

II. The ITC Can Issue an Exclusion Order in Appropriate Circumstances When an Importer Has Induced Infringement ......................10

A. Neither the Text Nor the Structure of § 1337(a) Supports the Panel's Position that Unfair Trade Acts Within the ITC's Authority Cannot Extend to Induced Infringement Under § 271(b) Because Direct Infringement Occurs After Importation ..........................................................................10

B. Enforcement in the ITC of Inducement to Infringe Is Required to Prevent Circumvention of Domestic Patent Law by Foreign Entities ........................................................................13

C. The Commission's Interpretation of § 1337(a) Regarding Inducement Is Entitled to Deference..................................................18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012) ....................14

*Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*,
396 U.S. 57 (1969)....................15

*Buttfield v. Stranahan*,
192 U.S. 470 (1904)....................17

*Certain Digital Televisions and Certain Products Containing Same and Methods of Using Same*,
Inv. No. 337-TA-617, Comm'n Op., 2009 WL 1124461 (Apr. 23, 2009)....................9

*Certain Elec. Devices with Image Processing Sys., Components Thereof, and Associated Software*,
Inv. No. 337-TA-724, Comm'n Op., 2012 WL 3246515 (Dec. 21, 2011) ....................16

*Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation*,
Inv. No. 337-TA-99, Comm'n Op., 1982 WL 61887 (Apr. 9, 1982).........8, 9, 10

*Certain Optoelectronic Devices, Components Thereof, and Products Containing the Same*,
Inv. No. 337-TA-669, USITC Pub. 4284, 2011 WL 7628061 (Nov. 2011)....................9, 10

*Certain Trolley Wheel Assemblies*,
Inv. No. 337-TA-161, USITC Pub. 1605, Comm'n Op, 1984 WL 951859 (Aug. 29, 1984)....................17

*Chevron U.S.A., Inc. v. Natural Res. Def. Council*,
467 U.S. 837 (1984)....................19

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ....................15

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................11

*Frischer & Co. v. Bakelite Corp.*,
39 F.2d 247 (CCPA 1930)....................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)....................14

*J. McIntyre Mach., Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011)....................14, 17

*Kinik Co. v. International Trade Commission*,
362 F.3d 1359 (Fed. Cir. 2004)....................19

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................15

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008)....................18

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....................14, 16

*Sealed Air Corp. v. U.S. Int'l Trade Comm'n*,
645 F.2d 976 (CCPA 1981)....................4

*Suprema, Inc. v. Int'l Trade Comm'n*,
742 F.3d 1350 (Fed. Cir. 2013), *vacated*, No. 2012-1170, 2014 WL 3036241 (Fed. Cir. May 13, 2014)....................*passim*

*United States v. Adams*,
383 U.S. 39 (1966)....................15

*Vizio, Inc. v. Int'l Trade Comm'n*,
605 F.3d 1330 (Fed. Cir. 2010)....................9

*In re Von Clemm*,
229 F.2d 441 (CCPA 1955)....................4, 6

*Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983)....................8

**Federal Statutes**

17 U.S.C. § 501(a) .......... 12
19 U.S.C. § 1337 .......... *passim*
19 U.S.C. § 1337(a) .......... 10, 18
19 U.S.C. § 1337(a)(1) .......... 2
19 U.S.C. § 1337(a)(1)(B) .......... 7
19 U.S.C. § 1337(a)(1)(B)(i) .......... 11, 12, 19
19 U.S.C. § 1337(a)(1)(B)(ii) .......... 19
19 U.S.C. § 1337(a)(1)(C)-(E) .......... 12
19 U.S.C. § 1337(j)(2) .......... 2
35 U.S.C. § 271 .......... 12
35 U.S.C. § 271(a) .......... 15, 18
35 U.S.C. § 271(b) .......... *passim*
35 U.S.C. § 271(c) .......... 14, 15, 16
35 U.S.C. § 271(g) .......... 19

**Rules and Regulations**

Fed. Cir. Rule 29 .......... viii
Fed. R. App. 29 .......... viii

**Other Authorities**

70 Fed. Reg. 43,251 (July 26, 2005) .......... 2
134 Cong. Rec. S10,714 (daily ed. Aug. 3, 1988) .......... 7

Andrew F. Popper, *In Personam and Beyond the Grasp: In Search of Jurisdiction and Accountability for Foreign Defendants*, 63 Cath. U. L. Rev. 1 (2013) .......... 17

Angela M. Laughlin, *This Ain't the Texas Two Step Folks: Disharmony, Confusion, and the Unfair Nature of Personal Jurisdiction Analysis in the Fifth Circuit*, 37 Cap. U. L. Rev. 681 (2009) .......... 17

Foreign Commerce Clause, U.S. Const. art. 1, § 8, cl. 3 .......... 4

H.R. 7456 .......... 5

Presidential Memorandum of July 21, 2005–Assignment of Certain Functions Under Section 337 of the Tariff Act of 1930 .......... 2

Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-148, tit. I, § 1214(h)(3), § 1342(a), (b), 102 Stat. 1157, 1212-16 (1988) .......... 3

Omnibus Trade and Competitiveness Act of 1988, pt. 3, tit. I, § 1341, 102 Stat. 1211-12 (1988) .......... 7

Patent Act of 1952 .......... 14

S. Comm. on Fin., Trade Reform Act of 1974, S. Rep. No. 93-1298 (1974) .......... 6

Tariff Act of 1922, 42 Stat. 943 (1922) .......... 3

Tariff Act of 1930, Pub. L. 71-361, tit. III, § 1378, 46 Stat. 703 (1930) .......... 3

Tariff Act of 1974, Pub. L. No. 93-618, tit. III, § 341(a), 88 Stat. 2053-56 (1975) .......... 3

Trade Act of 1974, ch. 4, tit. III, § 341(a), 88 Stat. 2053-56 (1975) .......... 6

U.S. Const. art. 1, § 8, cl. 8 .......... 4

Uruguay Round Agreements Act, Pub. L. No. 103-465, tit. II, § 261(d)(1)(B)(ii), tit. III, § 321(a), 108 Stat. 4909-10, 4943-45 (1994) .......... 3

The International Trade Commission Trial Lawyers Association (ITCTLA) submits this brief as amicus curiae pursuant to Fed. R. App. 29, Fed. Cir. Rule 29, and the Court's June 11, 2014, order authorizing amicus briefs in this case. The association supports the U.S. International Trade Commission (Commission or ITC) regarding its authority to adjudicate induced infringement where direct infringement occurs post-importation.

The panel hearing the appeal ruled that the ITC did not have such authority, *Suprema, Inc. v. Int'l Trade Comm'n*, 742 F.3d 1350, 1360 (Fed. Cir. 2013),[1] *vacated*, No. 2012-1170, 2014 WL 3036241 (Fed. Cir. May 13, 2014), and both the ITC and intervenor Cross Match Technologies, Inc. petitioned for panel rehearing and rehearing en banc regarding the inducement issue. This Court granted the petitions, vacated its opinion and judgment of December 13, 2013, and subsequently set a briefing schedule. The ITCTLA submits its amicus brief at this time because it supports the ITC's position regarding the inducement issue for which the ITC had petitioned for rehearing en banc. The ITCTLA does not otherwise take a position regarding the outcome of this case.

---

[1] Judge O'Malley filed the opinion of the Court and was joined in the majority by Judge Prost. Judge Reyna concurred-in-part and dissented-in-part. For ease of reference, this brief refers to the panel majority as "the panel," the majority opinion as "the panel decision," and the dissent-in-part as "the dissent."

## STATEMENT OF INTEREST OF AMICUS CURIAE

A nonprofit, nonpartisan educational organization founded in 1984, the ITCTLA is an association of private practice, corporate, and government lawyers[2] concerned with practice under Section 337 of the Tariff Act of 1930, as amended (Section 337). It has over 250 members worldwide. The ITCTLA provides input and advice to the Commission, U.S. Customs and Border Protection, the Administration, Congress, and the courts regarding the procedures and substance of Section 337 practice in order to improve the efficiency and effectiveness of the statute. The ITCTLA supports the ITC regarding the agency's authority to adjudicate induced infringement where direct infringement occurs post-importation. The arguments and positions in this brief have been presented as part of the educational and advisory function of the ITCTLA, and do not necessarily represent the views of any individual member.[3]

---

[2] While government attorneys are members of the ITCTLA, no government attorney participated in the decision to submit this brief or in the preparation thereof.

[3] No counsel for a party authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the amicus curiae or its counsel made a monetary contribution to its preparation or submission. The ITCTLA files this brief in accordance with the en banc order issued on June 11, 2014, stating that briefs may be filed without consent or leave of the Court.

## SUMMARY OF THE ARGUMENT

The ITC has the authority under 19 U.S.C. § 1337 to ban the importation of articles that will result in induced infringement under 35 U.S.C. § 271(b), even when direct infringement will take place after importation. The statutory language of Section 337, its legislative history, and ample prior precedent support the ITC's authority in this area. To hold otherwise would create an enforcement loophole allowing foreign manufacturers, who may be beyond the jurisdiction of the district courts, to circumvent the ITC's authority and purpose, which is to protect against unfair trade acts, including importation of articles that will result in patent infringement. Deference to the ITC's interpretation of its own governing statute also supports the ITC's authority to adjudicate induced infringement where direct infringement occurs post-importation.

## ARGUMENT

### I. 19 U.S.C. § 1337 Is a Trade Statute Broadly Directed at Unfair Trade Practices

#### A. The Structure and Evolution of Section 337 Show that It Was Intended to Be Inclusive and Allow Discretion in Determining What Acts Constitute Unfair Trade

First and foremost, Section 337 has always been, and continues to be, an international trade statute. It is meant to protect against unfair trade acts, including the importation of articles that will result in patent infringement and harm a domestic industry. It has a broad scope and was always intended to be applied

flexibly to protect domestic industries from the ill effects of unfair trading practices. This is demonstrated by the statutory language and structure, legislative history, and precedent.

Section 337 is entitled "Unfair practices in import trade." The statute specifies that acts found by the ITC to be unlawful "shall be dealt with, in addition to any other provision of law . . . ." 19 U.S.C. § 1337(a)(1). The trade nature of Section 337 is reinforced by the fact that the ITC's exclusion order remedy can be disapproved for policy reasons by the U.S. Trade Representative (USTR). *See id.* § 1337(j)(2); Presidential Memorandum of July 21, 2005–Assignment of Certain Functions Under Section 337 of the Tariff Act of 1930, 70 Fed. Reg. 43,251 (July 26, 2005) (delegating presidential authority specified in subsection (j)(2) to the USTR). Section 337 is found in Title 19 of the United States Code, entitled "Customs Duties." The provisions of Title 19 all relate to various aspects of international trade, such as Foreign Trade Zones, Smuggling, Andean Trade Preference, and North American Free Trade. In contrast, the patent laws are codified in Title 35, entitled "Patents." The language and structure of these two statutory sections are thus distinct—Section 337 is a trade law, and its scope is different from and not necessarily coextensive with the patent laws.

Congressional intent is equally clear. Section 337 was enacted as part of the Tariff Act of 1930. That Act's main purposes were "[t]o provide revenue, to

regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor. . . ."[4] Section 337 took on its modern form with the Trade Act of 1974,[5] which is entitled:

> AN ACT To promote the development of an open, nondiscriminatory, and fair world economic system, to stimulate fair and free competition between the United States and foreign nations, to foster the economic growth of, and full employment in, the United States, and for other purposes.

The last major revisions to Section 337 occurred in 1988 and 1994 through the Omnibus Trade and Competitiveness Act of 1988, "[a]n Act [t]o enhance the competitiveness of American industry, and for other purposes,"[6] and the Uruguay Round Agreements Act, "[a]n Act [t]o approve and implement the trade agreements concluded in the Uruguay Round of multilateral trade negotiations."[7] Thus, Congress has consistently viewed Section 337 as part of the arsenal of U.S.

---

[4] Pub. L. 71-361; Section 337 is found at tit. III, § 137, 46 Stat. 703 (1930). The Tariff Act of 1922, 42 Stat. 943 (1922), which included Section 337's predecessor, had similar purposes: "[t]o provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States . . . ."

[5] Pub. L. No. 93-618; the amendments to Section 337 are found at tit. III, § 341(a), 88 Stat. 2053-56 (1975).

[6] Pub. L. No. 100-148; the amendments to Section 337 are found at tit. I, § 1214(h)(3), § 1342(a), (b), 102 Stat. 1157, 1212-16 (1988).

[7] Pub. L. No. 103-465; the amendments to Section 337 are found at tit. II, § 261(d)(1)(B)(ii), tit. III, § 321(a), 108 Stat. 4909-10, 4943-45 (1994).

international trade laws, purposefully designed to protect U.S. industries from unfair competition.

Likewise, this Court and its predecessor have for decades recognized Section 337 as an international trade statute. This Court's predecessor found the constitutional authority for Section 337 grounded in the Foreign Commerce Clause, U.S. Const. art. 1, § 8, cl. 3. *Sealed Air Corp. v. U.S. Int'l Trade Comm'n*, 645 F.2d 976, 985-86 & n.12 (CCPA 1981). In contrast, the authority for the patent laws is found in art. 1, § 8, cl. 8. The scope of Section 337 was perhaps best described by the Court of Customs and Patent Appeals as "broad and inclusive," reflecting a congressional intent "to allow wide discretion in determining what practices are to be regarded as unfair":

> The statute here under consideration provides broadly for action by the Tariff Commission in cases involving "unfair methods of competition and unfair acts in the importation of articles" . . . . ***[T]he quoted language is broad and inclusive*** and should not be held to be limited to acts coming within the technical definition of unfair methods of competition as applied in some decisions. The importation of articles may involve questions which differ materially from any arising in purely domestic competition, and ***it is evident from the language used that Congress intended to allow wide discretion in determining what practices are to be regarded as unfair***.

*In re Von Clemm*, 229 F.2d 441, 443-44 (CCPA 1955) (emphases added) (citation omitted).

The protection of U.S. industries from unfair competition will not be enhanced if imported goods are shielded from Section 337's coverage merely because the acts of infringement and inducement are geographically or temporally separated.

### B. The Legislative History of Section 337 and Its Predecessor Statutes Support the ITC's Authority to Adjudicate Issues of Indirect Infringement, Including Induced Infringement

From the Section 337's inception, Congress has been unwaveringly clear that "the provision relating to unfair methods of competition in the importation of goods is broad enough to prevent every type and form of unfair practice." *See Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247, 259 (CCPA 1930) (quoting Senate Finance Committee when reporting H.R. 7456 to the Senate for enactment of the Tariff Act of 1922, the immediate predecessor to Section 337). In *Frischer*, the CCPA acknowledged that "it is very obvious that it was the purpose of the law to give to industries of the United States, not only the benefit of the favorable laws and conditions to be found in this country, but also to protect such industries from being unfairly deprived of the advantage of the same and permit them to grow and develop." *Id.* Twenty-five years later, the CCPA reaffirmed the breadth of Section 337 and warned against limiting its scope to a "technical definition" of unfair methods of competition. *See In re Von Clemm*, 229 F.2d at 443-44.

Subsequent amendments to Section 337 have illustrated further Congress's intent to provide expansive authority to the ITC. In 1974, for example, Congress amended the statute to allow the ITC itself to issue exclusion orders—an act that previously had been in the sole purview of the President. *See* Trade Act of 1974, ch. 4, tit. III, § 341(a), 88 Stat. 2053-56 (1975). During the amendment process, the Senate Finance Committee explained that the ITC's power was "to order the exclusion of articles ***involved in*** unfair methods and acts ***based upon*** United States patents." S. Comm. on Fin., Trade Reform Act of 1974, S. Rep. No. 93-1298, at 34-35 (1974) (emphases added). The committee also stated that the intent of these amendments was, among other things, for the Commission to consider "for its own purposes under section 337" patent-based cases relating to imports. *Id.* at 196. This language demonstrates that Congress meant for Section 337 to be adaptable to address a wide variety of circumstances falling within the spectrum of imported goods that infringe U.S. intellectual property rights, and it makes no mention of a temporal component requiring indirect infringement at the time of importation.

In 1988, based on congressional findings that existing protections under Section 337 failed to fully protect U.S. intellectual property holders from the ill effects of infringing foreign products, Congress again amended the statute. *See* Omnibus Trade and Competitiveness Act of 1988, pt. 3, tit. I, § 1341, 102 Stat. 1211-12 (1988). Among the changes was the addition of the "articles that . . .

infringe" language in § 1337(a)(1)(B) (discussed at length in Section II.A, *infra*). Congress made explicit that its intent in adding this language was *not* to limit the reach of Section 337, but "to *remove* hurdles that stand in the way of innovators' ability to get protection" from the ITC and to "*empower*[] the ITC to exclude imports when the importer engages in unfair acts such as the piracy of American inventions." 134 Cong. Rec. S10,714 (daily ed. Aug. 3, 1988) (comments of Sen. Lautenberg to President Reagan) (emphases added). Without any qualification as to the type or temporal nature of infringement, Congress was clear: "Infringement is injury." *Id.* Indeed, Congress saw the amendments as part of the "continued broad jurisdiction" of the ITC to redress the infringement of U.S. patents by foreign goods. *Id.*

In sum, nothing in the history of Section 337 shows any intent by Congress to limit, let alone eliminate, the ITC's exercise of authority to remedy indirect infringement—inducement or contributory infringement—as an unfair trade act, where direct infringement occurs post-importation. Indeed, Congress's intent to expand the scope of Section 337 and increase its effectiveness as a deterrent to unfair trade practices is consistent with the evolution of the statute.

### C. A Long Line of Precedent Supports the ITC's Authority to Adjudicate Inducement, Where Direct Infringement Occurs Post-Importation

The ITC has for decades found violations of Section 337 by respondents who actively induced patent infringement, where direct infringement occurred post-importation. And this Court has consistently affirmed those findings.

For example, in a case involving the pre-1988 version of the statute, *Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, this Court affirmed findings of a violation of Section 337 in the importation and sale of molded-in sandwich panel inserts, including violations based on induced infringement. 721 F.2d 1305, 1309, 1317 (Fed. Cir. 1983). The accused inserts were made in Japan, imported into the United States by respondent The Young Engineers, Inc., and subsequently sold to several U.S.-based respondents. The Administrative Law Judge (ALJ) and the ITC found the U.S.-based respondents' purchase and use of the accused inserts after importation infringed certain apparatus and method claims of three U.S. patents. *See Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation*, Inv. No. 337-TA-99, Comm'n Op., 1982 WL 61887, at *2 (Apr. 9, 1982). In so finding, the ITC explained that its authority extended beyond the physical importation of the accused products, stating, "[T]he jurisdiction of the Commission is not limited to those acts which occur during the actual physical process of importation. If there is some nexus between the unfair methods or acts and

importation, the Commission's jurisdiction is established." *Id.* at *3 (citation omitted).

In a case decided after the 1988 amendments, *Certain Digital Televisions and Certain Products Containing Same and Methods of Using Same*, the ITC found that respondents violated Section 337 by inducing their U.S. customers to directly infringe an asserted patent after importation of the goods in question. Inv. No. 337-TA-617, Comm'n Op., 2009 WL 1124461, at *4-5 (Apr. 23, 2009). With respect to importations of the accused legacy digital televisions, this Court affirmed. *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1343 (Fed. Cir. 2010).

Similarly, in *Certain Optoelectronic Devices, Components Thereof, and Products Containing the Same*, the Commission adopted an Initial Determination concluding that certain products indirectly infringed an asserted patent by contributory *and* induced infringement where a respondent's customers were found to directly infringe the patent only after those products were imported into the United States. Inv. No. 337-TA-669, USITC Pub. 4284, 2011 WL 7628061, at *10 (Nov. 2011). In issuing remedial orders for the violation, the ITC stated that "[t]here is no distinction between direct or indirect infringement in Commission remedial orders and the language 'covered by,' found in the Commission's orders, applies to both types of infringement." *Id.*

*Molded-In Sandwich Panel Inserts*, *Digital Televisions*, and *Optoelectronic Devices* all demonstrate that induced patent infringement claims, based on post-importation direct infringement, have long been used by complainants to combat unfair trade practices. Judge Reyna cited many more such cases in his dissent from the panel decision. *Suprema*, 742 F.3d at 1372-73 n.2 (Reyna, J., dissenting-in-part). Upholding such precedent is critical. It provides continuity and certainty for domestic industries seeking relief at the ITC. It also supports stability and consistency in our trade regimes, which benefits U.S. trade objectives as a whole. And it is fully consistent with the historical evolution of Section 337.

## II. The ITC Can Issue an Exclusion Order in Appropriate Circumstances When an Importer Has Induced Infringement

### A. Neither the Text Nor the Structure of § 1337(a) Supports the Panel's Position that Unfair Trade Acts Within the ITC's Authority Cannot Extend to Induced Infringement Under § 271(b) Because Direct Infringement Occurs After Importation

By its express language, Section 337 encompasses post-importation activity. Specifically, the statute lists as an actionable unfair act "the sale within the United States after importation . . . of articles that . . . infringe":

> (1) Subject to paragraph (2), the following are unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provision of law, as provided in this section:
>
> . . . .

> (B) The importation into the United States, the sale for importation, or the ***sale within the United States after importation*** by the owner, importer, or consignee, ***of articles that***—
>
> (i) ***infringe*** a valid and enforceable United States patent or a valid and enforceable United States copyright registered under title 17; or . . . .

19 U.S.C. § 1337(a)(1)(B)(i) (2012) (emphases added). Restricting the statute to only reach articles that infringe "at the time of importation" would be inconsistent with the post-importation sales liability. An interpretation of a statute that is internally inconsistent—especially where this inconsistency resides in the *same sentence* of a statutory provision—cannot be correct. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (a court must "interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into a[] harmonious whole'" (citations omitted)). Furthermore, the statute does not say "articles that . . . infringe at the time of importation" or otherwise circumscribe when infringement must occur. Consequently, reading this narrow temporal requirement into the statute has no basis in the text or long history of Section 337.

While § 1337(a)(1)(B)(i) does refer to "*articles* that . . . infringe a valid and enforceable United States patent," this language is general and meant to bridge two bodies of law. Indeed, under § 271, articles themselves do not infringe patents—*people* do, by making, using, selling, offering for sale, or importing articles

covered by a patent. *See* 35 U.S.C. § 271. The same holds true for "articles that . . . infringe . . . a valid and enforceable United States copyright registered under title 17," as an infringing actor again is required. *See* 17 U.S.C. § 501(a). Indeed, persons or actors are required to cause the underlying acts for the other types of unfair competition specifically listed in Section 337, such as infringement of trademarks, registered mask works, and protected designs. *See* 19 U.S.C. § 1337(a)(1)(C)-(E), respectively. The fact that articles themselves do not "infringe" in any of these provisions undercuts the argument that a "plain reading" of Section 337 can resolve the issue of liability for indirect infringement where direct infringement occurs post-importation.

In the context of patents, § 1337 must be read in conjunction with § 271, which describes patent infringement in terms of *acts* of infringement and *who* is an infringer. When reading these sections together, and when considering the underlying purpose of § 1337 to protect domestic industries from unfair trade practices, the ITC should have the authority to ban importation of articles that will result in induced infringement under § 271(b), even when direct infringement will only take place after importation.

The panel recognized that the ITC has the authority to remedy contributory infringement under § 271(c), even though the direct infringement will also only take place after importation. *Suprema*, 742 F.3d at 1361 n.4. Nothing in the text

or the structure of Section 337 distinguishes these two forms of indirect infringement. Should the Court determine that induced infringement is not encompassed within Section 337, then logically, the same would hold true for contributory infringement. Both outcomes would weaken Section 337, making it less effective in addressing unfair methods of trade.

### B. Enforcement in the ITC of Inducement to Infringe Is Required to Prevent Circumvention of Domestic Patent Law by Foreign Entities

As discussed in Section I.A, *supra*, the purpose of Section 337 is to protect against unfair trade acts, including the importation of articles that will result in patent infringement and harm a domestic industry. The ITC's ability to provide the protection contemplated will be frustrated without the authority to issue exclusion orders predicated on induced infringement. If this is the law, foreign entities will be motivated to import articles designed to infringe, even with instructions on infringing assembly and/or use, as long as the products are disassembled into smaller, staple-component parts at the time of importation. As such, patent owners will be left to seek remedy in district court, which is often ineffectual against foreign entities. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir. 2012) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011)). A comparison of induced and contributory infringement illustrates the gap in the ITC's protection that would result without the cause of

induced infringement, as well as the flaws in the majority's reasoning that a legal loophole would not be created.

Prior to the 1952 Patent Act, contributory and induced infringement were treated as a single cause of action. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065-66 (2011). In passing the 1952 Act, Congress expressly recognized two distinct types of indirect infringement—§ 271(b) induced infringement and § 271(c) contributory infringement. *Id*. As codified, 35 U.S.C. § 271(b) imposes liability on those who actively induce infringement of a patent. Section 271(c), as codified, imposes liability on those who sell, offer to sell, or import nonstaple components, knowing those components to be especially made or adapted for infringing use. The primary difference between the two is that contributory infringement requires a nonstaple component specifically adapted for infringing use. *Compare* 35 U.S.C. § 271(b) *with id.* § 271(c). As applied, however, both § 271(b) and (c) require intentional acts of aiding and abetting direct infringement by another. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).

It is well established by case law and implicit in § 271(b) that a patented invention may be comprised of "staple" elements, known in the art, but combined in a novel manner. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-17 (2007)

(citing *United States v. Adams*, 383 U.S. 39, 40 (1966); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57 (1969)). In this situation, the products are not comprised of one or more nonstaple elements specifically adapted for infringing use, and, therefore, components of such products cannot meet the requirements of § 271(c). Without authority based on induced infringement, the Commission would have no ability to protect claims covering novel combinations of known elements where anything other than a fully assembled infringing apparatus is imported. Such a limitation would invite foreign entities to avoid any ITC enforcement, even for what would otherwise be direct infringement under § 271(a), simply by selling for importation or importing unassembled products that are designed to infringe when assembled domestically.

But the limitation on the ITC's authority would not end with such combination claims. Even components specifically designed for infringing use may be further broken down into smaller, staple component parts for importation; and the ITC would have no enforcement authority. Further, the ITC's ability to exclude products designed to practice patented methods could be eviscerated, as often, no steps of the method, whether the imported products are specifically adapted for infringement or not, are being performed at the time of importation. *See Certain Elec. Devices with Image Processing Sys., Components Thereof, and*

*Associated Software*, Inv. No. 337-TA-724, Comm'n Op., 2012 WL 3246515, at *13-14 (Dec. 21, 2011).

As discussed above, contributory infringement differs materially from induced infringement. Superficial similarities between the two causes of action may have given rise to the panel majority's erroneous reasoning that because contributory infringement may be substituted for induced infringement, no loophole is created. *Suprema*, 742 F.3d at 1361 & n.4. Contrary to this reasoning, § 271(c) is not an adequate substitute for § 271(b).

The panel majority excluded induced infringement from the scope of Section 337, finding that the "focus [of the Section] is on the infringing nature of the articles at the time of importation, not on the intent of the parties with respect to the imported goods." *Id*. at 1358. But authority from this Court, as well as the Supreme Court, establishes that knowledge and intent must be shown to establish contributory infringement under § 271(c). *See Grokster*, 545 U.S. at 937. In other words, importation of a nonstaple component with no noninfringing use, alone, does not violate § 271(c) and, thus, the component is not an "article[] . . . that infringe[s]." Accordingly, the majority's focus on "articles . . . that infringe" at the time of importation, carried to its logical conclusion, would remove induced infringement, contributory infringement, and certain types of method-claim infringement from the scope of the ITC's authority.

In such a paradigm, patent owners could potentially still bring infringement actions against such foreign entities in district court. But establishing *in personam* jurisdiction over foreign entities in district court is often arduous, and outcomes vary significantly between federal jurisdictions. *See*, *e.g.*, Andrew F. Popper, *In Personam and Beyond the Grasp: In Search of Jurisdiction and Accountability for Foreign Defendants*, 63 Cath. U. L. Rev. 1 (2013).[8] This is the very issue the ITC's *in rem* jurisdiction was designed to remedy by triggering the ITC's authority to investigate alleged violations of Section 337 upon a showing of at least one instance of sale for importation, importation, or sale after importation of articles involved in unfair trade. *Suprema*, 742 F.3d at 1374-75 (Reyna, J., dissenting-in-part) (citing *Buttfield v. Stranahan*, 192 U.S. 470, 492 (1904); *Certain Trolley Wheel Assemblies*, Inv. No. 337-TA-161, USITC Pub. 1605, Comm'n Op, 1984 WL 951859, at *4 (Aug. 29, 1984)).[9]

---

[8] *See also* Angela M. Laughlin, *This Ain't the Texas Two Step Folks: Disharmony, Confusion, and the Unfair Nature of Personal Jurisdiction Analysis in the Fifth Circuit*, 37 Cap. U. L. Rev. 681, 727-28 app A (2009) (summarizing treatment of Supreme Court's plurality decision in *Nicastro* between circuits).

[9] As noted by Judge Reyna, the panel majority below seemed to misunderstand the Commission's *in rem* jurisdiction as a limitation and further ignored that the Commission's jurisdiction also has an *in personam* component. *Suprema*, 742 F.3d at 1375 (Reyna, J., dissenting-in-part) (citing *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1357 (Fed. Cir. 2008)).

Eliminating § 271(b) causes of action from the ITC's authority would materially constrain the reach of Section 337, contravening the legislative purpose of the statute. Without authority under Section 337 to predicate violations on induced infringement, foreign entities would be free to import unassembled products—even with instructions for infringing assembly and/or infringing use—with near impunity by simply postponing direct infringement.

### C. The Commission's Interpretation of § 1337(a) Regarding Inducement Is Entitled to Deference

Deference to the ITC's interpretation of its own governing statute supports the ITC's authority to adjudicate induced infringement where direct infringement occurs post-importation. As discussed above, § 1337(a) does not include an express temporal limitation about infringement "at the time of importation." And the statute ambiguously refers to "***articles*** that . . . infringe a valid and enforceable United States patent," when, in fact, people infringe, not the articles themselves. *See* 35 U.S.C. § 271(a) ("***[W]hoever*** without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . , infringes the patent." (emphasis added)).

Here, the Commission made its own determination regarding the scope of its authority to adjudicate claims of induced infringement, and that determination is entitled to deference. Under analogous circumstances in *Kinik Co. v. International Trade Commission*, this Court deferred to the Commission's interpretation of

Section 337 and its interplay with 35 U.S.C. § 271(g), stating that, "[t]o the extent that there is any uncertainty or ambiguity in the interpretation of § 337(a) and its successor § 1337(a)(1)(B)(ii), deference must be given to the view of the agency that is charged with its administration." 362 F.3d 1359, 1363 (Fed. Cir. 2004) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984)). *Chevron* deference similarly applies to the ITC's interpretation of § 1337(a)(1)(B)(i) regarding induced infringement under § 271(b), and the panel majority erred in concluding otherwise. *Suprema*, 742 F.3d at 1363 n.5. The statutory language and congressional intent support the Commission's interpretation of its authority in this area.

## CONCLUSION

For the reasons set forth above, the ITCTLA supports the International Trade Commission regarding the ITC's authority to adjudicate induced infringement where direct infringement occurs post-importation.

Respectfully submitted,

*/s/ Eric J. Fues*

T. Cy Walker
*President*
INTERNATIONAL TRADE COMMISSION
TRIAL LAWYERS ASSOCIATION
c/o Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4218

Eric J. Fues
*Counsel of Record*
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4245

October 22, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing BRIEF OF AMICUS CURIAE INTERNATIONAL TRADE COMMISSION TRIAL LAWYERS ASSOCIATION IN SUPPORT OF APPELLEE INTERNATIONAL TRADE COMMISSION was served upon registered counsel by operation of the Court's CM/ECF system on this October 22, 2014:

Clark S. Cheney
International Trade Commission, Suite 707
500 E Street, SW
Washington, DC 20436

Darryl M. Woo
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004

*/s/ Eric J. Fues*
Eric J. Fues
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4245

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing BRIEF OF AMICUS CURIAE INTERNATIONAL TRADE COMMISSION TRIAL LAWYERS ASSOCIATION IN SUPPORT OF APPELLEE INTERNATIONAL TRADE COMMISSION contains 4,864 words as measured by the word-processing software used to prepare this brief.

Dated: October 22, 2014

Respectfully submitted,

/s/ Eric J. Fues

Eric J. Fues
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Attorney for *Amicus Curiae*, International Trade Commission Trial Lawyers Association