**2012-1170**

# United States Court of Appeals for the Federal Circuit

SUPREMA, INC. and MENTALIX, INC.,
*Appellants,*

*v.*

INTERNATIONAL TRADE COMMISSION,
*Appellee,*

*and*

CROSS MATCH TECHNOLOGIES, INC.,
*Intervenor*.

*On Appeal from the United States International Trade Commission in Investigation No. 337-TA-720.*

**BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC. IN SUPPORT OF APPELLEE INTERNATIONAL TRADE COMMISSION**

John D. Haynes
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
(404) 881-7000

Adam D. Swain
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20010
(202) 239-3622

*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

October 22, 2014

## CERTIFICATE OF INTEREST

Counsel for *amici curiae* Nokia Corporation and Nokia USA Inc. certifies the following:

**1. The full name of every party or amicus represented by me is:**

Nokia Corporation and Nokia USA Inc.

**2. The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Nokia Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.

Nokia USA Inc.'s parent corporation is Nokia Corporation. Nokia Corporation owns 100 percent of the stock in Nokia USA Inc.

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:**

Alston & Bird LLP: John D. Haynes; Adam D. Swain

Dated: October 22, 2014

/s/ John D. Haynes
John D. Haynes

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................... i

TABLE OF CONTENTS ..................... ii

TABLE OF AUTHORITIES ..................... iii

STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE* ..................... 1

SOURCE OF AUTHORITY TO FILE ..................... 3

SUMMARY OF ARGUMENT ..................... 3

ARGUMENT ..................... 4

I. The Statutory Text, Legislative History, and Long-Standing Commission Precedent Demonstrate That the ITC Has Authority to Issue an Exclusion Order Based on Induced Infringement Under § 271(b) When Direct Infringement Occurs After Importation ..................... 4

II. The Panels's Ruling Casts Doubt on The Commission's Authority To Prevent Certain Unfair Trade Practices ..................... 9

III. If the Court Maintains the Panel's Central Holding, The Scope of that Holding Must Be Clarified ..................... 11

A. The Panel Opinion Does Not Impact Violations Based on Contributory Infringement ..................... 12

B. Extending the Panel's Holding to Contributory Infringement Has Dangerous Ramifications for the Reach of Section 337 ..................... 13

CONCLUSION ..................... 15

# TABLE OF AUTHORITIES

## Cases

Brief for Appellant Kinik Co., *Kinik Co. v. Int'l Trade Comm'n*,
362 F.3d 1359 (Fed. Cir. 2002) (No. 02-1550), 2002 WL 32815133.................. 7

*Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Producing Same*,
Inv. No. 337-TA-833, USITC Pub. 531514 (Apr. 9, 2014) (Final)....................10

*Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Producing Same*, Inv. No. 337-TA-833,
USITC Pub. 53532 (June 11, 2014) (Final) .......................................................11

*ClearCorrect Operating, LLC v. Int'l Trade Comm'n*,
*appeal docketed*, No. 14-1527 (Fed. Cir. June 5, 2014)....................................11

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*,
566 F.3d 1028 (Fed. Cir. 2009) ..........................................................................13

*Kinik Co. v. Int'l Trade Comm'n*,
362 F.3d 1359 (Fed. Cir. 2004) ...................................................................7, 8, 9

*Lannom Mfg. Co., Inc. v. U.S. Int'l Trade Comm'n*,
799 F.2d 1572 (Fed. Cir. 1986) ........................................................................... 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ............................................................................................. 6

*Spansion v. Int'l Trade Comm'n*,
629 F.3d 1331 (Fed. Cir. 2010) ....................................................................9, 11

*Suprema, Inc. v. Int'l Trade Comm'n*,
742 F.3d 1350 (Fed. Cir. 2013) ..................................................................passim

*The Young Eng'rs., Inc. v. U.S. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983) ........................................................................... 5

**Statutes**

35 U.S.C. § 271 ........................................................................................passim

## STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici* are Nokia Corporation and Nokia USA Inc. ("Nokia").[1] Nokia is a leading innovator in the telecommunications industry. Nokia has cumulatively invested over $64 billion in research and development relating to mobile communications, and as a result of this commitment, currently owns more than 10,000 patent families. Nokia was one of the largest manufacturers of wireless handsets for many years, and continues to invest heavily in research and development, and to license and expand its industry-leading patent portfolio. For example, Nokia's recently formed Technologies business unit continues to develop and license innovations that are powering the next revolution in computing and mobility: the "programmable world" where intelligent connections bring millions of everyday objects online. This work includes a team of experts in areas including imaging and sensing, wireless connectivity and power management, advanced materials, and others.

Nokia has been involved in numerous investigations before the U.S. International Trade Commission, both as a complainant and respondent. Nokia is a significant patent owner that might seek an exclusion order and/or cease and desist order based on a violation of 19 U.S.C. § 1337 to protect its U.S. patent rights.

---

[1] No counsel for any of the parties authored any portion of this brief. No entity other than *amici curiae* Nokia Corporation and Nokia USA Inc. monetarily contributed to the preparation or submission of this brief. *See* Fed. R. App. P. 29(c)(5).

Nokia's interest in this case is to advocate for a reasoned and rational interpretation of Section 337 that is in accord with the statutory text, legislative history, and long-standing Commission and Federal Circuit precedent and that provides effective relief against unfair trade practices. Nokia therefore supports Appellee International Trade Commission's ("Commission") argument that the Commission has authority to find a violation of Section 337 based on induced infringement when the underlying direct infringement occurs after importation.

## SOURCE OF AUTHORITY TO FILE

On June 11, 2014, the Court ordered rehearing *en banc*. The Court advised it would entertain briefs of *amici curiae* and that any such amicus briefs may be filed without consent and leave of Court.

## SUMMARY OF ARGUMENT

The text and history of Section 337, as well as long-standing Commission precedent previously affirmed by this Court, dictate that a violation of Section 337 may be based on inducement of infringement, even if direct infringement does not occur until after importation. The panel's ruling to the contrary may severely undermine the Commission's ability to remedy certain unfair trade practices by inviting easy circumvention.

If the Court nevertheless were to agree with the panel's central holding, it must clarify that the narrow scope of that holding does not extend to contributory infringement or imply that method claims cannot be the basis for finding a violation in Section 337 investigation as some *amici* have suggested. Any such interpretation misconstrues the panel's opinion and improperly limits the scope of Section 337 jurisdiction. For example, if the panel opinion is interpreted as broadly as some suggest, infringers could attempt to avoid a Section 337 violation in the importation of electronic devices by importing hardware separate from the software, when both may be necessary to demonstrate infringement. Although the

panel opinion suggests that Section 337 could still apply under principles of contributory infringement, no relief may be available if the article being imported is proven to have substantial non-infringing uses. This result potentially opens the door for accused infringers to try to avoid any ITC remedy by simply importing an infringing device in parts rather than as a whole. That cannot be what Congress intended. On rehearing, the Court must restore the Commission's full, intended authority to remedy unfair trade practices, or, at the least, properly confirm the narrow scope of the panel's holding.

## ARGUMENT

### I. THE STATUTORY TEXT, LEGISLATIVE HISTORY, AND LONG-STANDING COMMISSION PRECEDENT DEMONSTRATE THAT THE ITC HAS AUTHORITY TO ISSUE AN EXCLUSION ORDER BASED ON INDUCED INFRINGEMENT UNDER § 271(B) WHEN DIRECT INFRINGEMENT OCCURS AFTER IMPORTATION

The panel held that there can be no violation of section 337(a)(1)(B)(i) based on induced infringement where the underlying act of direct infringement does not occur until after importation. *Suprema, Inc. v. Int'l Trade Comm'n*, 742 F.3d 1350, 1352, 1360-61 (Fed. Cir. 2013). That ruling is contrary to the statutory text and legislative history, as well as long-standing Federal Circuit and Commission precedent.

Section 337 declares unlawful the importation, the sale for importation, or the sale within the United States after importation of articles that infringe a valid

and enforceable U.S. patent. 19 U.S.C. § 1337(a)(1)(B)(i). The Commission has long exercised the authority to find a violation of Section 337 based on proof of both direct and indirect infringement, including inducement of infringement under 35 U.S.C. § 271(b). *See Suprema*, 742 F.3d at 1372-73 & n.2 (Reyna, J., concurring-in-part and dissenting-in-part). This Court has affirmed that practice. *See, e.g.*, *The Young Eng'rs., Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1310, 1317 (Fed. Cir. 1983). And Congress, despite amending Section 337 many times, has never upset that understanding.

Appellants argue that the Commission's interpretation of Section 337 impermissibly expands substantive rights beyond those granted by the Patent Act. *See* Appellants' Opening En Banc Brief, at 46. Appellants conclude that allowing the Commission to consider induced infringement would lead to the exclusion of staple articles and, thus, an impermissible expansion of U.S. patent rights. *Id*. at 50 ("By barring importation of staple article Suprema scanners that the Commission found were merely involved in inducing Mentalix's direct infringement, but that do not directly (or contributorily) infringe the '344 patent, the Commission has given Cross Match a substantive right to control the sale or distribution of staple articles that they do not have under the Patent Act.").

The argument founders for two primary reasons. First, the Commission's ruling below does not expand the scope of culpable conduct under the Patent Act.

As Appellants admit, the seller of a staple article may be liable under section 271(b) if it engages in knowing conduct to induce another party's infringement. Appellants' Opening En Banc Brief, at 49. Indeed, the Supreme Court has expressly noted that "the Patent Act's exemption from liability for those who distribute a staple article of commerce" does not extend to "those who induce patent infringement [under] 271(b)" *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 n.10 (2005). That is precisely why that Patent Act provides separate bases for indirect infringement – one based on contributory infringement (section 271(c)) and one based on induced infringement (section 271(b)). Here, applying governing precedent regarding indirect infringement, the Commission found Suprema induced Mentalix's infringement of Cross Match's patents through the use of imported scanners under section 271(b). Thus, the scope of culpability has not been expanded in this investigation because Appellants' activity would be just as culpable in district court as it is in the ITC. That is, Suprema's inducing activities supporting the finding of violation here are not outside the bounds of what a district court could consider indirect infringement.[2]

---

[2] As Appellee's brief correctly notes, Appellants and certain *amici* confuse the finding of a violation with institution of a remedy. Appellee Br. at 33-35. That is, the Commission first determines whether or not a violation has occurred and, only after determining there has been a violation, will it institute a remedy. Appellants argue that because the Commission and district court may levy different remedies for the same infringing activity means that there is some enlargement of Section 271 by the Commission's finding. *See*, Appellants' Opening En Banc Brief, at 46.

Second, this argument fails because it inappropriately places restrictions on Section 337 based on Section 271, when the two are not coextensive. This Court has recognized that conduct may be culpable under Section 337 even if it might not support liability under Section 271. For example, in *Kinik Co. v. Int'l Trade Comm'n*, Kinik argued that "the ITC cannot make infringement determinations that are inconsistent with, or contrary to, the statutory scheme set forth in Title 35" Brief for Appellant Kinik Co. at *51, *Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359 (2002) (No. 02-1550), 2002 WL 32815133 (Fed. Cir. 2002) (citing *Lannom Mfg. Co., Inc. v. U.S. Int'l Trade Comm'n*, 799 F.2d 1572 (Fed. Cir. 1986), and thus, the statutory defenses of Section 271(g) must apply to ITC investigations. The Court disagreed and held that the statutory defenses of Section 271(g) do not apply to a violation of Section 337(a)(1)(B)(ii). *Kinik Co. v. Int'l Trade Comm'n,* 362 F.3d 1359, 1362-63 (Fed. Cir. 2004). Thus, in *Kinik*, this Court did recognize the scope of culpable conduct between Section 337 and Section 271 are not necessarily coextensive.

*Kinik* illustrates a broader point that has already been highlighted by other *amici*. Namely, Section 337's scope is not limited by Section 271 of the Patent Act; rather, it is informed by the Patent Act. Brief of Amicus Curiae of the

---

This conflates the issues of violation and remedy. Indeed, the Commission relied on the principles of 35 U.S.C. § 271(b) and relevant legal precedent in finding a violation of Section 337.

American Intellectual Property Law Association in Support of Neither Party, at 9-10. To the extent that there is some uncertainty in the interplay between Section 337 of the Tariff Act and Section 271 of the Patent Act, the Court has accorded the Commission appropriate *Chevron* deference in its interpretation of Section 337. In *Kinik*, based on its review of the text of the statutes, the legislative history, and precedent, the Court held the Commission was due *Chevron* deference in its interpretation that the statutory defenses of Section 271(g) do not apply to a violation of Section 337(a)(1)(B)(ii). *Kinik*, 362 F.3d at 1362-63.

The same reasoning applies here. The Commission has reasonably interpreted Section 337's prohibition on the importation, sale for importation, or sale after importation of articles that infringe to prohibit the importation of articles when that importation is part of the inducement of infringement of a valid, enforceable patent. That the remedy for that violation under Section 337 may be broader than the remedy generally available in district court for the same conduct is not an unwarranted extension of patent rights. Rather, it is the remedy that is dictated by Section 337.[3] 19 U.S.C. § 1337(d). And, as this Court has recognized, the exclusionary remedy in the ITC is not subject to the same standard as

---

[3] The Commission has a wide discretion in tailoring its remedies, including exclusion orders, to particular products imported by specific respondents. Thus, it is well within the Commission's ability to instruct Customs to only exclude products involved in induced infringement imported by particular respondents, which allays the concern that an exclusion order may exclude otherwise non-violative staple articles of commerce.

injunctive relief in district courts. *Spansion v. Int'l Trade Comm'n*, 629 F.3d 1331, 1359 (Fed. Cir. 2010) (holding that the standard for injunctive relief articulated in *eBay* does not apply to Section 337 investigations). Here, the Commission has not expanded substantive patent rights; instead, it has faithfully administered its duty to enforce Section 337. As in *Kinik*, the Commission's reasonable interpretation of the scope of Section 337, as informed by the Patent Act, is due appropriate deference and must be upheld in light of that deference.

## II. THE PANELS'S RULING CASTS DOUBT ON THE COMMISSION'S AUTHORITY TO PREVENT CERTAIN UNFAIR TRADE PRACTICES

The ITC, Cross Match, and several *amici* argue that the panel's holding creates a serious gap in the Commission's authority to prevent unfair trade practices. Under the panel's interpretation, a party can import an article and specifically instruct customers to use the article in performing a patented method or to assemble it into a patented apparatus, but as long as that use or assembly occurs after importation, the Commission is powerless to stop that importation.

The panel opinion states that such "mischief" may occur, but suggests that § 271(a) or § 271(c) can address "virtually all" of those concerns. *Suprema*, 742 F.3d at 1361 n.4. That assurance is, however, cold comfort to U.S. patent holders. Unless the ruling is overturned, there will undoubtedly be a gap that § 271(c) cannot fill because, unlike inducement, contributory infringement under § 271(c)

requires that the article "be especially made or especially adapted for use in an infringement" and "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). For example, an accused infringer could attempt to avoid the reach of Section 337 by separating a single claimed component from an infringing apparatus (such as removing a specific software feature) and importing the apparatus and the component separately. If the imported apparatus or component had proven substantial non-infringing uses, § 271(c) may not apply.[4]

[4] In this circumstance, § 271(c) could still apply to the software component, but even that remedy has been recently challenged by parties before the Commission. In *Certain Digital Models, Digital Data, & Treatment Plans for Use in Making Incremental Dental Positioning Adjustment Appliances, the Appliances Made Therefrom, & Methods of Producing Same* ("*Digital Models*"), Inv. No. 337-TA-833, the Respondents argued that digital data sets were not "articles" within the meaning of section 337 and that uploading such data sets onto a domestic server was not an importation within the meaning of section 337. *Digital Models*, Inv. No. 337-TA-833, USITC Pub. 531514 at 21 (Apr. 9, 2014) (Final).

The Commission disagreed and affirmed its authority to find a violation based on the importation of digital data sets and to issue a remedy against such conduct. Specifically, the Commission "affirm[ed] the ALJ's conclusion that the accused products are 'articles' within the meaning of Section 337(a)(1)(B) and that the mode of bringing the accused products into the United States constitutes importation of the accused products into the United States pursuant to Section 337(a)(1)(B)." *Id.* at 34. The Commission then issued a cease and desist order that prohibits the importation, either electronically or otherwise, of the accused products into the United States. *Id.* at 144-48.

Although the Commission has vindicated its authority in this regard, it also stayed the imposition of the cease and desist order pending appeal, finding that the issue presented "an 'admittedly difficult question.'" *Digital Models*, Inv. No. 337-

## III. IF THE COURT MAINTAINS THE PANEL'S CENTRAL HOLDING, THE SCOPE OF THAT HOLDING MUST BE CLARIFIED

If the Court were to ultimately affirm the panel's holding, the Court should further make clear that the holding is limited to the particular facts of the case and that contributory infringement remains an actionable basis for a Section 337 violation. The panel held that the Commission may not find a violation premised on a respondent's inducement of infringement under section 271(b) if the acts of underlying direct infringement occur after importation. *Suprema*, 742 F.3d at 1360-61.

If it stands, the panel opinion should be narrowly read as limited to violations based on claims of induced infringement. *Suprema*, 742 F.3d at 1361 n.4 ("Our holding is far narrower than the dissent asserts; as we explain, virtually all of the mischief the dissent fears can be addressed by the ITC via resort to § 271(a) or § 271(c) . . . ."). This Court has previously affirmed the Commission's authority with regard to contributory infringement where direct infringement occurred after importation, and the panel opinion in this action should not be used to challenge that prior precedent. *See Spansion,* 629 F.3d at 1353-54.

---

TA-833, USITC Pub. 535532 at 5-11 (June 11, 2014) (Final). The Commission's decision in 833 is currently under appeal to this Court. *ClearCorrect Operating, LLC v. Int'l Trade Comm'n*, *appeal docketed*, No. 14-1527 (Fed. Cir. June 5, 2014).

Nevertheless, certain *amici* have seized on language in the opinion in an attempt to argue that contributory infringement is no longer a valid basis for violations of Section 337. *See, e.g.,* Brief of Amicus Curiae Microsoft Corporation in Support of Neither Party, at 18-19 ("[T]he Court should make clear that Section 337(a)(1)(B)(i) can cover neither inducement nor contributory infringement when direct infringement occurs after importation."). Allowing this type of expansion of the panel's erroneous opinion, even if it stands, would further severely damage U.S. patent holders and prevent Section 337 from reaching the very conduct it was enacted to prevent.

### A. The Panel Opinion Does Not Impact Violations Based on Contributory Infringement

The panel answered a narrow question: "whether a § 337(a)(1)(B)(i) violation may be predicated on a claim of induced infringement where the attendant direct infringement of the claimed method does not occur until post-importation." *Suprema*, 742 F.3d at 1357. To decide that issue, the majority turned to the statutory phrase "articles that . . . infringe," and then looked to patent law to determine whether an imported good is an article that infringes. *Id.* at 1358-59. The majority then differentiated between inducement of infringement, explaining that "Section 271(b) makes unlawful certain conduct (inducing infringement) that becomes tied to an article only through the underlying direct infringement," and Section 271(a) and 271(c), which "essentially define articles

that infringe." *Id.* at 1360-61. Although the majority's conclusion regarding Section 271(b) unduly and inappropriately restricts its application, under the panel's own reasoning, the logic used to reach that conclusion cannot be applied to 271(c). For contributory infringement, the "article that infringes" is the article being imported because that article has no substantial non-infringing use at the time of importation. Thus, § 271(c) remains a viable basis for Section 337 violations, regardless of whether direct infringement occurs after importation. *Id.* at 1361 n.4.

The "article" in Section 271(c) is the "component or a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process" and the act of infringement is the sale or importation of that article. 35 U.S.C. § 271(c). Thus, while there is no contributory infringement in the absence of direct infringement, *ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1037 (Fed. Cir. 2009), the timing of direct infringement is immaterial for defining an article that infringes under § 271(c).

### B. Extending the Panel's Holding to Contributory Infringement Has Dangerous Ramifications for the Reach of Section 337

As described above, certain *amici* advocate that the panel opinion should further constrain the Commission's authority to remedy unfair trade practices by immunizing acts of contributory infringement if direct infringement does not occur

until after importation. Such reasoning would further severely impair the rights of U.S. patent holders because even the importation of articles with no substantial non-infringing uses would fall outside of Section 337. That cannot be what Congress intended.

Unlike the panel opinion, which is focused on method claims, both apparatus and method claim would fare poorly under such reasoning. As long as an imported article did not directly infringe before or at the time of importation, it would risk falling beyond the Commission's authority. Thus, importers could attempt to circumvent Section 337 by, for example, importing a disassembled product. In such a situation, even if the imported articles had no substantial non-infringing uses and the final assembly steps were completely trivial, the importer could still attempt to skirt Section 337 if the patented invention were not assembled until after importation.

The reading of the panel opinion urged by certain *amici* would create gaps so wide in the Commission's authority that it may render Section 337 essentially meaningless. Accordingly, if the Court determines to adopt the panel's central narrow holding, the Court should further clarify the appropriate scope of its ruling to preclude such arguments intended to broaden that holding in a manner even more harmful to the legitimate enforcement of U.S. patent rights.

## CONCLUSION

The Court should reverse the panel opinion, and reinstate long-standing precedent establishing that a violation of Section 337 can be predicated on indirect (induced) infringement of a method claim where direct infringement occurs after importation. Alternatively, the Court should at a minimum further clarify that the scope of that panel opinion does not extend to indirect (contributory) infringement under § 271(c).

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(b) and 32(a)(7)(B) and Federal Circuit Rule 35(g). This brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), does not exceed 3,328 words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

Dated: October 22, 2014

By: /s/ John D. Haynes
John D. Haynes
ALSTON & BIRD LLP
*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

# United States Court of Appeals for the Federal Circuit

*Suprema, Inc. v. ITC*, 2012-1170

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by ALSTON & BIRD LLP, Attorneys for Amicus Curiae to print this document. I am an employee of Counsel Press.

On **October 22, 2014**, counsel has authorized me to electronically file the foregoing **Brief for Amicus Curiae Nokia Corporation and Nokia USA Inc.** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Darryl M. Woo
*(Principal Counsel)*
Bryan A. Kohm
David M.L. Kusters
Heather N. Mewes
Ilana Rubel
Erin Simon
FENWICK & WEST, LLP
555 California Street, 12th Floor
San Francisco, CA 94104
415-875-2300
dwoo@fenwick.com
bkohm@fenwick.com
dlacykusters@fenwick.com
hmewes@fenwick.com
irubel@fenwick.com
esimon@fenwick.com
*Counsel for Appellants*

Bradley T. Meissner
Jae Won Song
Fenwick & West Llp
1191 Second Avenue
Seattle, WA 98101
206-389-4546
bmeissner@fenwick.com
jsong@fenwick.com
*Counsel for Appellants*

Maximilian A. Grant
*(Principal Counsel)*
Gabriel Bell
Bert C. Reiser
LATHAM & WATKINS LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
202-637-2200
max.grant@lw.com
gabriel.bell@lw.com
bert.reiser@lw.com
*Counsel for Intervenor*

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
212-906-1200
clement.naples@lw.com
*Counsel for Intervenor*

Clark S. Cheney
*(Principal Counsel)*
Andrea C. Casson
Clint A. Gerdine
Wayne W. Herrington
Office of General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC 20436
202-205-2661
clark.cheney@usitc.gov
andrea.casson@usitc.gov
clint.gerdine@usitc.gov
wayne.herrington@usitc.gov
*Counsel for Appellee*

Paper copies will also be mailed to the above principal counsel for each party on this date. Any counsel for Amici Curiae, registered as CM/ECF users and appearing in this matter at the time of filing, will be served only through the ECF notice of the filing.

Unless otherwise noted, thirty copies will be filed with the Court, via Federal Express, on this date.

October 22, 2014

/s/ John Kruesi
Counsel Press