**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**2012-1170**

SUPREMA, INC. and MENTALIX, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor*.

---

On Appeal from the United States International Trade Commission in Investigation No. 337-TA-720

---

# APPELLANTS' NON-CONFIDENTIAL EN BANC REPLY BRIEF

Darryl M. Woo
VINSON & ELKINS LLP
525 Market Street Suite 2750
San Francisco, CA 94105
Telephone: (415) 979-6900
Facsimile: (415) 651-8786

Jae Won Song
Ilana S. Rubel
Bryan A. Kohm
David M. Lacy Kusters
Bradley T. Meissner
FENWICK & WEST LLP
555 California St., 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

*Attorneys for Respondents-Appellants SUPREMA, INC. and MENTALIX, INC.*

## CERTIFICATE OF INTEREST

Counsel for the Appellants, Suprema, Inc. and Mentalix, Inc., certifies the following:

1. The full name of every party or amicus represented by me is:

   Suprema, Inc.
   Mentalix, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   As indicated in item 1.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| Law Firm | Attorneys |
|---|---|
| Vinson & Elkins LLP | Darryl M. Woo |
| Fenwick & West LLP | Jae Won Song<br>Ilana S. Rubel<br>Bryan A. Kohm<br>Bradley T. Meissner<br>David M. Lacy Kusters<br>Lauren E. Whittemore<br>Ravi R. Ranganath |
| Formerly with Fenwick & West LLP | Heather N. Mewes<br>Erin Simon<br>Clifford Webb |

| | |
|---|---|
| Adduci, Mastriani & Schaumberg LLP | V. James Adduci, II<br>Rowan E. Morris<br>Munford Page Hall, II<br>Jonathan J. Engler<br>Daniel F. Smith |

Dated: November 21, 2014

By: */s/ Darryl M. Woo*
Darryl M. Woo
*Counsel for Respondents-Appellants*

# TABLE OF CONTENTS

**Page**

[NOTE: This brief contains information that has been determined to be confidential because it relates to the parties' non-public business practices; this information is subject to a protective order. As a result, certain portions of this brief have been designated as confidential. Pursuant to Rule 28(d)(1)(B) of this Court's Rules of Practice, those confidential portions have been removed from this non-confidential version of the brief.]

CERTIFICATE OF INTEREST .......... i

TABLE OF ABBREVIATIONS .......... viii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. INDUCEMENT OF DOMESTIC INFRINGEMENT OF A METHOD CLAIM WITH A NEXUS TO IMPORTED ARTICLES DOES NOT CONSTITUTE AN "ARTICLE THAT – INFRINGES" UNDER SECTION 337 .......... 3

A. No Pertinent Commission Interpretation Exists to Which to Give Deference .......... 3

1. The Commission Applied the Rejected Nexus Test Here .......... 4

2. *Electronic Devices* Did Not Address Inducement of Domestic Infringement of a Method Claim .......... 5

B. Appellees' Arguments Contravene the Plain Statutory Language and the Commission's Analysis in *Electronic Devices* .......... 6

1. Appellees' Argument That "articles that – infringe" Means Acts of Infringement Under Section 271 Disregards the Plain Language of Section 337(a)(1)(B)(i) .......... 7

2. Appellees' Argument that Staple Articles Are Transformed into Infringing Articles by an Alleged Act of Inducement Lacks Support in Section 337 and Section 271 .......... 9

C. The Commission Itself Rejected the Utility of Its Precedent Prior to *Electronic Devices* Because the Wrong Statutory Language or Test Was Applied .......... 11

## TABLE OF CONTENTS
## (Continued)

**Page**

D. Appellees' Reliance on Congressional "Ratification" and on Legislative History Is Unavailing ....................11

II. THE COMMISSION'S FINDING OF WILLFUL BLINDNESS CANNOT WITHSTAND REVIEW ....................17

A. Counsel's Embellished Factual Findings Should Not Be Given Deference ....................19

B. Suprema's Conduct Does Not Compare to the Conduct Found to Support a Willful Blindness Finding in *Global-Tech* ....................24

C. Because of Factual Impossibility, the Finding of Willful Blindness Cannot Survive Under Any Standard of Review ....................26

III. THE COMMISSION ERRED IN DETERMINING CLAIM 19 IS INFRINGED ....................27

CONCLUSION ....................32

CERTIFICATE OF SERVICE ....................33

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS WITH FRAP 32(A)(7)(B) AND FEDERAL CIRCUIT RULE 32 ....................34

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alloc, Inc. v. Int'l Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003) ....................................................................14

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)..................................................................................3, 6

*Broadcom Corp. v. Int'l Trade Comm'n*,
542 F.3d 894 (Fed. Cir. 2008) ......................................................................14

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962)..........................................................................19, 20, 23

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000) ....................................................................30

*Certain Chemiluminescent Compositions*,
Inv. No. 337-TA-285, 0091 ..........................................................................14

*Certain Digital Televisions*,
Inv. No. 337-TA-617, 2008 WL 5324356 (Nov. 17, 2008), *aff'd in part*, Comm'n Op., 2009 WL 1124461 (Apr. 23, 2009), *aff'd in part sub nom., Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330 (Fed. Cir. 2010).........................................................................................14

*Certain Electronic Devices with Image Processing Sys., Components Thereof, and Assoc. Software*,
Inv. No. 337- TA-724, 2012 WL 3246515 (Dec. 21, 2011)........................*passim*

*Certain Molded-In Sandwich Panel Inserts & Methods for their Installation*,
Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982).......................................14

*Certain Minoxidil Powder, Salts and Compositions for Use in Hair Treatment*,
Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988).................................14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*,
566 F.3d 1028 (Fed. Cir. 2009) ........................................................................14

*Frischer & Co. v. Bakelite Corp.*,
39 F.2d 247 (C.C.P.A. 1930) ............................................................................13

*Global-Tech Appliances v. SEB S.A.*,
131 S. Ct. 2060 (2011)..........................................................................*passim*

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008) ........................................................................30

*In re Donaldson Co.*,
16 F.3d 1189 & 1194 (Fed. Cir. 1994) ..............................................................15

*In re Kretzinger*,
103 F.3d 943 (10th Cir.1996) .....................................................................18, 19

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ........................................................................31

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008) ........................................................................14

*Micron Tech., Inc. v. United States*,
243 F.3d 1301 (Fed. Cir. 2001) ..................................................................15, 16

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947)..........................................................................................24

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
754 F.2d 345 (Fed. Cir. 1985) ..........................................................................10

*Young Engineers, Inc. v. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983) ..................................................................13, 14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

STATUTES

19 U.S.C. § 1337 .................... *passim*

35 U.S.C. § 271 .................... *passim*

S. Rep. No. 67-595 (1922) .................... 12

S. Rep. 100-71 (1987) .................... 16

Tariff Act of 1922, Pub. L. No. 67-318, § 316, 42 Stat. 858 .................... 12

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| ’344 patent | U.S. Patent No. 7,203,344 (asserted patent) |
| ’562 patent | U.S. Patent No. 7,277,562 (asserted patent) |
| ’993 patent | U.S. Patent No. 5,900,993 (asserted patent) |
| ’932 patent | U.S. Patent No. 6,483,932 |
| CALJ | Chief Administrative Law Judge |
| Commission | U.S. International Trade Commission |
| Commission Br. | Confidential En Banc Brief of Appellee International Trade Commission |
| Cross Match | Cross Match Technologies, Inc. |
| Cross Match Br. | Brief for Intervenor on Rehearing En Banc |
| *Electronic Devices* | *In re Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, Inv. No. 337- TA-724, USITC Pub. No. 4374, Comm’n Op., 2012 WL 3246515 (Dec. 21, 2011) |
| *Global-Tech* | *Global-Tech Appliances v. SEB S.A.*, 131 S. Ct. 2060 (2011) |
| Mentalix | Mentalix, Inc. |
| NIST | U.S. National Institute of Standards and Technology |
| section 271 | 35 U.S.C. § 271 |
| section 337 | 19 U.S.C. § 1337(a)(1)(B) |
| SDK | Software Development Kit |
| Suprema | Suprema, Inc. |

## INTRODUCTION

The flaws in the arguments offered by Appellees[1] are numerous and fatal. Regarding Section 337, Appellees inappropriately rely on Commission opinions issued *prior* to (and superseded by) *Electronic Devices* and the 1988 amendments, as well as unfounded predictions of dire results arising from the Panel's correct conclusion that inducement of domestic infringement of a method claim, alone, cannot support a Section 337 violation. Ultimately, none of Appellees' faulty rationales overcome the plain statutory language. In *Electronic Devices*, the Commission unequivocally explained that Section 337 requires the articles themselves, not the act of the person associated with them, infringe.

Appellees also assert that the "Commission's" interpretation of "articles that – infringe" must be given deference. But the Commission has not interpreted "articles that – infringe" to include induced infringement in any decision since (or before) its rejection of the nexus test. No deference is owed to the attorney argument of the Commission's counsel that an act of infringement need only be connected to imported articles. Such undermines the principles articulated in the Commission's own interpretation of the statute in *Electronic Devices* and revives the nexus test, which the Commission itself found contravenes Section 337's statutory language.

[1] Although Cross Match is the Intervenor, for the sake of brevity, the term "Appellees" collectively refers to the Commission and Cross Match.

Appellees' arguments concerning willful blindness similarly miss the mark, giving mere lip service to the proper standard, but never actually applying it. Simply put, the "fact" as to which Suprema allegedly sought to be blind—that Mentalix's FedSubmit software based on NIST segmentation algorithms, combined with Suprema's scanners, infringes claim 19 of the '344 patent—was a temporal impossibility. Each of the supposed "deliberate acts of avoidance" took place long before Suprema had even engaged Mentalix as a customer, and it thus could not have had any basis to know that Mentalix in the future would add the allegedly infringing functionality.

Appellees' arguments concerning direct infringement of claim 19 are also unavailing. Those arguments depend on construing "area" and "shape" in a way that is inconsistent with the claim language and the purpose of the determination of "area" and "shape," as well as the plain meaning of the terms.

## ARGUMENT

### I. INDUCEMENT OF DOMESTIC INFRINGEMENT OF A METHOD CLAIM WITH A NEXUS TO IMPORTED ARTICLES DOES NOT CONSTITUTE AN "ARTICLE THAT – INFRINGES" UNDER SECTION 337

#### A. No Pertinent Commission Interpretation Exists to Which to Give Deference

Following its rejection of the nexus test, the Commission has never addressed whether inducement of domestic infringement of a method claim, alone, may violate Section 337(a)(1)(B)(i). In *Electronic Devices*, the issue was direct infringement. *Certain Electronic Devices with Image Processing Sys., Components Thereof, and Assoc. Software*, Inv. No. 337- TA-724, 2012 WL 3246515, at *12–15 (Dec. 21, 2011) ("*Electronic Devices*"). That case also, in *dicta*, explained how articles could infringe under a contributory infringement theory, but it never addressed inducement. *Id*. at *9 n.9. The "interpretation" now advanced by Appellees' counsel is owed no deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–213 (1988) ("[W]e have declined to give deference to an agency's counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and *not to appellate counsel* the responsibility for elaborating and enforcing statutory commands.'") (citation omitted; emphasis added). Therefore, even if the statute were ambiguous, there is

no prior Commission opinion establishing inducement as a sufficient basis for a Section 337 violation to which this Court could defer.

### 1. The Commission Applied the Rejected Nexus Test Here

Because the Commission's finding of a violation arose from its application of the discredited nexus test, no interpretation of "articles that – infringe" occurred in the present matter to which to give deference. In finding a violation as to Mentalix, the Commission explained, "Mentalix is a direct infringer and *has violated section 337* ***if a nexus*** *is found* between the importation of the Suprema scanners and SDK and the *unfair act of infringement*." (A000220 (emphasis added).) Apparently recognizing it applied the wrong test, the Commission nowhere in its briefing contends that the violation should be upheld as to Mentalix.[2] The Commission similarly applied the nexus test to Suprema—spending three pages addressing the "nexus between unfair acts and importation" purportedly giving rise to a Section 337 violation as to Suprema. (A000230–232.)

Given the Commission's explicit reliance on the nexus test despite its unequivocal rejection of that test, no clear interpretation of "articles that – infringe" occurred here to which one could defer.

[2] The Commission should have withdrawn its finding of a violation of the '344 patent as to Mentalix, but instead sought to sweep the issue under the rug. Appellants respectfully request that the Court reverse the finding as to Mentalix and grant any other appropriate relief.

### 2. *Electronic Devices* Did Not Address Inducement of Domestic Infringement of a Method Claim

Contrary to Appellees' contention, the Commission never interpreted "articles that – infringe" to include inducement of domestic direct infringement of a method claim in *Electronic Devices*. In rejecting the nexus test as violative of the plain language of the statute, the Commission "interpret[ed] the phrase 'articles that – infringe' to reference the status of the articles "at the time of importation." 2012 WL 3246515, at *9. The Commission elaborated, "[t]hus, infringement, direct or indirect, must be based on the articles as imported to satisfy the requirements of section 337." *Id*. Appellees argue that the Commission's reference to "indirect" infringement in the previous sentence constitutes an interpretation that inducement alone constitutes "articles that – infringe." But the Commission's own analysis confirms that it does not.

Addressing what is an infringing article, the Commission explained "[a]n article directly infringes a patent claim when every claim limitation can be found in the accused product." *Id*. Because *the article itself* in *Electronic Devices* did not embody every claim limitation, despite a clear nexus between the article and the infringement, the Commission determined that it was not an "article[] that – infringes." *Id*. at *9–10.

In a footnote, the Commission addressed how an article could indirectly infringe: if "the imported article [is] 'a component of a patented machine,

manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention' that is 'especially adapted for use in an infringement' of a patent, and 'not a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Id*. at *9 n.9 (quoting Section 271(c)). The opinion, thus, expressly contemplated only contributory infringement as grounds for a Section 337 violation; it never interpreted "articles that – infringe" to apply to *acts* of inducement involving staple articles of commerce.

Given that the Commission did not address inducement in *Electronic Devices* or elsewhere following its rejection of the nexus test, "[d]eference to what appears to be nothing more than [the Commission's] convenient litigating position would be entirely inappropriate." *See Bowen*, 488 U.S. at 212–213 (refusing to defer to an agency's appellate counsel's interpretation).

### B. Appellees' Arguments Contravene the Plain Statutory Language and the Commission's Analysis in *Electronic Devices*

Appellees offer two theories regarding how inducement of domestic direct infringement of a method claim satisfies the "articles that – infringe" element of Section 337(a)(1)(B)(i). The first is that "articles that – infringe" encompasses any act of infringement under Section 271 tied to the importation of articles. The second amounts to a suggestion that *staple articles* of commerce are transformed into *infringing articles* upon an act of inducement. Neither theory can be

reconciled with Section 337(a)(1)(B)(i) or with the Commission's analysis of "articles that – infringe" in *Electronic Devices*.

### 1. Appellees' Argument That "articles that – infringe" Means Acts of Infringement Under Section 271 Disregards the Plain Language of Section 337(a)(1)(B)(i)

Appellees suggest that "articles that – infringe" must encompass all acts of infringement under Section 271 tied to articles. Because persons, not articles, infringe a patent, they argue the phrase "articles that – infringe" as used in Section 337(a)(1)(B)(i) must mean infringement resulting from the acts of persons, including inducement of infringement. (Commission Br. at 22–27; Cross Match Br. at 18–26.) They ostensibly advocate terminating the *in rem* nature of Section 337 and making it instead an *in personam* statute.

But contrary to Appellees' argument, both Sections 271 (a) and (c), and Section 337, distinguish between "acts" and "articles." Sections 271 (a) and (c) address the acts of a person who makes/uses/sells/imports/offers to sell, and the article acted upon—the patented invention.[3] Similarly, Section 337 distinguishes acts relating to importation from the articles acted upon; here, "articles that – infringe." Appellees thus improperly vitiate the statutory distinction by conflating

[3] A patented invention is not always an article. The Commission recognized this; *Electronic Devices* held that the act of practicing a method claim is not an "article that infringes," even where the article is used to practice the claim.

an infringing act—importation of staple articles later used to infringe a method claim—with the article itself.

Unlike Sections 271 (a) and (c), which (like Section 337) distinguish between "acts" and "articles," Section 271(b) contains no reference to any articles. Rather, Section 271(b) defines infringement purely *in personam*: "whoever actively induces infringement of a patent." Section 271(b) contemplates no *in rem* action, whereas Section 337 contemplates **only** *in rem* action.

Contrary to the position its counsel now advocates, the Commission correctly stated in *Electronic Devices* that Section 337 distinguishes between acts and articles acted upon. *Electronic Devices*, 2012 WL 3246515, at *9. The Commission's *counsel* now attempts to reverse course and conflate the two. But there is no basis to do so in the face of Section 337's plain language, which unequivocally provides that it is violated only where there was importation of articles that infringe. As the Commission explained:

> The plain language of the statute first identifies three specific acts that may form the basis of a violation of section 337: importation, selling for importation, and selling after importation. The statute then specifies, in list form, categories of articles that must be involved in the proscribed acts. First on the list are "articles that – infringe" a U.S. patent.

*Electronic Devices*, 2012 WL 3246515, at *9.

Counsel's present argument disregards the "plain language of the statute." The Commission earlier acknowledged that Section 337 requires both an act and

an *infringing article*. Finding a violation by tying the imported staple articles to the proscribed act resurrects the discarded nexus test and eviscerates the *in rem* basis of Section 337.

Appellees' argument lacks not only legal but *also* grammatical support. As written, the term "articles" is the object of the prepositional phrase "of articles that – infringe." "Articles that – infringe" operates as a restrictive clause, wherein a required condition—infringe—is applied to "articles." Under this correct interpretation, the subject ("articles") and verb ("infringe") agree in number. But under Appellees' asserted reading, the verb "infringe" would be paired instead with the subject "importation," resulting in classic subject-verb disagreement. Congress cannot have intended such a grammatical disconnect. Thus Appellants' interpretation is correct.

**2. Appellees' Argument that Staple Articles Are Transformed into Infringing Articles by an Alleged Act of Inducement Lacks Support in Section 337 and Section 271**

The core, insurmountable flaw in Appellees' position is that a staple article is not an infringing article. Appellees try to gloss this over by asserting that an act of inducement with a nexus to imported articles transforms those articles into "articles that – infringe." (Commission Br. at 27–33; Cross Match Br. at 18–26.) Nothing in either Section 337 or 271 supports this contention.

As discussed above, Section 337 distinguishes between the act and articles acted upon. Unlike the pre-1988 version, the prohibition in the current version of Section 337(a)(1)(B)(i) is not an unfair act (*i.e.* inducement of domestic infringement), but, instead, the importation of infringing articles. *Electronic Devices*, 2012 WL 3246515, at *11. As the Commission reasoned in *Electronic Devices*, one must look to Section 271 for guidance to determine which *articles* could be said to infringe a patent, as opposed to the acts for which a person may be found liable for patent infringement. *Id*. at *9 and n.9. Sections 271(a)-(c) each address acts for which a person may be held liable for infringement, but only (a) and (c) speak of articles. Section 271(b) references only acts, not articles, and does not contemplate that inducement could render an article itself infringing.

Appellees' reliance on *Standard Oil* is a red herring. Whether liability arises before or after importation of the articles focuses only on the *act* of inducement. But that does not in any way suggest that such an act under Section 271(b) transforms a staple article into an infringing article. Indeed, *Standard Oil* addressed a very different issue—whether liability relates back to the act of inducement for the purpose of determining laches. *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347–348 (Fed. Cir. 1985). It does not stand for the proposition that inducement causes staple articles to magically transform into infringing articles.

### C. The Commission Itself Rejected the Utility of Its Precedent Prior to *Electronic Devices* Because the Wrong Statutory Language or Test Was Applied

Appellees wrongly contend that Commission precedent supports the notion that an act of inducement constitutes "articles that – infringe." In *Electronic Devices*, the complainant asserted that a long history of Commission precedent supported a violation based on infringement of a method claim. But as the Commission correctly observed, unlike the pre-1988 version, the "modern section 337(a)(1)(B)(i) does not concern unfair acts relating to 'importation of articles' generally but instead expressly applies to the importation, sale for importation, and sale in the United States after importation of 'articles *that – infringe*' U.S. patents." *Electronic Devices*, 2012 WL 3246515, at *11. The Commission similarly rejected precedent following the 1988 amendments because those decisions "continued to use the obsolete nexus language from *Steel Pipe*." *Id*.

Given the Commission's acknowledgement that pre-*Electronic Devices* precedent applies the wrong statute or nexus standard, such precedent does not apply here.

### D. Appellees' Reliance on Congressional "Ratification" and on Legislative History Is Unavailing

With no textual support for their interpretation of Section 337(a)(1)(B), Appellees fall back on purported evidence that Congress, in enacting the 1988 amendments, intended to adopt the Commission's view that Section 337(a)(1)(B)

reaches the importation of non-infringing staple articles implicated in inducement of domestic patent infringement. (*See* Commission Br. at 28–33; Cross Match Br. at 26–32.) Neither the decisions cited by Appellees nor the relevant statutory or legislative history supports their view.

First, Appellees cite a Senate report on the Tariff Act of 1922, which they assert states that Section 337's predecessor could reach "every type and form of unfair practice." (Commission Br. at 29 (quoting S. Rep. No. 67-595 at 3 (1922)); Cross Match Br. at 27 (same).) But Appellees ignore the critical differences between the language of Section 337's predecessor statute and Section 337(a)(1)(B). Section 316 of the Tariff Act of 1922 declared unlawful "unfair methods of competition and unfair acts in the importation of articles." *See* Pub. L. No. 67-318, 42 Stat. 858, 943. As the Commission has recognized, in enacting Section 337(a)(1)(B), Congress chose ***not*** to refer broadly to "unfair acts," but instead elected to "expressly define[] the relevant unfair acts to be importation, sale for importation, and sale after importation of 'articles that – *infringe*' U.S. patents." *Electronic Devices*, 2012 WL 3246515, at *11.

Second, the cases cited by Appellees do not demonstrate any practice, either before or after the 1988 amendments, of finding violations of Section 337 or its predecessor statute solely based on the importation of staple articles claimed to induce domestic patent infringement. Appellees rely heavily on two pre-1988

cases, *Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247 (C.C.P.A. 1930), and *Young Engineers, Inc. v. U.S. International Trade Commission*, 721 F.2d 1305 (Fed. Cir. 1983), but neither case saves their argument. Contrary to the Commission's suggestion (Commission Br. at 30–31), *Frischer* did *not* involve either inducement or the importation of non-infringing staple articles. Rather, the *Frischer* court found that the imported products themselves infringed[4] the complainants' patents. *See* 39 F.2d at 256–257, 259–260.

*Young Engineers* is similarly inapposite. It involved the importation and sale of directly infringing articles, hence offers no support for the proposition that a Section 337 violation can be premised on inducement where only non-infringing

[4] *Frischer*, decided in 1930, involved the importation of articles produced abroad using a process patented in the United States. *See* 39 F.2d at 257. Such importation violated the complainants' patent rights and was an unfair act under Section 337's predecessor statute (which then lacked any mention of "articles that infringe"). The opinion did not discuss inducement or what constitutes an "article that infringes."

staple articles are imported. *See* 721 F.2d at 1308–09.[5] *Young Engineers* is also inapplicable because the Commission's underlying Section 337 exclusion order relied on the "nexus" test, which the Commission has since repudiated in *Electronic Devices*. *See Certain Molded-In Sandwich Panel Inserts & Methods for their Installation*, Inv. No. 337-TA-99, 1982 WL 61887, at *3 (Apr. 9, 1982) (stating that Section 337(a) requires only "some nexus between the unfair methods or acts and importation"); *Electronic Devices*, 2012 WL 3246515, at *11 (Dec. 21,

---

[5] The other decisions cited by Appellees are likewise off-base. None expressly considered the Commission's authority based solely on inducement. Where a Section 337 violation was found, the conduct found to induce infringement of the method patents at issue included the importation or sale of articles that themselves ***directly infringed*** and/or contributorily infringed the complainants' product patents, so the finding of inducement was not the predicate for a violation of Section 337. *See Certain Chemiluminescent Compositions*, Inv. No. 337-TA-285, 0091 WL 11732560, at *29 (Mar. 1991) (direct infringement); *Certain Digital Televisions*, Inv. No. 337-TA-617, 2008 WL 5324356, at *30–31 (Nov. 17, 2008), *aff'd in part*, Comm'n Op., 2009 WL 1124461 (Apr. 23, 2009), *aff'd in part sub nom., Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330 (Fed. Cir. 2010) (direct infringement); *Certain Minoxidil Powder, Salts and Compositions for Use in Hair Treatment*, Inv. No. 337-TA-267, 1988 WL 582867, at *6 (Feb. 16, 1988) (direct and contributory infringement).

The Commission also relies on several cases that involved findings of no infringement (direct or indirect), and thus provide no authority for the Commission's position. *See ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1033, 1037 (Fed. Cir. 2009); *Broadcom Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 896, 898–900 (Fed. Cir. 2008); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003). Finally, *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1355 (Fed. Cir. 2008) involved alleged inducement resulting in the importation of directly infringing products, hence does not stand for the proposition that inducement alone suffices for a Section 337 violation.

2011) (rejecting "nexus" test because "the modern section 337(a)(1)(B) does not concern unfair acts relating to 'importation of articles' generally" but instead expressly applies to the importation of 'articles *that – infringe*' U.S. patents).

Third, Appellees' "ratification" arguments fail for the additional and independent reason that neither the Commission nor Cross Match has come forward with *any evidence* that Congress was actually aware of or intended to adopt the Commission's supposed interpretation, either in 1988 or at any time thereafter. *See Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1311–12 (Fed. Cir. 2001) (finding no implied Congressional ratification where party "presented no evidence" that Congress knew of particular agency interpretation); *In re Donaldson Co.*, 16 F.3d 1189, 1193 n.3 & 1194 (Fed. Cir. 1994) (rejecting implied adoption argument absent evidence of specific Congressional awareness of agency interpretation and rejecting agency claim to deference based on alleged longstanding practice: "The fact that the PTO may have failed to adhere to a statutory mandate over an extended period of time does not justify its continuing to do so.").

Appellees cite two statements from the legislative history of the 1988 amendments as evidence that Congress intended Section 337(a)(1)(B) to reach inducement of infringement involving the importation of staple articles. Appellees first cite the Conference Report for the 1988 Tariff Act amendments (Commission

Br. 28; Cross Match Br. 32), but that report's single reference to an intent not to change implementation of "current law," with no mention of any particular Commission practice or decision, is insufficient to show that Congress adopted the Commission's position here. *See Micron Tech.*, 243 F.3d at 1312 (ambiguous references to "current practice" in congressional report "fall far short of demonstrating that Congress was aware of [an agency's] interpretation, or that it endorsed it").

Appellees also cite a statement from the Senate Report on the 1988 Tariff Act amendments that Section 337(a)(1)(B) was intended to "strengthen the effectiveness" of Section 337 in addressing "the importation of articles which infringe intellectual property rights." S. Rep. 100-71, at 128 (1987). Appellees contend that Appellants' interpretation of Section 337(a)(1)(B) would improperly "reduce liability" under Section 337(a)(1)(B) and weaken Section 337. (Commission Br. at 32.) However, the Commission's own interpretation in *Electronic Devices* belies Appellees' position. Prior to the 1988 amendments, direct infringement of a method claim provided a viable basis for a Section 337 violation. But, as the Commission held in *Electronic Devices*, the 1988 amendments modified the scope of the statute, excluding direct infringement of method claims. That holding clashes with Appellees' current argument that the 1988 amendments could not be read to reduce the reach of Section 337.

Appellees ignore the far more reasonable explanation for the statement from the Senate Report. As Appellants noted in their opening brief, the 1988 amendments creating Section 337(a)(1)(B) indisputably strengthened the Commission's ability to address patent infringement by eliminating the domestic injury requirement with respect to the importation of articles that infringe U.S. patents. The statement that Section 337(a)(1)(B) would "strengthen the effectiveness" of Section 337 rationally relates to the elimination of the domestic injury requirement (indeed, the quoted language appears under the heading "*Injury to 'Efficiently and Economically Operated' U.S. Industry*," S. Rep. 100-71, at 127). It is not evidence of Congressional intent to disregard its own statutory language confining the reach of Section 337(a)(1)(B) to "articles that infringe," and instead bring in all forms of patent infringement with any connection to importation, including the importation of staple articles.

## II. THE COMMISSION'S FINDING OF WILLFUL BLINDNESS CANNOT WITHSTAND REVIEW

Seeking the deference of a substantial evidence standard of review, the Commission criticizes Appellants for "attempt[ing] to manufacture legal issues on appeal to obtain less deferential review." (Commission Br. at 43.) The Commission contends that because it recited the correct rule, regardless of the standard actually applied, no legal error occurred. (*Id.*) But such a simplistic view lacks support. The Commission must correctly *apply* the rule to avoid legal error.

*See, e.g., In re Kretzinger*, 103 F.3d 943, 946 (10th Cir.1996) ("when a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of [a lesser standard of review] but are subject to *de novo* review."). As detailed in Appellants' briefing, the Commission Opinion fails to identify any acts taken by Suprema with the intent to avoid learning of Mentalix's infringement.

Indeed, the acts cited by the Commission occurred well before Suprema had any awareness that Mentalix would integrate NIST segmentation algorithms into the FedSubmit software, the sole combination found to perform claim 19 of the '344 patent. The acts purportedly constituting knowledge-avoidance occurred before Mentalix was even a customer. Without a crystal ball, Suprema could not have actively sought to avoid learning of Mentalix's alleged infringement during the period relied on by the Commission, nor would Suprema have possessed motivation to avoid the '344 patent. Thus, no application of the proper legal standard could have led to a willful blindness finding here.

In apparent recognition that the factual findings below do not support any finding of willful blindness, the Commission Brief contains gross mischaracterizations and rewriting of the factual record underlying willful blindness. Counsel's supplemental "findings" cannot be considered under a substantial evidence standard. Review of the Commission's opinion must be based

on the factual findings actually made by the Commission.[6] *Id*. A review of those findings demonstrates that the Commission failed to apply *Global-Tech*.

However the issue is framed, the Commission's determination of induced infringement based on willful blindness fails under any standard of review and should be reversed.

### A. Counsel's Embellished Factual Findings Should Not Be Given Deference

Because the Commission's *actual* findings cannot support a finding of willful blindness, counsel resorts to embellishment of the record evidence. Appellants submit the Court should view with skepticism the "facts" cited in the Commission's briefing, and certainly should accord no deference to its *ex post* justifications for its findings below. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

The *Commission's* factual findings with respect to willful blindness were as follows:

1) Suprema sought to develop its own scanners using Cross Match's products as a benchmark, and evaluated those products to "emulate their functionalities." (A000222–223.)

[6] Notably, the CALJ who actually tried the case made no findings of fact supporting willful blindness. The Commission's finding is based on a cold record.

2) Suprema searched for and uncovered the ’562 and ’932 patents, both assigned to Cross Match, and reviewed the ’562 patent, which incorporated by reference the application leading to the ’344 patent. (A000223–224.)

3) “Suprema succeeded in developing into its scanners the autocapture, image quality checking, and automatic segmentation processes that are covered by the ’344 patent.”[7] (A000222.)

4) “Suprema asserts that it did not check to see if the related patent application referenced in the ’562 patent had ever matured into an issued patent.” (A000224.)

5) “Suprema’s . . . fail[ed] to obtain the opinion of counsel . . . [which] undoubtedly would have uncovered the ’344 patent, the fact that both the ’344 and ’562 patents are assigned to Cross Match, and would have analyzed whether Suprema infringed any of the Cross Match patents.” (*Id.*)

Although not in the context of willful blindness, the Commission also found that the functionality of Suprema’s scanners and SDK did not infringe Cross Match’s

[7] It appears this finding results from a drafting error. The Commission expressly found that Suprema’s products did not practice the processes covered by the ’344 patent. (A000229–230.) Only Mentalix’s software was found to directly infringe the method of claim 19 of the ’344 patent.

patents, and thus no copying of Cross Match's functionality occurred. (A000024, A000118–120.) As recited in Appellants' Opening Brief, as well as in the prior briefing, these facts fall far short of satisfying the willful blindness standard recited in *Global-Tech*.

In the Commission Brief, counsel supplements the above in an effort to transform Suprema's good faith acts to avoid patent infringement—which the Commission and Cross Match agree were successful as to the '562 patent and '932 patent, respectively—into willful blindness. Appellants address the more egregious mischaracterizations below:

| Subject / Excerpt from the Commission's En Banc Brief | Response |
|---|---|
| **Purported collaboration between Suprema and Mentalix:**<br><br>*"Suprema solicited Mentalix to collaborate in the development of a fingerprint scanner on par with Cross Match Scanners. A303162–74."* (Commission Br. at 14.)<br><br>*"Suprema stated that it would 'support' Mentalix in its development of fingerprint segmentation software for use with its scanners. A303169."* (Commission Br. at 8.)<br><br>*"Notwithstanding the known risk of infringement, in June 2009 Suprema* | The evidence does not support counsel's characterizations. The "collaboration" between Suprema and Mentalix began *after* the scanners and SDK had been developed and commercially launched. (A303162–74.) Suprema simply supported Mentalix by providing it an extended SDK, which was found not infringe, so FedSubmit could make calls to receive images from Suprema's scanners. (A000227–230; A200313, 1073:3-16.)<br><br>Counsel cites as support for these propositions an email exchange where Mentalix asked what functionality was included in the Suprema SDK. (A303170–72.) Suprema responded that it would provide Mentalix with |

| **Subject / Excerpt from the Commission's En Banc Brief** | **Response** |
| --- | --- |
| *began inducing Mentalix to integrate Suprema devices with Mentalix software in a series of email exchanges between Suprema sales manager David Byun and Mentalix CEO Brian Gross. A303162–74."* (Commission Br. at 39.) | Suprema's extended SDK to "support" Mentalix in implementing autocapture, sequence checking, and segmentation features. (*Id.*) But Mentalix elected not to use Suprema's segmentation functionality and used NIST's instead. (A200313, 1075:14-18; A200314, 1077:4-7.) The Commission found that no Suprema product, including Suprema's segmentation functionality, infringes the '344 patent. (A000024, A000118–120; A000227–230.)<br><br>Counsel cites no evidence that Suprema encouraged Mentalix to implement—or was even aware of—the specific NIST functions ultimately found to infringe the '344 patent. |
| **Suprema's patent search and follow-up efforts:**<br><br>*"Suprema searched for patents containing the words 'Cross Match,' but it only selectively reviewed patents containing those keywords. A400573–74; A200330."* (Commission Br. at 15.)<br><br>*"Despite that fact, Mr. Song never explained why he did not review the infringed '344 patent as he searched patents containing the words 'Cross Match' over several days. See A400573–74."* (Commission Br. at 45.) | The cited portion of Mr. Song's deposition testimony shows that he conducted a "live scanner-related search" using keywords including "Cross Match," among others. (A400573.) Mr. Song testified that search revealed the '562 and '932 patents, but not the '993 or the '344 patents. (A400573.) Mr. Song did not testify that he "selectively" reviewed these patents—indeed, his review was extensive enough to confirm what the CALJ determined and the Commission itself later confirmed, that Suprema did not infringe the '562 patent. (A000210; A000228–230.)<br><br>Moreover, Mr. Song had no reason to "explain" his failure to review the '344 |

| Subject / Excerpt from the Commission's En Banc Brief | Response |
|---|---|
| | patent after his search, as that patent did not come up in his patent search. (A400573.)<br><br>Finally, at the time of his search, Mr. Song had no motivation to avoid the'344 patent, as Suprema's products did *not* infringe that patent. (A000024, A000118–120.) |
| **Suprema's intent:**<br><br>*"Here, the record shows Suprema engaged in deliberate psychological avoidance of knowledge that would confirm infringement."* (Commission Br. at 44.) | There were no findings—either by the CALJ or the Commission—in the record below concerning any "deliberate psychological avoidance." |

The Court should accord no deference to these *ex post* factual characterizations of the record by the Commission's counsel, particularly when those characterizations find no support in the Commission's actual findings. *See Burlington*, 371 U.S. at 168 ("courts may not accept appellate counsel's post hoc rationalization for agency action"). Indeed, this Court is compelled to disregard the attorney argument, which counsel now masquerades as a factual recitation, in light of the "simple but fundamental rule of administrative law . . . that a reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency." *Id.* at 168–169. "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting

what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

### B. Suprema's Conduct Does Not Compare to the Conduct Found to Support a Willful Blindness Finding in *Global-Tech*

Appellees' attempt to map their characterizations of the record to the conduct found to support willful blindness in *Global-Tech* is unavailing. The facts of *Global-Tech* are so different they merely underscore the very high standard for willful blindness—one not met here.

As summarized below, the key facts relied upon by the Supreme Court in *Global-Tech* find no analog in the record here:

| Relevant Facts of *Global-Tech* | Response |
|---|---|
| "Pentalpha's [subjective] belief that SEB's fryer embodied advanced technology that would be valuable in the U.S. market is evidenced by its decision to copy all but the cosmetic features of SEB's fryer." *Global-Tech Appliances v. SEB S.A.*, 131 S. Ct. 2060, 2071 (2011). | Suprema did not copy any *patented functionality* of Cross Match scanners. The Commission itself *explicitly* found that the accused Suprema scanners themselves did not infringe the '562 or '344 patents. (A000024, A000118–120.) Cross Match dropped its claim as to the '932 patent. (A000024.) |
| "Also revealing is Pentalpha's decision to copy an overseas model of SEB's fryer. Pentalpha knew that the product it was designing was for the U.S. market, and . . . was well aware that products made for overseas market do not bear U.S. patent markings." *Id.* | Cross Match did not mark its products. (A302291–292.) Therefore, no patent markings existed for Suprema to avoid. |
| "Even more telling is [Pentalpha's] decision not to inform the attorney from whom Pentalpha sought a right-to-use | Suprema never obtained any "right-to-use" opinion to manufacture plausible deniability. |

| Relevant Facts of *Global-Tech* | Response |
|---|---|
| opinion that the product to be evaluated was simply a knockoff of SEB's deep fryer. On the facts of this case, we cannot fathom what motive [Pentalpha] could have had for withholding this information other than to manufacture a claim of plausible deniability in the event that his company was later accused of patent infringement." *Id.* | Suprema never even engaged a U.S. patent attorney to evaluate potential infringement of its products (a fact the Commission actually relied on in *finding* willful blindness). (A000224.) In *Global-Tech*, the defendant misled his attorney to obtain a favorable opinion. Here there was nobody to mislead.<br><br>Suprema asked Korean patent counsel to "find the status of the patents applied for and registered by" Suprema's major competitors, not to evaluate the potential infringement of a "knock-off" product. (A400751.) Moreover, given that Suprema correctly concluded it did not infringe the patents it had identified, it had no reason to withhold information regarding its non-infringement from its attorney.<br><br>If Suprema hired a Korean patent attorney for purposes of "plausible deniability," it would have ensured that the attorney *provided* it with a favorable opinion. There is no evidence the attorney provided any opinion. |

Appellees attempt to jam a square peg into a round hole by comparing the facts here to *Global-Tech*. No reasonable reading of either *Global-Tech* or the record evidence regarding Suprema's conduct supports such a comparison. Suprema's conduct falls far short of willful blindness, and the Commission's

determination of inducement by Suprema should therefore be reversed as contrary to law or, alternatively, reversed as unsupported by substantial evidence.

### C. Because of Factual Impossibility, the Finding of Willful Blindness Cannot Survive Under Any Standard of Review

The Commission's finding of willful blindness fails to pass muster under any standard. The flaws in the Commission's theory have been addressed above and in prior briefing, but one glaring error deserves further discussion. The *Global-Tech* standard requires a subjective belief by Suprema that "there [was] a high probability that a fact exist[ed]" and "deliberate actions [by Suprema] to avoid learning of that fact." *Global-Tech*, 131 S. Ct. at 2070. Here, Appellees contend that Suprema sought to avoid learning that Mentalix's FedSubmit software incorporating the NIST segmentation functionality infringes the '344 patent. (A000221 (Suprema "'willfully blinded' itself to the infringing nature of Mentalix's activities").) The Commission's theory, however, suffers from a fatal temporal flaw: all supposed acts of deliberate avoidance occurred well before Suprema could have foreseen Mentalix's alleged infringement. Suprema thus could not have taken the cited deliberate acts in order to "willfully blind itself to the infringing nature of Mentalix's activities."

Mentalix created its implementation of segmentation when it first integrated the NIST segmentation functionality into FedSubmit shortly after it first acquired Suprema scanners in July 2009. (A200312, 1071:6–8; A200313, 1075:14–1076:8).

But according to Appellees, Suprema deliberately avoided learning that Mentalix's implementation of NIST infringed the '344 patent by (i) not reading the entirety of the '562 patent, (ii) failing to find the '344 patent during its patent search, (iii) failing to obtain an opinion of counsel and not following up with such foreign patent counsel, and (iv) acquiring and examining Cross Match's products. (Commission's Br. 42–51; Cross Match Br. at 52–56.)

***Those events all took place in 2008, a year before any infringement could have taken place***. (A400573, A400563.) As such, none of those acts could conceivably have been undertaken with the intent to avoid learning that Mentalix's NIST-based FedSubmit software infringes the '344 patent.[8] Indeed, those alleged acts of "deliberate avoidance" took place ***before*** Mentalix even advised Suprema that it required segmentation functionality. (A400573, A303167.)

## III. THE COMMISSION ERRED IN DETERMINING CLAIM 19 IS INFRINGED

Mentalix's FedSubmit software does not perform the method of claim 19 of the '344 patent, including the elements:

(e) detecting a fingerprint area *based on* a concentration of black pixels in the binarized fingerprint image;

(f) detecting a fingerprint shape *based on* an arrangement of the concentrated black pixels in an oval-like shape in the binarized fingerprint image;

---

[8] Nothing in the record shows that Suprema ever learned of the algorithms employed by the NIST segmentation functionality integrated into the FedSubmit software.

(g) determining whether the detected fingerprint area and shape are of an acceptable quality.

(A000297, 19:31–37 (emphasis added).) Appellee's briefs fail to address the issues raised in Appellant's Opening En Banc Brief, namely:

1. The words "area" and "shape" must have different meanings.

2. The two determinations made in elements (e) and (f) must be based on different criteria (respectively, a *concentration* of black pixels and an *arrangement* of the concentrated black pixels).

Regarding the first issue, the Commission's brief implicitly—and incorrectly—argues that "area" and "shape" have the same meaning. It first argues that "area" in limitation (e) should mean the place or location of a fingerprint in an image. (Commission Br. at 52–53.) However, Commission's counsel's proposed, new construction of "area" is contrary to limitation (g), which requires use of the detected area to determine whether the area is "of an acceptable quality." (A000297, 19:37–38.) The '344 patent's specification describes the determination of step (g): "In various embodiments, quality classification can be based on if an area and shape of currently imaged fingerprints are: of equal size and shape, within a previously determined threshold associated with an acceptable quality fingerprint, etc." (A000294, 14:29–33.) "Area" in limitation (g) thus means "size," not "location" as advocated by Commission's counsel.

That "area" means "size" makes sense in the context of element (g), which uses the area determination of element (e) to make a forward-looking

determination of whether the area is of acceptable quality. The method determines that the fingerprint is sufficiently, but not too, large. Using the Commission's counsel's construction—determining the acceptable quality ***of a location*** makes no sense to a person of ordinary skill in the art, and such a construction is unsupported either by the '344 patent's claims, specification, and history, or the record. "Area" in limitation (e) must have the same meaning as "area" in limitation (g).[9]

The Commission provides no construction of "shape," instead arguing that the process of creating a bounding box somehow determines the shape of the item in the box. (Commission Br. at 57.) The Commission's counsel resorts to this fiction because the undisputed evidence is [

]. (A303934; A305416.)

However, a bounding box merely determines the location of an item in the box, not its shape. (A200085.) As such, the Commission implicitly argues that the location of a blob (as determined by a bounding box) is both an area and a shape. This is wrong for at least two reasons. First, such an understanding of "shape" is contrary to the plain meaning of the word (*e.g.*, a circle, triangle, tree, etc.).

---

[9] If "area" meant "location," Mentalix's FedSumbit software does not perform this limitation. Neither the CALJ nor the Commission determined that FedSubmit determines the acceptable quality of a blob's location. Indeed, there is no evidence that such a determination is made.

Second, reducing both area and shape to "location" violates the principle of construction that "different claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008); *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). This Court should reject the Commission's implicit construction of "shape" to mean "location."

Regarding the second issue, Appellees do not address the fact that area and shape must be determined using different criteria—area based on a *concentration* of black pixels, and shape based on the *arrangement* of the concentrated black pixels. The parties agree that FedSubmit merely determines the top-, bottom-, left-, and right-most pixel of a blob. (A000129–130.) Such a determination is made based on the location but not on the arrangement of black pixels. The CALJ made no findings that shape determination was based on an arrangement of pixels.

The record provides no support for such a finding.[10] As drawing a bounding box is not based on the arrangement of the concentrated black pixels, FedSubmit cannot infringe claim 19.

---

[10] Cross Match provides no argument that this portion of limitation (f) is met. The Commission provides an entirely new argument related to the [ ] function. (Commission Br. at 57.) This argument is incorrect, as Mentalix's FedSubmit software performs no shape detection. (A200439, 1572:8–1573:15 ("I saw no example of shape detection in the Respondents' software.") Importantly, this new argument was not relied upon in the CALJ's or Commission's determination and, as such, this Court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *In re Lee*, 277 F.3d 1338, 1345–1346 (Fed. Cir. 2002) (quoting *Chenery Corp.*, 332 U.S. at 196).

## CONCLUSION

For the foregoing reasons, as well as those set forth previously, and in Appellants' brief in response to the Petitions for Rehearing En Banc, this Court should reverse the Commission's determination and orders regarding the '993 patent and claim 19 of the '344 patent.

Dated: November 21, 2014

Respectfully submitted,

*/s/ Darryl M. Woo*

Darryl M. Woo
VINSON & ELKINS LLP
525 Market Street Suite 2750
San Francisco, CA 94105
Telephone: (415) 979-6900
Facsimile: (415) 651-8786

Jae Won Song
Ilana Rubel
Bryan A. Kohm
David M. Lacy Kusters
Bradley T. Meissner
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:(415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Respondents-Appellants
*Suprema, Inc. and Mentalix, Inc.*

## CERTIFICATE OF SERVICE

I, Darryl M. Woo, hereby certify that on November 21, 2014, I caused the foregoing **APPELLANTS' NON-CONFIDENTIAL REPLY EN BANC BRIEF** to be served on the following parties as indicated below:

| | |
|---|---|
| Maximilian A. Grant<br>Gabriel Bell<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street, NW, Ste. 1000<br>Washington, DC 20004-1304<br>max.grant@lw.com; gabriel.bell@lw.com;<br>**By Electronic Mail (paper copies to follow after brief is accepted by the Court)** | Clement Naples<br>**LATHAM & WATKINS LLP**<br>885 Third Avenue, Suite 1000<br>New York, NY 10022-4802<br>clement.naples@lw.com<br>**By Electronic Mail (paper copies to follow after brief is accepted by the Court)** |
| Clark S. Cheney (clark.cheney@usitc.gov)<br>Andrea Casson (andrea.casson@usitc.gov)<br>Dominic L. Bianchi<br>(dominic.bianchi@usitc.gov)<br>Office of General Counsel<br>**U.S. INTERNATIONAL TRADE COMMISSION**<br>500 E Street, SW, Suite 707<br>Washington, DC 20436<br>Fax: (202) 205-3111<br>**By Electronic Mail (paper copies to follow after brief is accepted by the Court)** | |

Dated: November 21, 2014 By: *\/s/ Darryl M. Woo*
Darryl M. Woo

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS WITH FRAP 32(A)(7)(B) AND FEDERAL CIRCUIT RULE 32**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32.

√ This brief contains 6,998 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

√ The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2010, in 14pt., Times New Roman.

*/s/ Darryl M. Woo*
(Signature of Attorney)

Darryl M. Woo
(Name of Attorney)

Respondents-Appellants
(State whether representing appellant, appellee, etc.)

November 21, 2014
(Date)